UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TVIIM, LLC,<br>    Plaintiff,<br>  v.<br>MCAFEE, INC.,<br>    Defendant. | Case No.  13-cv-04545-VC   (KAW)<br><br>ORDER REGARDING 7/17/14 JOINT DISCOVERY LETTER<br><br>Dkt. No. 50 |

On July 17, 2014, the parties filed a joint discovery letter concerning disputes over Defendant McAfee, Inc.'s proposed protective order to govern discovery in this patent case. (7/17/14 Joint Letter, "Joint Letter," Dkt. No. 50.)

Upon review of the joint letter, the Court finds that the relevant terms of the Patent Local Rule 2-2 Interim Model Protective Order should govern.  In addition, McAfee's proposed prohibition on using protected materials to assert infringement on patents other than the patent-in-suit exceeds the purview of the discovery referral and shall not be included.

## I. LEGAL STANDARD

When a party from whom discovery is requested moves for a protective order, the court may "for good cause, issue an order to protect a party or person from undue burden or expense. Fed. R. Civ. P. 26(c)(1).  In general, "good cause requires the moving party to show that specific prejudice or harm will result if the protective order is not issued." *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, C-11-05973 PSG, 2012 WL 1232105, at *2 (N.D. Cal. Apr. 12, 2012), appeal dismissed (Mar. 18, 2014).  In patent cases, "[t]he Protective Order authorized by the Northern District of California shall govern unless the Court enters a different protective order." Patent L.R. 2-2.

## II. DISCUSSION

On July 8, 2014, lead counsel for Plaintiff TVIIM, LLC and Defendant McAfee, Inc. met and conferred regarding the differences between McAfee's proposed protective order and the Patent Local Rule 2-2 Interim Model Protective Order (hereafter "MPO"). (Joint Letter at 3.) Upon conclusion of the meet and confer, six issues remain unresolved. On July 17, 2014, the parties filed a joint discovery letter seeking court intervention.

### A. Presumptive Limits on Printing Source Code

While the parties agree to the conditions under which TVIIM may electronically inspect McAfee's source code, they disagree on McAfee's proposed limits on printing source code. (Joint Letter at 4.)

The MPO provides that the Requesting Party may only "request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial." (MPO ¶ 9(d).) A party cannot request printed source code for the purposes of review. *Id.*

McAfee's proposal seeks to limit the amount of printed source code to 500 pages or 10% of the total pages for a single software release, and to no more than 10 pages of continuous blocks of source code. (Joint Letter at 3.) McAfee contends that these limits are necessary to protect the internet security of its customers, which include Fortune 500 companies, health care providers, government agencies, and the military. *Id.* McAfee argues that it needs more stringent limitations because it cannot protect its printed code with the same technological safeguards that it employs with its software programs. *Id.* at 4.

In opposition, TVIIM contends that McAfee's proposed limitations regarding printed source code is unnecessary in light of the existing safeguards in the MPO.

McAfee acknowledges that TVIIM has not inspected the available source code. (Joint Letter at 4.) TVIIM has also, therefore, not requested any printouts. Therefore, at this juncture, any presumptive limits are unnecessary given the existing limitations the MPO places on printed source code, one of the purposes of which is to limit the ability to reconstruct code. Accordingly,

McAfee has not met its burden to show good cause to depart from the MPO, and the parties shall adopt paragraph 9(d).

### B.     Securing Printed Copies of Source Code

The parties disagree on how the printed copies of source code should be secured in a particular location and while being transported. (Joint Letter at 5.)  McAfee's proposal seeks to ensure that printed code is kept as secure as its electronic counterpart, including requiring that printed code be transported in a locked container. *Id.*

The MPO provides that "Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order." (MPO ¶ 7.1.)  In addition, paragraphs 9(d) and 9(e) specify that printed code must be maintained in a secure and locked area, prohibits the scanning of printed copies, and requires the retrieval of printed code at the end of each day of a deposition. (MPO ¶¶ 9(d),(e).)

McAfee argues that its proposal ensures that printed code would be stored securely by detailing the manner in which printed code would be handled. (Joint Letter at 5.) Specifically, Defendant's proposed protective order differs from the MPO because it specifies that the printed code, while in transit, would need to be hand-carried in a locked container. *Id.*

TVIIM contends that the MPO already contains sufficient safeguards to protect printed source code, and that McAfee's proposed restrictions are both unreasonable and unworkable. (Joint Letter at 5-6.)  First, parties can only obtain printed portions of source code, never a complete copy. (Joint Letter at 6.)  Second, the carrying of a locked container would make an attorney stand out in a crowd, possibly inviting theft. (Joint Letter at 6.)  Lastly, McAfee's proposed procedures do not account for air travel, where locked containers would likely be opened. (Joint Letter at 6.) Therefore, the broad safeguards of the MPO should govern.

McAfee has failed to show good cause to modify the MPO, which already provides sufficient security measures to protect printed source code.  Accordingly, the parties shall adopt paragraph 7.1 of the MPO.

///

3

### C. Logging Source Code Access

McAfee proposes that the Receiving Party be required to maintain a log of any persons who will be conducting inspections, the dates of those inspections, the Bates number(s) of the copy, and when it was provided to that person. (Joint Letter at 6 n.6.) Additionally, the Receiving Party shall produce the log at "critical junctures in the case when printed code is likely to be shared with the greatest number of people." (Joint Letter at 6.)

The MPO only requires that "[t]he Receiving Party shall maintain a record of any individual who has inspected any portion of the source code in electronic or paper form. (MPO ¶ 9(e).)

McAfee contends that these log procedures are a necessary and reasonable measure to safeguard its code and to hold people accountable for any breaches. (Joint Letter at 6.)

TVIIM contends that Defendant's proposal is overreaching and unduly burdensome, and that the requirement that the logs be produced during the litigation invades TVIIM's work product privilege, because McAfee would be able to discern Plaintiff's thoughts and legal strategies. (Joint Letter at 6.) Further, Plaintiff argues that Defendant has not established how these restrictions would provide it with more safeguards against the disclosure of printed code. *Id.*

Proprietary source code is often at issue in intellectual property cases, and McAfee fails to provide any rationale, beyond mere speculation, that its source code is more at risk than others, and that the MPO's provisions are inadequate. Without more, McAfee lacks good cause to justify a departure from the MPO. Thus, Paragraph 9(e) shall govern.

### D. Use of Protected Material with Witnesses

McAfee proposes to impose additional restrictions on the use of protected material with witnesses. (Joint Letter at 7.)

Paragraph 7.2(f) of the MPO allows protected material to be shown to witnesses during depositions "to whom disclosure is reasonably necessary" so long as they have signed the "Acknowledgement and Agreement to Be Bound" by the protective order. (MPO ¶ 7.2(f).) Paragraphs 7.2(g) and 7.3(f) provide that protected material may only be shown to authors,

recipients of a document, or people who otherwise possessed or knew of the information. (MPO ¶¶ 7.2(g), 7.3(f).)

McAfee states that it is only proposing an expansion as to Paragraphs 7.2(g) and 7.3(f) to address situations where a non-party, including former employees, would have access to the protected material. (Joint Letter at 7.)

TVIIM, however, argues that Paragraph 7.2(f) of the MPO already addresses McAfee's concerns, and so any additional restrictions are unnecessary. *Id.* McAfee does not address Paragraph 7.2(f).

Since McAfee has again failed to articulate why the MPO is insufficient, the parties shall adopt Paragraphs 7.2(f), 7.2(g), and 7.3(f) of the MPO.

### E. Prohibition on Use of Protected Material to Assert Additional Patents

McAfee proposes a prohibition against using protected material to support allegations of infringement on patents other than the patent-in-suit. (Joint Letter at 8.) McAfee contends that this restriction is necessary given the 1400 pages of invalidity contentions it has already produced and that the trial date is scheduled for less than one year from now. *Id.*

The MPO does not contain any limitations on amending the pleadings. McAfee's proposed limitation on the use of protected material to support a potential amendment to the complaint is premature. If TVIIM seeks to amend the complaint based on protected material it obtains in discovery, McAfee is free to oppose such a motion, which would be noticed before the presiding judge. Thus, it would be beyond the purview of the discovery referral for the undersigned to unilaterally prohibit the use of protected materials to support previously unknown claims of infringement.

Accordingly, McAfee's proposed restriction shall not be included in the protective order.

### F. Use of Inadvertently Produced Privileged Material

McAfee proposes to "prohibit[] discussing the content of the clawbacked documents in motions to compel production of those documents." (Joint Letter at 8.) McAfee claims that any discussion in a motion to compel would require the moving party "to retain and analyze these

1   documents after the clawback request" and would "substantially undermine the very notion of a
2   clawback provision" under Federal Rule of Civil Procedure 26. (Joint Letter at 8.)
3       In opposition, TVIIM contends that such a prohibition "would prevent the court from fairly
4   evaluating whether it should be produced and raises the specter that the producing party could
5   mischaracterize the document." (Joint Letter at 8.)
6       Neither party addresses the MPO, which provides that "[w]hen a Producing Party gives
7   notice to Receiving Parties that certain inadvertently produced material is subject to a claim of
8   privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal
9   Rule of Civil Procedure 26(b)(5)(B)." (MPO ¶ 13.)  Specifically, Rule 26 requires that the
10  receiving party "may promptly present the information to the court under seal for a determination
11  of the claim." Fed. R. Civ. P. 26(b)(5)(B).  This permits the court to determine whether the
12  document inadvertently produced is actually privileged.  Here, McAfee's proposal would
13  essentially hinder the court's ability to make such a determination under Rule 26.
14      Thus, the MPO clawback provision is sufficient to ensure that documents inadvertently
15  produced may be clawed back. The parties shall, therefore, incorporate Paragraph 13 of the MPO
16  into their stipulated protective order.

### III.   CONCLUSION

18      In light of the foregoing, the parties shall, within 21 days, file a stipulated protective order
19  consistent with this order.
20      IT IS SO ORDERED.
21  Dated: August 14, 2014

_Kandis Westmore_
KANDIS A. WESTMORE
United States Magistrate Judge

6