John J. Shaeffer (State Bar No. 138331)
jshaeffer@foxrothschild.com
Jeffrey H. Grant (State Bar No. 218974)
jgrant@foxrothschild.com
FOX ROTHSCHILD LLP
1800 Century Park East
Suite 300
Los Angeles, CA 90067
Telephone: 310.598.4150
Facsimile: 310.556.9828

*Attorneys for Plaintiff and Counterclaim-Defendant
TVIIM, LLC*

Christine Capuyan (SBN 281036)
   christine.capuyan@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Joseph J. Mueller (*pro hac vice*)
   joseph.mueller@wilmerhale.com
Sarah B. Petty (*pro hac vice*)
   sarah.petty@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Nina S. Tallon (*pro hac vice*)
   nina.tallon@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendant and Counterclaim-Plaintiff McAfee, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| TVIIM, LLC, a Colorado Limited liability company, <br><br>         Plaintiff and Counterclaim-Defendant, <br><br> v. <br><br> MCAFEE, INC., a corporation, <br>         Defendant and <br>         Counterclaim-Plaintiff. | Case No. 3:13-cv-04545-HSG <br><br> **CORRECTED[1] [PROPOSED] JURY INSTRUCTIONS** |

---

[1] The parties' proposed jury instructions (Dkt. No. 202) have been corrected to (1) remove inadvertent highlighting and (2) format TVIIM's proposal for Disputed Preliminary Instruction No. 5 to comply with the Court's Civil Pretrial and Trial Standing Order, paragraph 7.

**Stipulated Preliminary Instruction No. 1 Re Duty Of Jury**

Ladies and gentlemen:  You are now the jury in this case.  It is my duty to instruct you on the law.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.1B

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

**Stipulated Preliminary Instruction No. 2 Re What A Patent Is And How One Is Obtained**

This case involves a dispute relating to a United States patent.  Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO").  The process of obtaining a patent is called patent prosecution.  A valid United States patent gives the patent owner the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, ~~or from importing it into the United States,~~ during the term of the patent without the patent holder's permission.  A violation of the patent owner's rights is called infringement.  The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO.  The PTO is an agency of the federal government and employs trained examiners who review applications for patents.  The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it.  The specification concludes with one or more numbered sentences.  These are the patent "claims."  When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed.  In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as "prior art."  The examiner also will review prior art if it is submitted to the PTO by the applicant.  Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art.  ~~[~~However, in general, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country.  The examiner considers, among other things,

- 2 -   CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

1   whether each claim defines an invention that is new, useful, and not obvious in view of the prior

2   art.] A patent lists the prior art that the examiner considered; this list is called the "cited

3   references."

4          After the prior art search and examination of the application, the patent examiner then

5   informs the applicant in writing what the examiner has found and whether any claim is

6   patentable, and thus will be "allowed." This writing from the patent examiner is called an "office

7   action." If the examiner rejects the claims, the applicant then responds and sometimes changes

8   the claims or submits new claims. This process, which takes place only between the examiner

9   and the patent applicant, may go back and forth for some time until the examiner is satisfied that

10  the application and claims meet the requirements for a patent. The papers generated during this

11  time of communicating back and forth between the patent examiner and the applicant make up

12  what is called the "prosecution history." All of this material becomes available to the public no

13  later than the date when the patent issues.

14         The fact that the PTO grants a patent does not necessarily mean that any invention

15  claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not

16  have had available to it all the information that will be presented to you. A person accused of

17  infringement has the right to argue here in federal court that a claimed invention in the patent is

18  invalid because it does not meet the requirements for a patent.

19

20  Source: Model Patent Jury Instructions for the Northern District of California (June 17, 2014) –

21  Instruction A.1

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Stipulated Preliminary Instruction No. 3 Re Patent At Issue</u>**

[The Court should show the jury the patent at issue and point out the parts including the specification, drawings and claims including the claims at issue.]

<u>Source:</u>  Model Patent Jury Instructions for the Northern District of California (June 17, 2014) – Instruction A.2

1 | 2 | ***DISPUTED* Preliminary Instruction No. 4A Re Summary Of Contentions, Offered By TVIIM**

3       To help you follow the evidence, I will now give you a summary of the positions of the

4 parties.

5       The parties in this case are ~~[patent holder]~~TVIIM, LLC, also known as TVIIM, and

6 ~~[alleged infringer]~~McAfee, Inc., also known as McAfee.  The case involves a United States patent

7 obtained by ~~[inventor]~~five inventors, and later transferred ~~by [inventor]~~to ~~[patent holder]~~TVIIM.

8 The patent involved in this case is United States Patent Number 6,889,168~~[patent number]~~ which

9 lists Bruce V. Hartley, Eric Knight, Greg Zymbaluk, Cynthia Mavros, and Kevin

10 Reynolds~~[inventor]~~ as ~~the~~ inventors.  For convenience, the parties and I will often refer to this

11 patent as the ~~[last three numbers of the patent]~~'168 patent, ~~[last three numbers of patent]~~1, 6, and

12 8 being the last three numbers of its patent number.

13       ~~[Patent holder]~~TVIIM filed suit in this Court seeking money damages from ~~[alleged~~

14 ~~infringer]~~McAfee for allegedly infringing the ~~[——]~~'168 patent by ~~[making]~~, ~~[importing]~~, ~~[~~using~~]~~,

15 ~~[~~selling~~]~~, and ~~[~~offering for sale~~]~~ ~~[~~products~~]~~ ~~[methods]~~ that ~~[patent holder]~~TVIIM argues are

16 covered by claims ~~[——]~~1, 2, 3, 7, 8, 9, 11, 12, 19, and 20 of the patent.  ~~[[Patent holder]~~TVIIM

17 also argues that ~~[alleged infringer]~~McAfee has ~~[~~actively induced infringement of ~~these~~ claims 11,

18 12, 19, and 20 of the ~~[——]~~'168 patent by others~~]~~ ~~[and]~~ ~~[~~contributed to the infringement of these

19 claims of the ~~[——]~~'168 patent by others~~].~~  The ~~[~~products~~]~~ ~~[methods]~~ that are alleged to infringe

20 are computer security software that incorporates a feature that McAfee calls its "Vulnerability

21 Scanner ~~[list of accused products or methods]~~.

22       ~~[Alleged infringer]~~McAfee denies that it has infringed claims 1, 2, 3, 7, 8, 9, 11, 12, 19,

23 and 20~~[——]~~ of the ~~[——]~~'168 patent and argues that, in addition, the claims are invalid and/or

24 unenforceable.~~[Add other defenses, if applicable]~~.  Invalidity and unenforceability are~~is a~~

25 defenses to infringement.

26       Your job will be to decide whether claims 1, 2, 3, 7, 8, 9, 11, 12, 19, and 20~~[——]~~ of the ~~[——~~

27 ~~]~~'168 patent have been infringed and whether those claims are invalid and/or unenforceable.  If

28 you decide that any claim of the ~~[——]~~'168 patent has been infringed and is not invalid, you will

1   then need to decide any money damages to be awarded to [patent holder]TVIIM to compensate it

2   for the infringement.  [You will also need to make a finding as to whether the infringement was

3   willful.  If you decide that any infringement was willful, that decision should not affect any

4   damage award you give.  I will take willfulness into account later.]

5        You may hear evidence that [alleged infringer] has its own patent(s) or that [alleged

6   infringer] improved on the [ ] patent.  While this evidence is relevant to some issues you will be

7   asked to decide, a party can still infringe even if it has its own patents in the same area.  You will

8   be instructed after trial as to what, if any, relevance these facts have to the particular issues in this

9   case.  Meanwhile, please keep an open mind.

10       Before you decide whether [alleged infringer]McAfee has infringed the claim[s] of the

11  patent or whether the claim[s] [is][are] invalid and/or unenforceable, you will need to understand

12  the patent claims.  As I mentioned, the patent claims are numbered sentences at the end of the

13  patent that describe the boundaries of the patent's protection.  It is my job as judge to explain to

14  you the meaning of any language in the claim[s] that needs interpretation.

15       [The Court may wish to hand out its claim constructions (if the claims have been

16  construed at this point) and the glossary at this time. If the claim constructions are handed out, the

17  following instruction should be read:

18       I have already determined the meaning of certain terms of the claims of the [ ]'168 patent.

19  You have been given a document reflecting those meanings.  You are to apply my definitions of

20  these terms throughout this case.  However, my interpretation of the language of the claims

21  should not be taken as an indication that I have a view regarding issues such as infringement and

22  invalidity.  Those issues are yours to decide.  I will provide you with more detailed instructions

23  on the meaning of the claims before you retire to deliberate your verdict.]

24

25  Source:  Model Patent Jury Instructions for the Northern District of California (June 17, 2014) –

26  Instruction A.3

27

28

1
2

**_DISPUTED_ Preliminary Instruction No. 4B Re Summary Of Contentions, Offered By McAfee**

3    To help you follow the evidence, I will now give you a summary of the positions of the
4    parties.

5    The parties in this case are [patent holder]TVIIM, LLC, also known as TVIIM, and
6    [alleged infringer]McAfee, Inc., also known as McAfee.  The case involves a United States patent
7    obtained by [inventor]five inventors, and later transferred by [inventor] to [patent holder]TVIIM.
8    The patent involved in this case is United States Patent Number 6,889,168[patent number] which
9    lists Bruce V. Hartley, Eric Knight, Greg Zymbaluk, Cynthia Mavros, and Kevin
10   Reynolds[inventor] as the inventors.  For convenience, the parties and I will often refer to this
11   patent as the [last three numbers of the patent]'168 patent, [last three numbers of patent]1, 6, and
12   8 being the last three numbers of its patent number.

13   [Patent holder]TVIIM filed suit in this Court seeking money damages from [alleged
14   infringer]McAfee for allegedly infringing the [——]'168 patent by [making], [importing], [using],
15   [selling], and [offering for sale] [products] [methods] that [patent holder]TVIIM argues are
16   covered by claims [——]1, 2, 3, 7, 8, 9, 11, 12, 19, and 20 of the patent.  [[Patent holder]TVIIM
17   also argues that [alleged infringer]McAfee has [actively induced infringement of these claims 11,
18   12, 19, and 20 of the [——]'168 patent by others] [and] [contributed to the infringement of these
19   claims of the [——]'168 patent by others].]  The [products] [methods] that are alleged to infringe
20   are McAfee's Antivirus Plus, Internet Security, Total Protection, LiveSafe, and All Access
21   consumer products that incorporate the Vulnerability Scanner feature[list of accused products or
22   methods].

23   [Alleged infringer]McAfee denies that it has infringed claims 1, 2, 3, 7, 8, 9, 11, 12, 19,
24   and 20[——] of the [——]'168 patent and argues that, in addition, the claims are invalid and/or
25   unenforceable.[Add other defenses, if applicable].  Invalidity and unenforceability areis a
26   defenses to infringement.

27   Your job will be to decide whether claims 1, 2, 3, 7, 8, 9, 11, 12, 19, and 20[——] of the [——
28   ]'168 patent have been infringed and whether those claims are invalid and/or unenforceable.  If

1   you decide that any claim of the [——]'168 patent has been infringed and is not invalid, you will

2   then need to decide any money damages to be awarded to [patent holder]TVIIM to compensate it

3   for the infringement.  [You will also need to make a finding as to whether the infringement was

4   willful.  If you decide that any infringement was willful, that decision should not affect any

5   damage award you give.  I will take willfulness into account later.]

6   You may hear evidence that [alleged infringer] has its own patent(s) or that [alleged

7   infringer] improved on the [ ] patent.  While this evidence is relevant to some issues you will be

8   asked to decide, a party can still infringe even if it has its own patents in the same area.  You will

9   be instructed after trial as to what, if any, relevance these facts have to the particular issues in this

10  case.  Meanwhile, please keep an open mind.

11  Before you decide whether [alleged infringer]McAfee has infringed the claim[s] of the

12  patent or whether the claim[s] [is][are] invalid and/or unenforceable, you will need to understand

13  the patent claims.  As I mentioned, the patent claims are numbered sentences at the end of the

14  patent that describe the boundaries of the patent's protection.  It is my job as judge to explain to

15  you the meaning of any language in the claim[s] that needs interpretation.

16  [The Court may wish to hand out its claim constructions (if the claims have been

17  construed at this point) and the glossary at this time. If the claim constructions are handed out, the

18  following instruction should be read:

19  I have already determined the meaning of certain terms of the claims of the [ ]'168 patent.

20  You have been given a document reflecting those meanings.  You are to apply my definitions of

21  these terms throughout this case.  However, my interpretation of the language of the claims

22  should not be taken as an indication that I have a view regarding issues such as infringement and

23  invalidity.  Those issues are yours to decide.  I will provide you with more detailed instructions

24  on the meaning of the claims before you retire to deliberate your verdict.]

25

26  Source:  Model Patent Jury Instructions for the Northern District of California (June 17, 2014) –
    Instruction A.3

27

28

**TVIIM's Position:**

The only dispute between the parties is how to characterize the accused products.  TVIIM proposes that the instructions refer to the accused products as computer software that includes the "Vulnerability Scanner" feature.  McAfee proposes instead that the instruction name specific products.  It is preferable to refer to the "Vulnerability Scanner" feature because – at trial – the focus will be on that feature, not the various names that McAfee has given to its product suite.  Further, while the names that McAfee gives to its products change from year to year, the "Vulnerability Scanner" has stayed constant.  Finally, McAfee's proposal omits at least one product – Security Scanner – that McAfee has itself identified as incorporating the "Vulnerability Scanner."

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

1    **McAfee's Position:**

2          The parties' dispute with respect to this instruction concerns the description of the

3    products at issue.  McAfee proposes an accurate and precise identification of the accused products

4    (i.e., "McAfee's Antivirus Plus, Internet Security, Total Protection, LiveSafe, and All Access

5    consumer products with the Vulnerability Scanner feature").  TVIIM *agrees* that this is the

6    correct list of accused products in this case.  *See* Joint Pretrial Statement, Undisputed Fact No. 9

7    ("TVIIM has accused the following McAfee consumer products of infringing the '168 patent:

8    Antivirus Plus, Internet Security, Total Protection, LiveSafe, and All Access.")  Nevertheless,

9    TVIIM proposes to identify the accused products generically as "computer security software that

10   incorporates a feature that McAfee calls its 'Vulnerability Scanner.'"  The jury would benefit

11   from precision in the identification of the products at issue, particularly where there is no dispute

12   between the parties regarding what the accused products are.  McAfee respectfully requests that

13   the Court maintain consistency and precision in the jury instructions by defining the accused

14   products as "McAfee's Antivirus Plus, Internet Security, Total Protection, LiveSafe, and All

15   Access consumer products with the Vulnerability Scanner feature" throughout the instructions.

16

17

18

19

20

21

22

23

24

25

26

27

28

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

1

***DISPUTED* Preliminary Instruction No. 5A Re Overview Of Applicable Law, Offered By**

2

**TVIIM**

3       In deciding the issues I just discussed, you will be asked to consider specific

4   legal standards.  I will give you an overview of those standards now and will review

5   them in more detail before the case is submitted to you for your verdict.

6       The first issue you will be asked to decide is whether ~~[alleged infringer]~~

7   McAfee has infringed the claims of the ~~[ ]~~'168 patent.  Infringement is assessed on

8   a claim-by-claim basis.  Therefore, there may be infringement as to one claim but

9   not infringement as to another.  There are a few different ways that a patent may be

10   infringed.  I will explain the requirements for each of these types of infringement to

11   you in detail at the conclusion of the case.  In general, however, ~~[alleged infringer]~~

12   McAfee may infringe the ~~[ ]~~'168 patent by making, using, selling, or offering for

13   sale in the United States~~, or by importing into the United States,~~ a product or by

14   using a method meeting all the requirements of a claim of the ~~[ ]~~'168 patent.

15   ~~[Alleged infringer]~~ McAfee may also indirectly infringe the ~~[ ]~~'168 patent by

16   contributing to infringement by another entity, or by inducing another person or

17   entity to infringe.  I will provide you with more detailed instructions on the

18   requirements for each of these types of infringement at the conclusion of the case.

19       Another issue you will be asked to decide is whether the ~~[ ]~~'168 patent is

20   invalid. A patent may be invalid for a number of reasons, including because it

21   claims subject matter that is not new or is obvious.  For a claim to be invalid

22   because it is not new, ~~[alleged infringer]~~ McAfee must show, by clear and

23   convincing evidence, that all of the elements of a claim are present in a single

24   previous device or method, or sufficiently described in a single previous printed

25   publication or patent.  We call these "prior art."  If a claim is not new, it is said to

26   be anticipated.

27       Another way that a claim may be invalid is that it may have been obvious.

28   Even though every element of a claim is not shown or sufficiently described in a

1  single piece of "prior art," the claim may still be invalid if it would have been

2  obvious to a person of ordinary skill in the field of technology of the patent at the

3  relevant time. You will need to consider a number of questions in deciding whether

4  the invention(s) claimed in the ~~[ ]~~ '168 patent are obvious. I will provide you

5  detailed instructions on these questions at the conclusion of the case.

6  ~~[Where a written description or enablement defense is presented: A patent may also be~~

7  ~~invalid if its description in the specification does not meet certain requirements. To be valid, a~~

8  ~~patent must meet the "written description" requirement. In order to meet this written description~~

9  ~~requirement, the description of the invention in the specification portion of the patent must be~~

10  ~~detailed enough to demonstrate that the applicant actually possessed the invention as broadly as~~

11  ~~claimed in the claims of the issued patent. The disclosure of a patent must also meet the~~

12  ~~"enablement" requirement. To meet this requirement, the description in the patent has to be~~

13  ~~sufficiently full and clear to have allowed persons of ordinary skill in the field of technology of~~

14  ~~the patent to make and use the invention without undue experimentation, at the time the patent~~

15  ~~application was originally filed.]~~

16      If you decide that any claim of the [ ] '168 patent has been infringed and is

17  not invalid, you will then need to decide any money damages to be awarded to

18  ~~[patent holder]~~ TVIIM to compensate it for the infringement. A damages award

19  should put ~~[patent holder]~~ TVIIM in approximately the same financial position that

20  it would have been in had the infringement not occurred, but in no event may the

21  damages award be less than what ~~[patent holder]~~ TVIIM would have received had it

22  been paid a reasonable royalty. I will instruct you later on the meaning of a

23  reasonable royalty. The damages you award are meant to compensate ~~[patent~~

24  ~~holder]~~ TVIIM and not to punish ~~[alleged infringer]~~ McAfee. You may not include

25  in your award any additional amount as a fine or penalty, above what is necessary

26  to compensate ~~[patent holder]~~ TVIIM for the infringement, in order to punish

27  ~~[alleged infringer]~~ McAfee. I will give you more detailed instructions on the

28  calculation of damages at the conclusion of the case.

1

<u>Source:</u>  Federal Circuit Bar Association, Model Patent Jury Instructions 2014 – Instruction A.4

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   ***DISPUTED* Preliminary Instruction No. 5B Re Overview Of Applicable Law, Offered By**

2   **McAfee**

3        In deciding the issues I just discussed, you will be asked to consider specific legal

4   standards.  I will give you an overview of those standards now and will review them in more

5   detail before the case is submitted to you for your verdict.

6        The first issue you will be asked to decide is whether [alleged infringer]McAfee has

7   infringed the claims of the []'168 patent.  Infringement is assessed on a claim-by-claim basis.

8   Therefore, there may be infringement as to one claim but not infringement as to another.  There

9   are a few different ways that a patent may be infringed.  I will explain the requirements for each

10  of these types of infringement to you in detail at the conclusion of the case.  In general, however,

11  [alleged infringer]McAfee may infringe the []'168 patent by making, using, selling, or offering

12  for sale in the United States, or by importing into the United States, a product or by using a

13  method meeting all the requirements of a claim of the []'168 patent.  [Alleged infringer]McAfee

14  may also indirectly infringe the []'168 patent by contributing to infringement by another entity,

15  or by inducing another person or entity to infringe.  I will provide you with more detailed

16  instructions on the requirements for each of these types of infringement at the conclusion of the

17  case.

18        Another issue you will be asked to decide is whether the []'168 patent is invalid. A patent

19  may be invalid for a number of reasons, including because it claims subject matter that is not new

20  or is obvious.  For a claim to be invalid because it is not new, [alleged infringer]McAfee must

21  show, by clear and convincing evidence, that all of the elements of a claim are present in a single

22  previous device or method, or sufficiently described in a single previous printed publication or

23  patent.  We call these "prior art."  If a claim is not new, it is said to be anticipated.

24        Another way that a claim may be invalid is that it may have been obvious.  Even though

25  every element of a claim is not shown or sufficiently described in a single piece of "prior art," the

26  claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of

27  technology of the patent at the relevant time.  You will need to consider a number of questions in

28

ACTIVE 30556994v1 06/22/2015                    - 14 -                    CORRECTED [PROPOSED] JURY
                                                                         INSTRUCTIONS
                                                                         3:13-CV-04545-VC

1  deciding whether the invention(s) claimed in the [ ]'168 patent are obvious.  I will provide you

2  detailed instructions on these questions at the conclusion of the case.

3  [Where a written description or enablement defense is presented: A patent may also be

4  invalid if its description in the specification does not meet certain requirements. To be valid, a

5  patent must meet the "written description" requirement. In order to meet this written description

6  requirement, the description of the invention in the specification portion of the patent must be

7  detailed enough to demonstrate that the applicant actually possessed the invention as broadly as

8  claimed in the claims of the issued patent.  The disclosure of a patent must also meet the

9  "enablement" requirement. To meet this requirement, the description in the patent has to be

10  sufficiently full and clear to have allowed persons of ordinary skill in the field of technology of

11  the patent to make and use the invention without undue experimentation, at the time the patent

12  application was originally filed.]

13  If you decide that any claim of the [ ]'168 patent has been infringed and is not invalid, you

14  will then need to decide any money damages to be awarded to [patent holder]TVIIM to

15  compensate it for the infringement.  A damages award should put [patent holder]TVIIM in

16  approximately the same financial position that it would have been in had the infringement not

17  occurred, but in no event may the damages award be less than what [patent holder]TVIIM would

18  have received had it been paid a reasonable royalty.  I will instruct you later on the meaning of a

19  reasonable royalty.  The damages you award are meant to compensate [patent holder]TVIIM and

20  not to punish [alleged infringer]McAfee.  You may not include in your award any additional

21  amount as a fine or penalty, above what is necessary to compensate [patent holder]TVIIM for the

22  infringement, in order to punish [alleged infringer]McAfee.  I will give you more detailed

23  instructions on the calculation of damages at the conclusion of the case.

24  The final issue you will be asked to decide is whether the '168 patent is unenforceable.  A

25  patent may be unenforceable for a number of reasons, including because of inequitable conduct

26  during the prosecution of the patent before the PTO.  When a person involved in the prosecution

27  of a patent application fails to provide material information or provides false information or

28  statements and does so with an intent to deceive the PTO, he or she commits inequitable conduct.

When inequitable conduct occurs during the examination of an application, any patent that issues from that application is unenforceable as a matter of fairness.  This means that despite the existence and validity of the patent, the patent holder may not prevent others from using the invention covered by the patent and may not collect damages from those who use the invention that is covered by the patent.  I will give you more detailed instructions on inequitable conduct at the conclusion of the case.

Source:  Federal Circuit Bar Association, Model Patent Jury Instructions 2014 – Instruction A.4;
Federal Circuit Bar Association, Model Patent Jury Instructions 2014 – Instruction B.5.1

1

**<u>TVIIM's Position:</u>**

2

3

TVIIM's proposal is a faithful recitation of the Federal Circuit Bar Association's

instruction regarding the overview of the law.  McAfee recites that instruction but then also self-

4

servingly inserts an entirely different instruction, Federal Bar Association Model Instruction No,

5

B.5.1,  regarding inequitable conduct, that goes far beyond the summary contemplated by this

6

instruction.  Indeed, TVIIM has elsewhere stipulated to the language in No. B.5.1, but strenuously

7

objections to the prospect of that instruction being used twice.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

1   **McAfee's Position:**

2          The parties' dispute with respect to this instruction concerns whether the Court should

3   provide an overview of the law on inequitable conduct.  TVIIM has already agreed that the Court

4   should request an advisory verdict on inequitable conduct from the jury.  *See* Joint Pretrial

5   Statement at Section XI ("With one exception, the parties request that all issues shall be tried at

6   once, including inequitable conduct, for which the parties request that the Court seek an advisory

7   verdict from the jury." (emphasis added)).  And, TVIIM stipulated to a concluding instruction on

8   inequitable conduct.  See Stipulated Concluding Instruction No. 27.

9          Because inequitable conduct will be tried to the jury, the jury should be given an overview

10  of the applicable law as part of its preliminary instructions.  McAfee's proposed instruction does

11  just that, using language from the Federal Circuit Bar Association's model instruction—the same

12  instruction that is stipulated as a concluding instruction.  Therefore, McAfee respectfully requests

13  that the Court adopt its proposed instruction.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Stipulated Preliminary Instruction No. 6 Re What Is Evidence</u>**

The evidence you are to consider in deciding what the facts are consists of:

1.   the sworn testimony of any witness;

2.   the exhibits which are received into evidence; and

3.   any facts to which the lawyers have agreed.


<u>Source:</u>   Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.6

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

1

**Stipulated Preliminary Instruction No. 7 Re What Is Not Evidence**

2        In reaching your verdict, you may consider only the testimony and exhibits received into

3    evidence.  Certain things are not evidence, and you may not consider them in deciding what the

4    facts are.  I will list them for you:

5        (1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.

6            What they have said in their opening statements, [will say in their] closing arguments, and

7            at other times is intended to help you interpret the evidence, but it is not evidence.  If the

8            facts as you remember them differ from the way the lawyers have stated them, your

9            memory of them controls.

10       (2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their

11           clients to object when they believe a question is improper under the rules of evidence.

12           You should not be influenced by the objection or by the court's ruling on it.

13       (3) Testimony that has been excluded or stricken, or that you have been instructed to

14           disregard, is not evidence and must not be considered.  In addition sometimes testimony

15           and exhibits are received only for a limited purpose; when I [give] [have given] a limiting

16           instruction, you must follow it.

17       (4) Anything you may have seen or heard when the court was not in session is not evidence.

18           You are to decide the case solely on the evidence received at the trial.

19

20   Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.7

21

22

23

24

25

26

27

28

1

**Stipulated Preliminary Instruction No. 8 Re Evidence For Limited Purpose**

2        Some evidence may be admitted for a limited purpose only.

3        When I instruct you that an item of evidence has been admitted for a limited purpose, you

4    must consider it only for that limited purpose and for no other.

5        ~~[The testimony [you are about to hear] [you have just heard] may be considered only for~~

6    ~~the limited purpose of [describe purpose] and for no other purpose.]~~

7

8    Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Stipulated Preliminary Instruction No. 9 Re Direct And Circumstantial Evidence**

2      Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as

3   testimony by a witness about what that witness personally saw or heard or did.  Circumstantial

4   evidence is proof of one or more facts from which you could find another fact.  You should

5   consider both kinds of evidence.  The law makes no distinction between the weight to be given to

6   either direct or circumstantial evidence.  It is for you to decide how much weight to give to any

7   evidence.

8

9   Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### Stipulated Preliminary Instruction No. 10 Re Ruling On Objections

2    There are rules of evidence that control what can be received into evidence.  When a

3   lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that

4   it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the

5   question may be answered or the exhibit received.  If I sustain the objection, the question cannot

6   be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question,

7   you must ignore the question and must not guess what the answer might have been.

8    Sometimes I may order that evidence be stricken from the record and that you disregard or

9   ignore the evidence. That means that when you are deciding the case, you must not consider the

10   evidence that I told you to disregard.

11

12   <u>Source:</u>  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.10

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 23 -

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Stipulated Preliminary Instruction No. 11 Re Charts And Summaries In Evidence**

Certain charts and summaries [may be] [have been] received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

<u>Source:</u>  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 2.13

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

1

**Stipulated Preliminary Instruction No. 12 Re Charts And Summaries Not Received In**

2

**Evidence**

3    Certain charts and summaries not received in evidence [may be] [have been] shown to you

4   in order to help explain the contents of books, records, documents, or other evidence in the case.

5   They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts

6   or figures shown by the evidence in the case, you should disregard these charts and summaries

7   and determine the facts from the underlying evidence.

8

9   Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 2.12

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1     **Stipulated Preliminary Instruction No. 13 Re Credibility Of Witnesses**

2    In deciding the facts in this case, you may have to decide which testimony to believe and

3 which testimony not to believe.  You may believe everything a witness says, or part of it, or none

4 of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

5    In considering the testimony of any witness, you may take into account:

6  (1) the opportunity and ability of the witness to see or hear or know the things testified to;

7  (2) the witness's memory;

8  (3) the witness's manner while testifying;

9  (4) the witness's interest in the outcome of the case and any bias or prejudice;

10  (5) whether other evidence contradicted the witness's testimony;

11  (6) the reasonableness of the witness's testimony in light of all the evidence; and

12  (7) any other factors that bear on believability.

13    The weight of the evidence as to a fact does not necessarily depend on the number of

14 witnesses who testify about it.

15

16 <u>Source:</u>  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.11

17

18

19

20

21

22

23

24

25

26

27

28

1

**Stipulated Preliminary Instruction No. 14 Re Expert Opinion**

2        Some witnesses, because of education or experience, are permitted to state opinions and

3  the reasons for those opinions.

4        Opinion testimony should be judged just like any other testimony.  You may accept it or

5  reject it, and give it as much weight as you think it deserves, considering the witness's education

6  and experience, the reasons given for the opinion, and all the other evidence in the case.

7

8  Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 2.11

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Stipulated Preliminary Instruction No. 15 Re Conduct Of The Jury**

2        I will now say a few words about your conduct as jurors.

3        First, keep an open mind throughout the trial, and do not decide what the verdict should be

4    until you and your fellow jurors have completed your deliberations at the end of the case.

5        Second, because you must decide this case based only on the evidence received in the case

6    and on my instructions as to the law that applies, you must not be exposed to any other

7    information about the case or to the issues it involves during the course of your jury duty.  Thus,

8    until the end of the case or unless I tell you otherwise:

9            Do not communicate with anyone in any way and do not let anyone else communicate

10           with you in any way about the merits of the case or anything to do with it.  This includes

11           discussing the case in person, in writing, by phone or electronic means, via e-mail, text

12           messaging, or any Internet chat room, blog, Web site or other feature.  This applies to

13           communicating with your fellow jurors until I give you the case for deliberation, and it

14           applies to communicating with everyone else including your family members, your

15           employer, the media or press, and the people involved in the trial, although you may

16           notify your family and your employer that you have been seated as a juror in the case.

17           But, if you are asked or approached in any way about your jury service or anything about

18           this case, you must respond that you have been ordered not to discuss the matter and to

19           report the contact to the court.

20           Because you will receive all the evidence and legal instruction you properly may consider

21           to return a verdict:  do not read, watch, or listen to any news or media accounts or

22           commentary about the case or anything to do with it; do not do any research, such as

23           consulting dictionaries, searching the Internet or using other reference materials; and do

24           not make any investigation or in any other way try to learn about the case on your own.

25        The law requires these restrictions to ensure the parties have a fair trial based on the same

26    evidence that each party has had an opportunity to address.  A juror who violates these

27    restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would

28

require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.12

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

**Stipulated Preliminary Instruction No. 16 Re No Transcript Available To Jury**

During deliberations, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.13

**Stipulated Preliminary Instruction No. 17 Re Taking Notes**

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case.  Do not let note-taking distract you.  When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room].  No one will read your notes.  They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.


Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.14

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

**Stipulated Preliminary Instruction No. 18 Re Bench Conferences And Recesses**

From time to time during the trial, it ~~[may become]~~ [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury ~~[is]~~ [was] present in the courtroom, or by calling a recess.  Please understand that while you ~~[are]~~ [were] waiting, we ~~[are]~~ [were] working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we ~~[will do]~~ [have done] what we ~~[can]~~ [could] to keep the number and length of these conferences to a minimum. I ~~[may]~~ [did] not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.18

1

**<u>Stipulated Preliminary Instruction No. 19 Re Outline Of Trial</u>**

2        The trial will now begin.  First, each side may make an opening statement.  An opening
3   statement is not evidence.  It is simply an outline to help you understand what that party expects
4   the evidence will show.

5        The presentation of evidence will then begin.  Witnesses will take the witness stand and
6   the documents will be offered and admitted into evidence.  There are two standards of proof that
7   you will apply to the evidence, depending on the issue you are deciding.  On some issues, you
8   must decide whether something is more likely true than not.  On other issues you must use a
9   higher standard and decide whether it is highly probable that something is true.

10       [Patent holder]TVIIM will present its evidence on its contention that [some] [the] claims
11   of the [____]'168 patent have been [and continue to be] infringed by [alleged infringer]McAfee
12   [and that the infringement has been [and continues to be] willful.]  These witnesses will be
13   questioned by [Patent holder]TVIIM's counsel in what is called direct examination.  After the
14   direct examination of a witness is completed, the opposing side has an opportunity to cross-
15   examine the witness.  To prove infringement of any claim, [patent holder]TVIIM must persuade
16   you that it is more likely than not that [alleged infringer]McAfee has infringed that claim.  [To
17   persuade you that any infringement was willful, [patent holder]TVIIM must prove that it is highly
18   probable that the infringement was willful.]

19       After [Patent holder]TVIIM has presented its witnesses, [alleged infringer]McAfee will
20   call its witnesses, who will also be examined and cross-examined.  [Alleged infringer]McAfee
21   will present its evidence that the claims of the [____]'168 patent are invalid and unenforceable.  To
22   prove invalidity or unenforceability of any claim, [alleged infringer]McAfee must persuade you
23   that it is highly probable that the claim is invalid or unenforceable.  In addition to presenting its
24   evidence of invalidity, [alleged infringer]McAfee will put on evidence responding to [patent
25   holder]TVIIM's infringement [and willfulness] contention[s].

26       [Patent holder]TVIIM will then return and will put on evidence responding to [alleged
27   infringer]McAfee's contention that the claims of the [____]'168 patent are invalid and
28   unenforceable.  [Patent holder]TVIIM will also have the option to put on what is referred to as

1   "rebuttal" evidence to any evidence offered by [alleged infringer]McAfee of non non-

2   infringement [or lack of willfulness].

3        Finally, [alleged infringer]McAfee will have the option to put on "rebuttal" evidence to

4   any evidence offered by [patent holder]TVIIM on the validity and enforceability of [some] [the]

5   claims of the [      ]'168 patent.

6        [During the presentation of the evidence, the attorneys will be allowed brief opportunities

7   to explain what they believe the evidence has shown or what they believe upcoming evidence will

8   show. Such comments are not evidence and are being allowed solely for the purpose of helping

9   you understand the evidence.]

10       Because the evidence is introduced piecemeal, you need to keep an open mind as the

11  evidence comes in and wait for all the evidence before you make any decisions.  In other words,

12  you should keep an open mind throughout the entire trial.

13       [The parties may present the testimony of a witness by reading from his or her deposition

14  transcript or playing a videotape of the witness's deposition testimony.  A deposition is the sworn

15  testimony of a witness taken before trial and is entitled to the same consideration as if the witness

16  had testified at trial.]

17       After the evidence has been presented, [the attorneys will make closing arguments and I

18  will give you final instructions on the law that applies to the case] [I will give you final

19  instructions on the law that applies to the case and the attorneys will make closing arguments].

20  Closing arguments are not evidence.  After the [closing arguments and instructions] [instructions

21  and closing arguments], you will then decide the case.

22

23  Source:  Model Patent Jury Instructions for the Northern District of California (June 17, 2014) –

24  Instruction A.5

25

26

27

28

1

**Stipulated General Instruction No. 1 Re Stipulations Of Fact**

2

    The parties have agreed to certain facts [to be placed in evidence as Exhibit ___] [that will

3

be read to you]. You should therefore treat these facts as having been proved.

4

5

Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 2.2

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **Stipulated General Instruction No. 2 Re Deposition In Lieu Of Live Testimony**

2         A deposition is the sworn testimony of a witness taken before trial.  The witness is placed

3    under oath to tell the truth and lawyers for each party may ask questions.  The questions and

4    answers are recorded.  [When a person is unavailable to testify at trial, the deposition of that

5    person may be used at the trial.]

6         The deposition of [witness] was taken on [date].  You should consider deposition

7    testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way

8    as if the witness had been present to testify.

9    [Do not place any significance on the behavior or tone of voice of any person reading the

10   questions or answers.]

11

12   Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 2.4

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Stipulated General Instruction No. 3 Re Use Of Interrogatories Of A Party**

Evidence [will now be] [was] presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers [have been] [were] given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 2.10

**Stipulated General Instruction No. 4 Re Evidence For Limited Purpose**

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [describe purpose] and for no other purpose.]

Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.8

1

**Stipulated Concluding Instruction No. 1 Re Duty Of Jury**

2      Members of the Jury:  Now that you have heard all of the evidence [and the arguments of

3  the attorneys], it is my duty to instruct you as to the law of the case.

4      [Each of you has received a copy of these instructions that you may take with you to the

5   jury room to consult during your deliberations.]

6                                         *or*

7      [A copy of these instructions will be sent with you to the jury room when you deliberate.]

8      You must not infer from these instructions or from anything I may say or do as indicating

9  that I have an opinion regarding the evidence or what your verdict should be.

10      It is your duty to find the facts from all the evidence in the case.  To those facts you will

11  apply the law as I give it to you.  You must follow the law as I give it to you whether you agree

12  with it or not.  And you must not be influenced by any personal likes or dislikes, opinions,

13  prejudices, or sympathy.  That means that you must decide the case solely on the evidence before

14  you.  You will recall that you took an oath to do so.

15      In following my instructions, you must follow all of them and not single out some and

16  ignore others; they are all important.

17

18  Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.1C

19

20

21

22

23

24

25

26

27

28

1

**Stipulated Concluding Instruction No. 2 Re What Is Evidence**

2

    The evidence you are to consider in deciding what the facts are consists of:

3

1.  the sworn testimony of any witness;

4

2.  the exhibits which are received into evidence; and

5

3.  any facts to which the lawyers have agreed.

6

7

<u>Source:</u>  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.6

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Stipulated Concluding Instruction No. 3 Re What Is Not Evidence

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses. What they have said in their opening statements, [will say in their] closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I [give] [have given] a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.


Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.7

1

**Stipulated Concluding Instruction No. 4 Re Direct And Circumstantial Evidence**

2      Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as

3  testimony by a witness about what that witness personally saw or heard or did.  Circumstantial

4  evidence is proof of one or more facts from which you could find another fact.  You should

5  consider both kinds of evidence.  The law makes no distinction between the weight to be given to

6  either direct or circumstantial evidence.  It is for you to decide how much weight to give to any

7  evidence.

8

9  <u>Source:</u>  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

**Stipulated Concluding Instruction No. 5 Re Ruling On Objections**

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.10

**<u>Stipulated Concluding Instruction No. 6 Re Deposition In Lieu Of Live Testimony</u>**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  [When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.]

The deposition of various [witnesses] were~~as~~ taken ~~on [date]~~prior to this trial.  You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

~~[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]~~

<u>Source:</u>  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 2.4

1

**Stipulated Concluding Instruction No. 7 Re Expert Opinion**

2      Some witnesses, because of education or experience, are permitted to state opinions and

3  the reasons for those opinions.

4      Opinion testimony should be judged just like any other testimony.  You may accept it or

5  reject it, and give it as much weight as you think it deserves, considering the witness's education

6  and experience, the reasons given for the opinion, and all the other evidence in the case.

7

8  <u>Source:</u>  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 2.11

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Stipulated Concluding Instruction No. 8 Re Charts And Summaries In Evidence**

Certain charts and summaries [may be] [have been] received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 2.13

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

1
2

## Stipulated Concluding Instruction No. 9 Re Charts And Summaries Not Received In Evidence

3          Certain charts and summaries not received in evidence [may be] [have been] shown to you
4   in order to help explain the contents of books, records, documents, or other evidence in the case.
5   They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or
6   figures shown by the evidence in the case, you should disregard these charts and summaries and
7   determine the facts from the underlying evidence.

8

9   Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 2.12

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1        **Stipulated Concluding Instruction No. 10 Re Evidence In Electronic Format**

2              Those exhibits capable of being displayed electronically will be provided to you in that

3     form, and you will be able to view them in the jury room. A computer, projector, printer and

4     accessory equipment will be available to you in the jury room.

5              A court technician will show you how to operate the computer and other equipment; how

6     to locate and view the exhibits on the computer; and how to print the exhibits. You will also be

7     provided with a paper list of all exhibits received in evidence. (Alternatively, you may request a

8     paper copy of an exhibit received in evidence by sending a note through the [clerk] [bailiff].) If

9     you need additional equipment or supplies, you may make a request by sending a note.

10             In the event of any technical problem, or if you have questions about how to operate the

11    computer or other equipment, you may send a note to the [clerk] [bailiff], signed by your

12    foreperson or by one or more members of the jury. Be as brief as possible in describing the

13    problem and do not refer to or discuss any exhibit you were attempting to view.

14             If a technical problem or question requires hands-on maintenance or instruction, a court

15    technician may enter the jury room [with [the clerk] [the bailiff] [me] present for the sole purpose

16    of assuring that the only matter that is discussed is the technical problem.] When the court

17    technician or any non-juror is in the jury room, the jury shall not deliberate. No juror may say

18    anything to the court technician or any non-juror other than to describe the technical problem or

19    to seek information about operation of equipment. Do not discuss any exhibit or any aspect of the

20    case.

21             The sole purpose of providing the computer in the jury room is to enable jurors to view

22    the exhibits received in evidence in this case. You may not use the computer for any other

23    purpose.  At my direction, technicians have taken steps to make sure that the computer does not

24    permit access to the Internet or to any "outside" website, database, directory, game, or other

25    material.  Do not attempt to alter the computer to obtain access to such materials. If you discover

26    that the computer provides or allows access to such materials, you must inform me immediately

27    and refrain from viewing such materials. Do not remove the computer or any electronic data

28    [disk] from the jury room, and do not copy any such data.

1    Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 2.14

1

**Stipulated Concluding Instruction No. 11 Re Credibility Of Witnesses**

2       In deciding the facts in this case, you may have to decide which testimony to believe and

3 which testimony not to believe.  You may believe everything a witness says, or part of it, or none

4 of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

5       In considering the testimony of any witness, you may take into account:

6     (1) the opportunity and ability of the witness to see or hear or know the things testified to;

7     (2) the witness's memory;

8     (3) the witness's manner while testifying;

9     (4) the witness's interest in the outcome of the case and any bias or prejudice;

10     (5) whether other evidence contradicted the witness's testimony;

11     (6) the reasonableness of the witness's testimony in light of all the evidence; and

12     (7) any other factors that bear on believability.

13       The weight of the evidence as to a fact does not necessarily depend on the number of

14 witnesses who testify about it.

15

16 <u>Source:</u>  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.11

17

18

19

20

21

22

23

24

25

26

27

28

*<u>**DISPUTED</u> Concluding Instruction No. 12A Re Summary Of Contentions, Offered By TVIIM**

I will first give you a summary of each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions. As I previously told you, [patent holder]TVIIM seeks money damages from [alleged infringer]McAfee for allegedly infringing the [     ]'168 patent by [making,] [importing,] [using,] [selling] and [offering for sale] [products] [methods] that [patent holder]TVIIM argues are covered by claims [     ]1, 2, 3, 7, 8, 9, 11, 12, 19, and 20 of the '168 patent. These are the asserted claims of the [     ]'168 patent. [Patent holder]TVIIM also argues that [alleged infringer]McAfee has [actively induced infringement of these claims of the [     ]'168 patent by others] [and contributed to the infringement of these claims of the [     ]'168 patent by others]. The [products] [and methods] that are alleged to infringe are computer security software that incorporates a feature that McAfee calls its "Vulnerability Scanner." [list of accused products or methods].

[Alleged infringer]McAfee denies that it has infringed the asserted claims or induced or contributed to the infringement of any claims of the patent and argues that, in addition, claims 1, 2, 3, 7, 8, 9, 11, 12, 19, and 20[     ] are invalid and unenforceable. [Add other defenses if applicable.]

Your job is to decide whether the asserted claims of the [     ]'168 patent have been infringed and whether any of the asserted claims of the [     ]'168 patent are invalid. If you decide that any claim of the patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to [patent holder]TVIIM to compensate it for the infringement. [You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you make. I will take willfulness into account later.]

<u>Source:</u> Model Patent Jury Instructions for the Northern District of California (June 17, 2014) – Instruction B.1

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

1
2

### *DISPUTED* Concluding Instruction No. 12B Re Summary Of Contentions, Offered By McAfee

3   I will first give you a summary of each side's contentions in this case.  I will then tell you

4   what each side must prove to win on each of its contentions.  As I previously told you, [patent

5   holder]TVIIM seeks money damages from [alleged infringer]McAfee for allegedly infringing the

6   [___]'168 patent by [making,] [importing,] [using,] [selling] and [offering for sale] [products]

7   [methods] that [patent holder]TVIIM argues are covered by claims [___]1, 2, 3, 7, 8, 9, 11, 12, 19,

8   and 20 of the '168 patent.  These are the asserted claims of the [___]'168 patent.  [Patent

9   holder]TVIIM also argues that [alleged infringer]McAfee has [actively induced infringement of

10  these claims of the [___]'168 patent by others] [and contributed to the infringement of these

11  claims of the [___]'168 by others].  The [products] [and methods] that are alleged to

12  infringe are McAfee's Antivirus Plus, Internet Security, Total Protection, LiveSafe, and All

13  Access consumer products that incorporate the Vulnerability Scanner feature[list of accused

14  products or methods].

15  [Alleged infringer]McAfee denies that it has infringed the asserted claims or induced or

16  contributed to the infringement of any claims of the patent and argues that, in addition, claims 1,

17  2, 3, 7, 8, 9, 11, 12, 19, and 20[___] are invalid and unenforceable.  [Add other defenses if

18  applicable.]

19  Your job is to decide whether the asserted claims of the [___]'168 patent have been

20  infringed and whether any of the asserted claims of the [___]'168 patent are invalid.  If you decide

21  that any claim of the patent has been infringed and is not invalid, you will then need to decide any

22  money damages to be awarded to [patent holder]TVIIM to compensate it for the infringement.

23  [You will also need to make a finding as to whether the infringement was willful.  If you decide

24  that any infringement was willful, that decision should not affect any damage award you make.  I

25  will take willfulness into account later.]

26

27  Source:  Model Patent Jury Instructions for the Northern District of California (June 17, 2014) –
Instruction B.1

28

**TVIIM's Position:**

The only dispute between the parties is how to characterize the accused products.  TVIIM proposes that the instructions refer to the accused products as computer software that includes the "Vulnerability Scanner" feature.  McAfee proposes instead that the instruction name specific products.  It is preferable to refer to the "Vulnerability Scanner" feature because – at trial – the focus will be on that feature, not the various names that McAfee has given to its product suite.  Further, while the names that McAfee gives to its products change from year to year, the "Vulnerability Scanner" has stayed constant.  Finally, McAfee's proposal omits at least one product – Security Scanner – that McAfee has itself identified as incorporating the "Vulnerability Scanner."

1   **McAfee's Position:**

2           The parties' dispute with respect to this instruction concerns the description of the

3   products at issue.  McAfee proposes an accurate and precise identification of the accused products

4   (i.e., "McAfee's Antivirus Plus, Internet Security, Total Protection, LiveSafe, and All Access

5   consumer products with the Vulnerability Scanner feature").  TVIIM *agrees* that this is the

6   correct list of accused products in this case.  *See* Joint Pretrial Statement, Undisputed Fact No. 9

7   ("TVIIM has accused the following McAfee consumer products of infringing the '168 patent:

8   Antivirus Plus, Internet Security, Total Protection, LiveSafe, and All Access.")  Nevertheless,

9   TVIIM proposes to identify the accused products generically as "computer security software that

10  incorporates a feature that McAfee calls its 'Vulnerability Scanner.'"  The jury would benefit

11  from precision in the identification of the products at issue, particularly where there is no dispute

12  between the parties regarding what the accused products are.  McAfee respectfully requests that

13  the Court maintain consistency and precision in the jury instructions by defining the accused

14  products as "McAfee's Antivirus Plus, Internet Security, Total Protection, LiveSafe, and All

15  Access consumer products with the Vulnerability Scanner feature" throughout the instructions.

16

17

18

19

20

21

22

23

24

25

26

27

28

**Stipulated Concluding Instruction No. 13 Re How A Claim Defines What It Covers**

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. ~~If a device or a method satisfies each of these requirements, then it is covered by the claim.~~

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a product or a method~~process~~) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or method~~process~~ where each of the claim elements or limitations is present in that product or method~~process~~.

~~Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.~~

~~As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.~~

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or method~~process~~ must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

Source: Federal Circuit Bar Association, Model Patent Jury Instructions 2014 – Instruction B.2.2

1    **Stipulated Concluding Instruction No. 14 Re Independent And Dependent Claims**

2          This case involves two types of patent claims:  independent claims and dependent claims.

3          An "independent claim" sets forth all of the requirements that must be met in order to be

4    covered by that claim.  Thus, it is not necessary to look at any other claim to determine what an

5    independent claim covers. In this case, claim(s) [ ]1 and 11 of the [ ]'168 patent are each

6    independent claims.

7          The remainder of the claims in the [ ]'168 patent are "dependent claims."  A dependent

8    claim does not itself recite all of the requirements of the claim but refers to another claim for

9    some of its requirements.  In this way, the claim "depends" on another claim.  A dependent claim

10   incorporates all of the requirements of the claim(s) to which it refers.  The dependent claim then

11   adds its own additional requirements.  To determine what a dependent claim covers, it is

12   necessary to look at both the dependent claim and any other claim(s) to which it refers.  A product

13   [or processmethod] that meets all of the requirements of both the dependent claim and the

14   claim(s) to which it refers is covered by that dependent claim.

15

16   Source:  Federal Circuit Bar Association, Model Patent Jury Instructions 2014 – Instruction

17   B.2.2a

18

19

20

21

22

23

24

25

26

27

28

1    ___***DISPUTED*** Concluding Instruction No. 15A Re Interpretation Of Claims, Offered By___

2    ___TVIIM___

3         Before you decide whether [alleged infringer]McAfee has infringed the claim[s] of the

4    patent or whether the claim[s] [is][are] invalid, you will need to understand the patent claims.  As

5    I mentioned, the patent claims are numbered sentences at the end of the patent that describes the

6    boundaries of the patent's protection.  It is my job as judge to explain to you the meaning of any

7    language in the claim[s] that needs interpretation.

8         I have interpreted the meaning of some of the language in the patent claims involved in

9    this case.  You must accept those interpretations as correct.  My interpretation of the language

10   should not be taken as an indication that I have a view regarding the issues of infringement and

11   invalidity.  The decisions regarding infringement and invalidity are yours to make.

12        The term "vulnerability" means a preexisting security problem.

13        The term "utility module which . . . performs various utility functions" means a module

14   that performs functions which supplement or otherwise assist the operations of the security

15   modules and are distinct from administrative modules.

16        The term "reporting module which provides status information to the GUI with regards to

17   the operations of the security system" means an administrative module that provides the

18   functionality to display to a system user the vulnerabilities and other items generated by the

19   security system.

20        [Court gives its claim interpretation.  This instruction must be coordinated with instruction

21   3.5 "Means-Plus-Function Claims—Literal Infringement" if the claims at issue include means-

22   plus-function limitations.]

23

24   Source:  Model Patent Jury Instructions for the Northern District of California, 2.1 Interpretation

25   of Claims; *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Phillips v.*

26   *AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*,

27   182 F.3d 1298, 1304-13 (Fed. Cir. 1999); *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir.

28   1998) (en banc); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (en

1   banc).

<u>***DISPUTED* Concluding Instruction No. 15B Re Interpretation Of Claims, Offered By**</u>

<u>**McAfee**</u>

Before you decide whether [alleged infringer]McAfee has infringed the claim[s] of the patent or whether the claim[s] [is][are] invalid, you will need to understand the patent claims.  As I mentioned, the patent claims are numbered sentences at the end of the patent that describes the boundaries of the patent's protection.  It is my job as judge to explain to you the meaning of any language in the claim[s] that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case.  You must accept those interpretations as correct.  My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity.  The decisions regarding infringement and invalidity are yours to make.

[Court gives its claim interpretation.  This instruction must be coordinated with instruction 3.5 "Means-Plus-Function Claims—Literal Infringement" if the claims at issue include means-plus-function limitations.]

The subjective intent of an inventor or applicant for a patent, including testimony about what concepts the inventor believes he invented or patented, is irrelevant to the meaning of the claims of the patent.

Source:  Model Patent Jury Instructions for the Northern District of California (June 17, 2014) – Instruction B.2.1; *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1347 (Fed. Cir. 2008) ("We hold that inventor testimony as to the inventor's subjective intent is irrelevant to the issue of claim construction.")

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

**TVIIM's Position:**

TVIIM objects to the language added by McAfee to Model Patent Jury Instructions for the Northern District of California, B.2.1 re Interpretation of Claims.  Specifically, TVIIM objects to the following language: "The subjective intent of an inventor or applicant for a patent, including testimony about what concepts the inventor believes he invented or patented, is irrelevant to the meaning of the claims of the patent."  In addition to deviating from the Model Instruction, the case law support offered by McAfee of *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1347 (Fed. Cir. 2008) does not support such a proposition.

While neither an inventor nor an expert witness can offer a subjective opinion as to the meaning of any claim term, there is no prohibition of inventors discussing the concepts included in the patented invention.  *Id.*  ("We hold that inventor testimony as to the inventor's subjective intent is irrelevant to the issue of ***claim construction***.") (emphasis added); *ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314, 1321-22 (Fed. Cir. 2012) ("Thus, while testimony regarding an inventor's subjective understanding of patent terminology is irrelevant to claim construction [], when an inventor's understanding of a claim term is expressed in prior art, it can be evidence of how those skilled in the art would have understood that terms at the time of the invention.") (*citing Markman v. Westview Instruments*, 52 F.3d 967, 991 (Fed. Cir. 1995) (*en banc*), *aff'd* 517 U.S. 370 (1996) ("[E]vidence, in the form of prior art documentary evidence or expert testimony, can show what the claims would mean to those skilled in the art.")); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (2002) (weighing testimony of expert and inventor in evaluation of claim term).  Accordingly, McAfee's proposed instruction is far more restrictive than the law supports.

TVIIM's corresponding proposed model instruction faithfully adheres to the Model Patent Jury Instructions for the Northern District of California and should be adopted instead.

1    **McAfee's Position:**

2         The Court should adopt McAfee's proposed instruction for two reasons.  First, McAfee's

3    proposed instruction supplements the Northern District of California's model instruction only as

4    necessary to account for the unique circumstances of this case, in which TVIIM offers Eric

5    Knight—a named inventor on the '168 patent—as a fact witness, a corporate designee, and a paid

6    invalidity expert in this case.  As noted in McAfee's Motion in Limine No. 3, Mr. Knight's many

7    roles create the potential for significant jury confusion and prejudice to McAfee.  (Dkt. No. 167.)

8    One area ripe for such confusion and prejudice is the meaning of the asserted claims.  The Federal

9    Circuit has explicitly instructed that "inventor testimony as to the inventor's subjective intent is

10   irrelevant to the issue of claim construction." *Howmedica Osteonics v. Wright Med. Tech.*, 540

11   F.3d 1337, 1347 (Fed. Cir. 2008).  Any instruction on the interpretation of claims should

12   therefore clearly inform the jury that the subjective intent of an inventor, like Mr. Knight, is not

13   relevant to the proper interpretation of a claims at issue in this case.  *See Eagle Harbor Holdings,*

14   *LLC v. Ford Motor Co.*, 11-cv-5503 (W.D. Wash. Mar. 24, 2015) (Final Jury Instruction No. 15).

15        Second, TVIIM's proposed instruction supplements the Northern District of California's

16   model instruction to include specific proposed claim constructions that have not been adopted by

17   the Court.  The Court has instructed that any claim construction issues be raised in connection

18   with summary judgment motion practice.  The parties have accordingly presented their disputes

19   to the Court in that context.   McAfee objects to TVIIM's proposed constructions for the same

20   reasons as McAfee previously briefed (Dkt Nos. 120, 138) and argued at the May 13, 2015

21   hearing before the Court.  McAfee respectfully requests that the Court accept McAfee's positions

22   on these claim construction issues, and that the Court instruct the jury accordingly.

23

24

25

26

27

28

**Stipulated Concluding Instruction No. 16 Re Infringement—Burden Of Proof**

I will now instruct you on the rules you must follow in deciding whether ~~[patent holder]~~TVIIM has proven that ~~[alleged infringer]~~McAfee has infringed one or more of the asserted claims of the ~~[       ]~~'168 patent.  To prove infringement of any claim, ~~[patent holder]~~TVIIM must persuade you that it is more likely than not that ~~[alleged infringer]~~McAfee has infringed that claim.

Source:  Model Patent Jury Instructions for the Northern District of California (June 17, 2014) – Instruction B.3.1

1

### Stipulated Concluding Instruction No. 17 Re Direct Infringement

2  A patent's claims define what is covered by the patent.  A [product] [method] directly

3  infringes a patent if it is covered by at least one claim of the patent.

4  Deciding whether a claim has been directly infringed is a two-step process.  The first step

5  is to decide the meaning of the patent claim.  I have already made this decision, [and I will

6  instruct you later as to the meaning of the asserted patent claims] [and I have already instructed

7  you as to the meaning of the asserted patent claims].  The second step is to decide whether

8  [alleged direct infringer]McAfee has [made,] [used,] [sold,] [or offered for sale] or [imported]

9  within the United States a [product] [method] covered by a claim of the [    ]'168 patent.   If it

10  has, it infringes.  You, the jury, make this decision.

11  [With one exception,] you must consider each of the asserted claims of the patent

12  individually, and decide whether [alleged direct infringer]McAfee's [products] [method] infringes

13  that claim.  [The one exception to considering claims individually concerns dependent claims.  A

14  dependent claim includes all of the requirements of a particular independent claim, plus

15  additional requirements of its own.  As a result, if you find that an independent claim is not

16  infringed, you must also find that its dependent claims are not infringed.  On the other hand, if

17  you find that an independent claim has been infringed, you must still separately decide whether

18  the additional requirements of its dependent claims have also been infringed.]

19  [You have heard evidence about both [patent holder]'s commercial [[product] [method]]

20  and [alleged infringer]'s accused [[product] [method]].  However, in deciding the issue of

21  infringement you may not compare [alleged infringer]'s accused [[product] [method]] to [patent

22  holder]'s commercial [[product] [method]].  Rather, you must compare the [alleged infringer]'s

23  accused [[product] [method]] to the claims of the [    ] patent when making your decision

24  regarding infringement.]

25  Whether or not [alleged infringer]McAfee knew its [products][method] infringed or even

26  knew of the patent does not matter in determining direct infringement.

27  There are two ways in which a patent claim may be directly infringed.  A claim may be

28  "literally" infringed, or it may be infringed under the "doctrine of equivalents."  The following

1    ~~instructions will provide more detail on these two types of direct infringement.  [You should note,~~

2    ~~however, that what are called "means-plus-function" requirements in a claim are subject to~~

3    ~~different rules for deciding direct infringement.  These separate rules apply to claims [      ].  I will~~

4    ~~describe these separate rules shortly.]~~

5

6    Source:  Model Patent Jury Instructions for the Northern District of California (June 17, 2014) –

7    Instruction B.3.2

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   ### _DISPUTED_ Concluding Instruction No. 18A Re Literal Infringement, Offered By TVIIM

2   To decide whether ~~[alleged infringer]~~McAfee's [product]~~ [method]~~ literally infringe~~s~~ a

3   claim of the ~~[     ]~~168 patent, you must compare that ~~[~~product]~~ [method]~~ with the patent claim and

4   determine whether every requirement of the claim is included in that [product]~~ [method]~~.  If so,

5   ~~[alleged infringer]~~McAfee's [product]~~ [method]~~ literally infringe~~s~~ that claim.  If, however,

6   ~~[alleged infringer]~~McAfee's [product]~~ [method]~~ does not have every requirement in the patent

7   claim, ~~[alleged infringer]~~McAfee's [product]~~ [method]~~ does not literally infringe that claim.  You

8   must decide literal infringement for each asserted claim separately.

9   [If the patent claim uses the term "comprising," that patent claim is to be understood as an

10  open claim.  An open claim is infringed as long as every requirement in the claim is present in

11  ~~[alleged infringer]~~McAfee's [product]~~ [method]~~. The fact that ~~[alleged infringer]~~McAfee's

12  [product]~~ [method]~~ also includes~~s~~ other [parts]~~ [or~~ steps] will not avoid infringement, as long as it

13  has every requirement in the patent claim.]

14  ~~[If the patent claim uses the term "consisting of," that patent claim is to be understood as~~

15  ~~a closed claim.  To infringe a closed claim, [alleged infringer]'s [product] [method] must have~~

16  ~~every requirement in the claim and no other [parts] [steps].]~~

17  ~~[If the patent claim uses the term "consisting essentially of," that patent claim is to be~~

18  ~~understood as a partially closed claim.  A partially closed claim is infringed as long as every~~

19  ~~requirement in the claim is present in [alleged infringer]'s [product] [method]. The fact that~~

20  ~~[alleged infringer]'s [product] [method] also includes other [parts] [steps] will not avoid~~

21  ~~infringement so long as those [parts] [steps] do not materially affect the basic and novel~~

22  ~~properties of the invention.  If [accused infringer]'s [product] [method] includes other [parts]~~

23  ~~[steps] that do change those basic and novel properties, it does not infringe.]~~

24  [If ~~[alleged infringer's]~~McAfee's [product]~~ [method]~~ does not itself include every

25  requirement in the patent claim, ~~[alleged infringer]~~McAfee cannot be liable for infringement

26  merely because other parties supplied the missing elements, unless ~~[accused infringer]~~McAfee

27  directed or controlled the acts by those parties.]  ~~[Alleged infringer]~~McAfee does not direct or

28  control someone else's action merely because ~~[alleged infringer]~~McAfee entered into a business

1    relationship with that person. Instead, ~~[alleged infringer]~~McAfee must specifically instruct or

2    cause that other person to perform each step in an infringing manner, so that every step is

3    attributable to ~~[alleged infringer]~~McAfee as controlling party.

4         ~~[~~If one party controls and makes use of a system that contains all the requirements of the

5    claim, that party may be an infringer even though the parts of the system do not all operate in the

6    same place or at the same time.~~]~~

7

8    <u>Source:</u> Model Patent Jury Instructions for the Northern District of California, 3.3 Literal

9    Infringement; *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352-53 (Fed. Cir.

10    2005); *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001); *Cole v. Kimberly-

11    Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996); *Ecolab, Inc. v. FMC Corp.*, 535 F.3d 1369 (Fed.

12    Cir. 2009); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293 (Fed. Cir. 2005);

13    *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007).

1     ***DISPUTED* Concluding Instruction No. 18B Re Literal Infringement, Offered By McAfee**

2     To decide whether ~~[alleged infringer]~~McAfee's [product~~s~~] ~~[method]~~ literally infringe~~s~~ a

3 claim of the ~~[_____]~~'168 patent, you must compare that [product~~]~~ ~~[method]~~ with the patent claim

4 and determine whether every requirement of the claim is included in that [product~~]~~ ~~[method]~~. If

5 so, ~~[alleged infringer]~~McAfee's [product~~s~~] ~~[method]~~ literally infringe~~s~~ that claim. If, however,

6 ~~[alleged infringer]~~McAfee's [product~~s~~] ~~[method]~~ do~~es~~ not have every requirement in the patent

7 claim, ~~[alleged infringer]~~McAfee's [product~~s~~] ~~[method]~~ do~~es~~ not literally infringe that claim.

8 You must decide literal infringement for each asserted claim separately.

9     ~~[~~If the patent claim uses the term "comprising," that patent claim is to be understood as an

10 open claim. An open claim is infringed as long as every requirement in the claim is present in

11 ~~[alleged infringer]~~McAfee's [product~~s~~] ~~[method]~~. The fact that ~~[alleged infringer]~~McAfee's

12 [product~~s~~] ~~[method]~~ also includes other [parts] ~~[or steps]~~ will not avoid infringement, as long as it

13 has every requirement in the patent claim.~~]~~

14     ~~[If the patent claim uses the term "consisting of," that patent claim is to be understood as a~~

15 ~~closed claim. To infringe a closed claim, [alleged infringer]'s [product] [method] must have~~

16 ~~every requirement in the claim and no other [parts] [steps].]~~

17     ~~[If the patent claim uses the term "consisting essentially of," that patent claim is to be~~

18 ~~understood as a partially closed claim. A partially closed claim is infringed as long as every~~

19 ~~requirement in the claim is present in [alleged infringer]'s [product] [method]. The fact that~~

20 ~~[alleged infringer]'s [product] [method] also includes other [parts] [steps] will not avoid~~

21 ~~infringement so long as those [parts] [steps] do not materially affect the basic and novel~~

22 ~~properties of the invention. If [accused infringer]'s [product] [method] includes other [parts]~~

23 ~~[steps] that do change those basic and novel properties, it does not infringe. ]~~

24     Direct infringement requires that a party perform every step of a claimed method.

25     Where no single party does so, but multiple parties combine to do so, the claim is directly

26 infringed if McAfee has control over all the multiple parties such that all the infringing acts are all

27 attributable to McAfee. Mere arms-length cooperation between parties is insufficient to prove

28

1  direct infringement. Rather, the accused infringer must control or direct the actions of third

2  parties if those actions are to be attributed to the accused infringer.

3     For infringement to be proved, TVIIM must prove by a preponderance of the evidence (1)

4  that all the steps of the claimed process were performed in the United States and (2) that McAfee

5  controls or directs third parties to perform the steps not performed by McAfee. [If [alleged

6  infringer's] [product] [method] does not itself include every requirement in the patent claim,

7  [alleged infringer] cannot be liable for infringement merely because other parties supplied the

8  missing elements, unless [accused infringer] directed or controlled the acts by those parties.]

9  [Alleged infringer] does not direct or control someone else's action merely because [alleged

10  infringer] entered into a business relationship with that person. Instead, [alleged infringer] must

11  specifically instruct or cause that other person to perform each step in an infringing manner, so

12  that every step is attributable to [alleged infringer] as controlling party.

13     [If one party controls and makes use of a system that contains all the requirements of the

14  claim, that party may be an infringer even though the parts of the system do not all operate in the

15  same place or at the same time.]

16

17

18  Source: Model Patent Jury Instructions for the Northern District of California (June 17, 2014) –

19  Instruction B.3.3; Federal Circuit Bar Association, Model Patent Jury Instructions 2014 –

20  Instruction B.3.7; 35 U.S.C. § 271(a); *Muniauction Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329-

21  30 (Fed. Cir. 2008) ("Accordingly, where the actions of multiple parties combine to perform

22  every step of a claimed method, the claim is directly infringed only if every step is attributable to

23  the controlling party, i.e., the 'mastermind.'"); *BMC Resources Inc. v. Paymentech LP*, 498 F.3d

24  1373, 1378-81 (Fed. Cir. 2007) ("Courts faced with a divided infringement theory have also

25  generally refused to find liability where on party did not control or direct each step of the patented

26  process."); *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1344-45 (Fed. Cir.

27  2006) (infringement by multiple alleged infringers); *Cross Med. Prods., Inc. v. Medtronic*

28  *Sofamor Danek*, 424 F.3d 1293, 1311 (Fed. Cir. 2005) (holding that where users of the accused

1   product, not the manufacturer, "make[] the claimed apparatus," manufacturer does not directly

2   infringe); *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014) (holding

3   that "there has simply been no infringement of the method in which the respondents have staked

4   out an interest, because the performance of all the patent's steps is not attributable to any one

5   person").

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>TVIIM's Position:</u>**

TVIIM objects to the language added by McAfee to Model Patent Jury Instructions for the Northern District of California, B.3.3 re Literal Infringement. Specifically, TVIIM objects to the following addition: "Direct infringement requires that a party perform every step of the claimed method. Where no single party does so, but multiple parties combine to do so, the claim is directly infringed if one party has control over all the multiple parties such that all the infringing acts are all attributable to that one party. Mere arms-length cooperation between parties is insufficient to prove direct infringement. Rather, the accused infringer must control or direct the actions of third parties if those actions are to be attributed to the accused infringer. For infringement to be proved, TVIIM must prove by a preponderance of the evidence (1) that all steps of the claimed process were performed in the United States and (2) that McAfee controls or directs third parties to perform the steps not performed by McAfee."

Though this instruction incorporates some language found in Federal Circuit Bar Association, Model Patent Jury Instructions 20014 – Instruction B.3.7, that language is contorted and inaccurate. First, the Northern District's Model Instruction adequately instructs the jury on the law regarding literal infringement, and McAfee's additional proposed language will simply serve to confuse the jury, and is thus inappropriate. Additionally, the Model Patent Jury Instruction for the Northern District of California B.3.1, proposed by McAfee as "Stipulated Concluding Instruction No. 15" <u>already provides the jury with the applicable burden of proof.</u> TVIIM's corresponding proposed model instruction faithfully adheres to the Model Patent Jury Instructions for the Northern District of California and should be adopted instead.

1    **McAfee's Position:**

2            To the extent that TVIIM argues at trial that the actions of McAfee's customers help

3    satisfy TVIIM's burden of proof for direct infringement—e.g., TVIIM's burden to prove claim

4    1's requirement that certain actions occur "in response to the identified vulnerabilities"—then the

5    jury would need to understand the law governing "joint" or "divided" infringement theories. *See*

6    Expert Report of Dr. Moses Garuba at 18-19 ("While McAfee acknowledged that there are risks

7    associated with updating any application, it decided that the consumer should be able to decide

8    whether it wants to take advantage of an available update.").  The Federal Circuit recently

9    confirmed that a defendant can be liable for the actions of others only where the defendant acts as

10   a "mastermind" that "direct[s] or control[s]" the actions of others. *Akamai Techs., Inc. v.*

11   *Limelight Networks, Inc.*, -- F.3d --, 2015 WL 2216261, at *1 (Fed. Cir. May 13, 2015*); see also*

12   *BMC Resources Inc. v. Paymentech LP*, 498 F.3d 1373, 1378-81 (Fed. Cir. 2007) ("Courts faced

13   with a divided infringement theory have also generally refused to find liability where on party did

14   not control or direct each step of the patented process."); *On Demand Mach. Corp. v. Ingram*

15   *Indus., Inc.*, 442 F.3d 1331, 1344-45 (Fed. Cir. 2006) (infringement by multiple alleged

16   infringers); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1311 (Fed. Cir.

17   2005) (holding that where users of the accused product, not the manufacturer, "make[] the

18   claimed apparatus," manufacturer does not directly infringe).  The Federal Circuit also made clear

19   that "arms-length seller-customer relationships" do not satisfy this standard. *Akamai Techs., Inc.*,

20   2015 WL 2216261, at *8.  McAfee's proposed instruction, which is adopted from the Federal

21   Circuit Bar Association's 2014 Model Patent Jury Instructions, clearly and accurately articulates

22   this standard for infringement based on the actions of multiple entities.

23           TVIIM's proposed instruction does not provide the same degree of clarity.  For example,

24   it notes that "McAfee does not direct or control someone else's action merely because McAfee

25   entered into a business relationship with that person."  But, it does not explain that "[m]ere arms-

26   length cooperation between parties is insufficient to prove direct infringement" as McAfee's

27   proposed instruction does.  TVIIM's proposal is therefore likely to confuse the jury and may

28   prejudice McAfee by failing to properly articulate the governing law.

**Stipulated Concluding Instruction No. 19 Re Contributory Infringement**

[Patent holder] [also]TVIIM argues that [alleged infringer]McAfee has contributed to infringement by another.  Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

In order for there to be contributory infringement by [alleged infringer]McAfee, someone other than [alleged infringer]McAfee must directly infringe a claim of the [____]'168 patent; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the [____]'168 patent, then contributory infringement exists if:

(1) [Alleged infringer]McAfee supplied an important component of the infringing part of the [product] or [method];

(2) The component is not a common component suitable for non-infringing use; and

(3) [Alleged infringer]McAfee supplied the component with the knowledge of the [____]'168 patent and knowledge that the component was especially made or adapted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses [other than as a component of the patented product][other than in the patented method], and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

Source:  Model Patent Jury Instructions for the Northern District of California (June 17, 2014) – Instruction B.3.8

**Stipulated Concluding Instruction No. 20 Re Inducing Patent Infringement**

[Patent holder]TVIIM argues that [alleged infringer]McAfee has actively induced another to infringe the []'168 patent.  In order for the [alleged infringer]McAfee to induce infringement, [alleged infringer]McAfee must have induced another to directly infringe a claim of the []'168 patent; if there is no direct infringement by anyone, there can be no induced infringement.  In order to be liable for inducement of infringement, [alleged infringer]McAfee must:

(1) have intentionally taken action that actually induced direct infringement;

(2) have been aware of the []'168 patent; and

(3) have known that the acts it was causing would infringe the patent; and

(4)(3)     not have had a good faith belief the patent was invalid.

If the threefour requirements just stated are not met, [alleged infringer]McAfee cannot be liable for inducement unless it actually believed that it was highly probable its actions would encourage infringement of a patent it believed to be valid and that it deliberately chose to avoid learning the truth.  To prove inducement, it is not enough that [accused infringer]McAfee was merely indifferent to the possibility that its actions might encourage infringement of a valid patent.  Nor is it enough that [accused infringer]McAfee took a risk that was substantial and unjustified.

In deciding whether the [alleged infringer]McAfee induced infringement, you may consider whether [accused infringer]McAfee actually believed that the acts it encouraged did not infringe the patent[, and whether [accused infringer]McAfee had a good-faith belief that the patent would be held invalid][, and whether [alleged infringer] relied on advice given by its lawyers].

Source:  Model Patent Jury Instructions for the Northern District of California (June 17, 2014) – Instruction B.3.9

1     **Stipulated Concluding Instruction No. 21 Re Willful Infringement**

2        In this case, ~~[patent holder]~~TVIIM argues that ~~[alleged infringer]~~McAfee willfully

3 infringed ~~the [patent holder]~~TVIIM's patent.

4        To prove willful infringement, ~~[patent holder]~~TVIIM must first persuade you that the

5 ~~[alleged infringer]~~McAfee infringed a valid ~~[and enforceable]~~ claim of ~~the [patent~~

6 ~~holder]~~TVIIM's patent.  The requirements for proving such infringement were discussed in my

7 prior instructions.

8        In addition, to prove willful infringement, ~~the [patent holder]~~TVIIM must persuade you

9 that it is highly probable that ~~[alleged infringer]~~McAfee acted with reckless disregard of the

10 claims of the ~~[patent holder]'s [~~patent~~]~~.

11        To demonstrate such "reckless disregard," ~~[patent holder]~~TVIIM must persuade you that

12 ~~[alleged infringer]~~McAfee actually knew, or it was so obvious that ~~[alleged infringer]~~TVIIM

13 should have known, that its actions constituted infringement of a valid ~~[and enforceable]~~ patent.

14        In deciding whether ~~[alleged infringer]~~McAfee acted with reckless disregard for ~~[patent~~

15 ~~holder]~~TVIIM's patent, you should consider all of the facts surrounding the alleged infringement

16 including, but not limited to, the following factors.

17        ~~Factors that may be considered as evidence that [alleged infringer] was not willful~~

18 ~~include:~~

19        You may consider ~~W~~whether ~~[alleged infringer]~~McAfee acted in a manner consistent with

20 the standards of commerce for its industry as evidence that McAfee was not willful.~~; [and]~~

21        ~~(1) Although there is no obligation to obtain an opinion of counsel whether [alleged infringer]~~

22        ~~relied on a legal opinion that was well supported and believable and that advised [alleged~~

23        ~~infringer] (1) that the [product] [method] did not infringe [patent holder]'s patent or (2)~~

24        ~~that the patent was invalid [or unenforceable].~~

25        ~~Factors that may be considered as evidence that [alleged infringer] was willful include:~~

26        You may consider ~~W~~whether ~~[alleged infringer]~~McAfee intentionally copied a product of

27 ~~[patent holder]~~TVIIM covered by the patent as evidence that McAfee was willful.

28

Source:  Model Patent Jury Instructions for the Northern District of California (June 17, 2014) –

Instruction B.3.10

***DISPUTED* Concluding Instruction No. 22A Re Invalidity—Burden Of Proof, Offered By TVIIM**

I will now instruct you on the rules you must follow in deciding whether or not [alleged infringer] McAfee has proven that claims 1-3, 7-9, 11-12 and 19-20 [ ] of the [ ] 168 patent are invalid.  To prove that any claim of a patent is invalid, [alleged infringer] McAfee must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction that the claim is invalid.

Source:  The Federal Circuit Bar Association Model Patent Jury Instructions No. B.4.1 (Invalidity – Burden of Proof).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

***_DISPUTED_* Concluding Instruction No. 22B Re Invalidity—Burden Of Proof, Offered By McAfee**

I will now instruct you on the rules you must follow in deciding whether [alleged infringer]McAfee has proven that claims [    ]1, 2, 3, 7, 8, 9, 11, 12, 19, and 20 of the [    ]'168 patent are invalid.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense.  To prove invalidity of any patent claim, [alleged infringer]McAfee must persuade you that it is highly probable that the claim is invalid.  This standard is known as the clear and convincing evidence standard.  It is a high standard, but not so high as the standard used in criminal law, which is evidence beyond a reasonable doubt.

[During this case, the [alleged infringer]McAfee has submitted prior art that was not considered by the United States Patent and Trademark Office (PTO) during the prosecution of the [    ]'168 patent.  The [alleged infringer]McAfee contends that such prior art invalidates certain claims of the [    ]'168 patent.  In deciding the issue of invalidity, you may take into account the fact that the prior art was not considered by the PTO when it issued the [    ]'168 patent.  Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make the [alleged infringer's]McAfee's burden of showing that it is highly probable that a patent claim is invalid easier to sustain.

Source:  Model Patent Jury Instructions for the Northern District of California (June 17, 2014) – Instruction B.4.1; AIPLA Model Patent Jury Instructions II.B

1    **TVIIM's Position:**

2         TVIIM proposes that the Court use the instruction prepared by the Federal Circuit Bar

3    concerning the burden of proof.  The Federal Circuit Bar's instruction sets forth the standard as

4    repeatedly described by the Federal Circuit – a challenger must establish invalidity with clear and

5    convincing evidence.  Both the Supreme Court and the Federal Circuit have repeatedly held that,

6    in order to overcome the presumption of validity, the defendant must present clear and convincing

7    evidence of invalidity.  35 U.S.C. § 282 (patents presumed valid); *Microsoft Corp. v. i4i Limited*

8    *Partnership*, 131 S.Ct. 2238 (2011); *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315

9    (Fed. Cir. 2002) (to overcome presumption of validity, challenging party must present clear and

10   convincing evidence of invalidity); *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed.

11   Cir. 1988) (clear and convincing evidence is that "which produces in the mind of the trier of fact

12   an abiding conviction that the truth of [the] factual contentions are highly probable") (alteration in

13   original) (citation and internal quotation marks omitted); *Hybritech Inc. v. Monoclonal*

14   *Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986) ("Notwithstanding that the introduction of

15   prior art not before the examiner may facilitate the challenger's meeting the burden of proof on

16   invalidity, the presumption remains intact and on the challenger throughout the litigation, and the

17   clear and convincing standard does not change.").

18        The Federal Circuit noted that "clear and convincing evidence" is evidence that produces

19   in the mind of the trier of fact "an abiding conviction that the truth of [the] factual contentions are

20   'highly probable.'"  *Buildex Inc. v. Kason Industries, Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988).

21   The Northern District of California model includes the "highly probable" language but neglects to

22   include the requirement of an "abiding conviction."  McAfee seeks to further lower this standard

23   by including a self-serving statement to the effect that "highly probable" is a lower standard than

24   "beyond a reasonable doubt."  If the Court is inclined to adopt the "highly probable" language, it

25   should clarify – in accordance with Federal Circuit authority – that what is required is "an abiding

26   conviction" that it is "highly probable" that it patent is invalid and reject McAfee's proposed

27   amendments.

28

1    **McAfee's Position:**

2          With one addition noted below, McAfee proposes instructing the jury in accordance with

3    the Northern District of California's model instruction.  The instruction accurately reflects the

4    Federal Circuit's requirement that a party seeking to invalidate a patent persuade the jury of "an

5    abiding conviction that it is highly probable that the claim is invalid."  *See Buildex Inc. v. Kason*

6    *Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988) (emphasis added).  In addition, the instruction

7    accounts for the facts of this case, in which certain of the invalidating prior art references were

8    not considered by the Patent and Trademark Office during prosecution.  The Supreme Court has

9    held that where "the PTO did not have all material facts before it . . . the challenger's burden to

10   persuade the jury of its invalidity defense by clear and convincing evidence may be easier to

11   sustain."  *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2251 (Fed. Cir. 2011).  McAfee's

12   proposed instruction correctly instructs the jury that "[p]rior art that differs from the prior art

13   considered by the PTO may carry more weight than the prior art that was considered and may

14   make the McAfee's burden of showing that it is highly probable that a patent claim is invalid

15   easier to sustain."

16         McAfee proposes supplementing this instruction to clarify the clear and convincing

17   evidence standard by way of comparison with the familiar "beyond a reasonable doubt" standard.

18   McAfee's proposed additional language comes directly from the American Intellectual Property

19   Law Association's model instructions.

20         TVIIM's proposed instruction, on the other hand, would supplant the Northern District of

21   California's model instruction without offering adequate explanation.  It faults the model for

22   including "the 'highly probable' language but neglect[ing] to include the requirement of an

23   'abiding conviction.'"  Yet, its proposed instruction includes neither the "highly probable"

24   language the Federal Circuit has adopted nor the "abiding conviction" language TVIIM claims it

25   seeks.  Likewise, TVIIM's proposed instruction wholly ignores the *i4i* line of precedent regarding

26   prior art not considered by the Patent and Trademark Office.  McAfee's proposed instruction

27   should therefore be adopted over TVIIM's proposal.

28

**Stipulated Concluding Instruction No. 23 Re Anticipation**

A patent claim is invalid if the claimed invention is not new.  For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, these previous devices, methods, publications or patents are called "prior art references."  If a patent claim is not new we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of ~~[identify field]~~ computer security looking at that one reference would be able to make and use the claimed invention.

Here is a list of the ways that ~~[alleged infringer]~~ McAfee can show that a patent claim was not new ~~[use those that apply to this case]~~:

- ~~[~~ if the claimed invention was already publicly known or publicly used by others in the United States before November 1997 ~~[insert date of conception unless at issue];]~~

- ~~[~~ if the claimed invention was already patented or described in a printed publication anywhere in the world before ~~[insert date of conception unless at issue]~~ November 1997. ~~[A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find.];]~~

- ~~[   if the claimed invention was already made by someone else in the United States before [insert date of conception unless in issue], if that other person had not abandoned the invention or kept it secret;]~~

- ~~[~~ if the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before ~~[insert date of the patent holder's application filing date] [or] [insert date of conception unless at issue]~~ November 1997. ~~;]~~

- ~~[   if [named inventor] did not invent the claimed invention but instead learned of the claimed invention from someone else;]~~

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

1    • — [   if the [patent holder] and [alleged infringer] dispute who is a first inventor, the person

2    who first conceived of the claimed invention and first reduced it to practice is the first

3    inventor.  If one person conceived of the claimed invention first, but reduced to practice

4    second, that person is the first inventor only if that person (a) began to reduce the claimed

5    invention to practice before the other party conceived of it and (b) continued to work

6    diligently to reduce it to practice.  [A claimed invention is "reduced to practice" when it

7    has been tested sufficiently to show that it will work for its intended purpose or when it is

8    fully described in a patent application filed with the PTO].]

9    [Since it is in dispute, you must determine a date of conception for the [claimed invention]

10   [and/or] [prior invention].  Conception is the mental part of an inventive act and is proven when

11   the invention is shown in its complete form by drawings, disclosure to another or other forms of

12   evidence presented at trial.]

13

14   <u>Source:</u>  Model Patent Jury Instructions for the Northern District of California (June 17, 2014) –

15   Instruction B.4.3a1

16

17

18

19

20

21

22

23

24

25

26

27

28

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

1

**Stipulated Concluding Instruction No. 24 Re Statutory Bars**

2

A patent claim is invalid if the patent application was not filed within the time required by

3

law.  This is called a "statutory bar."  For a patent claim to be invalid by a statutory bar, all of its

4

requirements must have been present in one prior art reference dated more than one year before

5

the patent application was filed.  Here is a list of ways ~~[alleged infringer]~~McAfee can show that

6

the patent application was not timely filed:~~ [choose those that apply]~~

7

- ~~[~~ if the claimed invention was already patented or described in a printed publication

8

   anywhere in the world before ~~[insert date that is one year before effective filing date of~~

9

   ~~patent application]~~June 15, 1997.  ~~[~~A reference is a "printed publication" if it is accessible

10

   to those interested in the field, even if it is difficult to find.~~];]~~

11

- ~~[~~ if the claimed invention was already being openly used in the United States before

12

   ~~[insert date that is one year before application filing date]~~June 15, 1997 and that use was

13

   not primarily an experimental use (a) controlled by the inventor, and (b) to test whether

14

   the invention worked for its intended purpose;~~]~~

15

- ~~[~~ if a device or method using the claimed invention was sold or offered for sale in the

16

   United States, and that claimed invention was ready for patenting, before ~~[insert date that~~

17

   ~~is one year before application filing date]~~June 15, 1997.~~ [The claimed invention is not~~

18

   ~~being [sold] [or] [offered for sale] if the [patent holder] shows that the [sale] [or] [offer for~~

19

   ~~sale] was primarily experimental.]  [The claimed invention is ready for patenting if it was~~

20

   ~~actually built, or if the inventor had prepared drawings or other descriptions of the claimed~~

21

   ~~invention that were sufficiently detailed to enable a person of ordinary skill in the field to~~

22

   ~~make and use the invention based on them.];]~~

23

- ~~[ if the [patent holder] had already obtained a patent on the claimed invention in a~~

24

   ~~foreign country before filing the original U.S. application, and the foreign application was~~

25

   ~~filed at least one year before the U.S. application.]~~

26

For a claim to be invalid because of a statutory bar, all of the claimed requirements must

27

have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference

28

to one skilled in the field, or (3) must have been present in the reference, whether or not that was

1    understood at the time.  The disclosure in a reference does not have to be in the same words as the

2    claim, but all the requirements must be there, either described in enough detail or necessarily

3    implied, to enable someone of ordinary skill in the field of [identify field]computer security

4    looking at the reference to make and use the claimed invention.

5

6    Source:  Model Patent Jury Instructions for the Northern District of California (June 17, 2014) –

7    Instruction B.4.3a2

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Stipulated Concluding Instruction No. 25 Re Obviousness**

Not all innovations are patentable.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field [at the time the claimed invention was made] [as of the effective filing date of the claimed invention] [as of [insert date]]. This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field of [identify field]computer security who knew about all this prior art would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field that someone would have had [at the time the claimed invention was made] [as of the effective filing date of the claimed invention].  In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1) the levels of education and experience of persons working in the field;

(2) the types of problems encountered in the field; and

(3) the sophistication of the technology.

[Patent holder]TVIIM contends that the level of ordinary skill in the field was a person with at least a bachelor's degree in computer science with an emphasis in computer security and at least one year of direct practical experience in computer security engineering, or five or more years of direct practical experience in computer security engineering[      ].  [Alleged infringer]McAfee contends that the level of ordinary skill in the field was a bachelor's degree in Computer Science and at least two years of industry experience in computer security, or a master's degree in Computer Science, or the equivalent of those credentials[      ].

Second, you must decide the scope and content of the prior art. [Patent holder] and [alleged infringer] disagree as to whether [identify prior art reference(s)] should be included in the prior art you use to decide the validity of claims [      ] of the [      ] patent.  In order to be considered as prior art to the [      ] patent, these references must be reasonably related to the

1  claimed invention of that patent. A reference is reasonably related if it is in the same field as the

2  claimed invention or is from another field to which a person of ordinary skill in the field would

3  look to solve a known problem.

4  ~~Third~~Second, you must decide what difference, if any, existed between the claimed

5  invention and the prior art.

6  Finally, you should consider any of the following factors that you find have been shown

7  by the evidence:

8  (1) [commercial success of a product due to the merits of the claimed invention];]

9  (2) [a long felt need for the solution provided by the claimed invention];]

10  (3) [unsuccessful attempts by others to find the solution provided by the claimed invention];]

11  (4) [copying of the claimed invention by others];]

12  (5) [unexpected and superior results from the claimed invention];]

13  (6) [acceptance by others of the claimed invention as shown by praise from others in the field

14  or from the licensing of the claimed invention];]

15  (7) [other evidence tending to show nonobviousness];]

16  (8) [independent invention of the claimed invention by others before or at about the same

17  time as the named inventor thought of it] [; and]

18  (9) [other evidence tending to show obviousness].]

19  [The presence of any of the [list factors 1-7 as appropriate] may be considered by you as

20  an indication that the claimed invention would not have been obvious [at the time the claimed

21  invention was made] [as of the effective filing date of the claimed invention], and the presence of

22  the [list factors 8 or 9 as appropriate] may be considered by you as an indication that the claimed

23  invention would have been obvious at such time. Although you should consider any evidence of

24  these factors, the relevance and importance of any of them to your decision on whether the

25  claimed invention would have been obvious is up to you.]

26  A patent claim composed of several elements is not proved obvious merely by

27  demonstrating that each of its elements was independently known in the prior art. In evaluating

28  whether such a claim would have been obvious, you may consider whether [the alleged

1   infringer]McAfee has identified a reason that would have prompted a person of ordinary skill in

2   the field to combine the elements or concepts from the prior art in the same way as in the claimed

3   invention.  There is no single way to define the line between true inventiveness on the one hand

4   (which is patentable) and the application of common sense and ordinary skill to solve a problem

5   on the other hand (which is not patentable).  For example, market forces or other design

6   incentives may be what produced a change, rather than true inventiveness.  You may consider

7   whether the change was merely the predictable result of using prior art elements according to

8   their known functions, or whether it was the result of true inventiveness.  You may also consider

9   whether there is some teaching or suggestion in the prior art to make the modification or

10   combination of elements claimed in the patent.  Also, you may consider whether the innovation

11   applies a known technique that had been used to improve a similar device or method in a similar

12   way.  You may also consider whether the claimed invention would have been obvious to try,

13   meaning that the claimed innovation was one of a relatively small number of possible approaches

14   to the problem with a reasonable expectation of success by those skilled in the art.  However, you

15   must be careful not to determine obviousness using the benefit of hindsight; many true inventions

16   might seem obvious after the fact.  You should put yourself in the position of a person of ordinary

17   skill in the field [at the time the claimed invention was made] [as of the effective filing date of the

18   claimed invention] and you should not consider what is known today or what is learned from the

19   teaching of the patent.

20

21   Source:  Model Patent Jury Instructions for the Northern District of California (June 17, 2014) –

22   Instruction B.4.3b (Alternative 2)

23

24

25

26

27

28

1

***DISPUTED* Concluding Instruction No. 26 Re Inventor's Prior Work Not Prior Art Absent**

2

**Statutory Basis, Offered By TVIIM**

3  An inventor's own work cannot be used to invalidate a patent unless he or she places it on sale or

4  uses it publicly more than a year before filing the application for the patent.

5

6  Source: *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380–81 (Fed. Cir. 2005) ("The

7  basic tenet of U.S. patent law is that an original inventor gains an exclusive right to the

8  invention. Thus, an inventor's own work cannot be used to invalidate patents protecting his own

9  later inventive activities unless, inter alia, he places it on sale or uses it publicly more than a year

10  before filing."); *Application of Facius*, 408 F.2d 1396, 1406, (1969) ("But certainly one's own

11  invention, whatever the form of disclosure to the public, may not be prior art against oneself,

12  absent a statutory bar.").

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TVIIM's Position:**

TVIIM's proposed language is taken verbatim from  Federal Circuit case law, and instructions the jury in an important point of law not addressed elsewhere. *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380–81 (Fed. Cir. 2005) ("The basic tenet of U.S. patent law is that an original inventor gains an exclusive right to the invention. Thus, an inventor's own work cannot be used to invalidate patents protecting his own later inventive activities unless, inter alia, he places it on sale or uses it publicly more than a year before filing."); *Application of Facius*, 408 F.2d 1396, 1406, (1969) ("But certainly one's own invention, whatever the form of disclosure to the public, may not be prior art against oneself, absent a statutory bar.").

1    **McAfee's Position:**

2        TVIIM's proposed instruction is unnecessary and confusing.  The parties' stipulated

3   instructions on "Anticipation" (Instruction No. 23) and "Statutory Bars" (Instruction No. 24)

4   already clearly set forth the requirements for invalidating prior art.  Further instructing the jury

5   that "[a]n inventor's own work cannot be used to invalidate a patent unless he or she places it on

6   sale or uses it publicly more than a year before filing for the patent application" only confuses the

7   matter.  TVIIM's proposed instruction suggests to the jury that the "Anticipation" and "Statutory

8   Bars" instructions are not applicable to an inventor's own work, and that there is some special

9   threshold for invalidating a patent based on an inventor's own work.  There is not:  the legal

10   standards are the same in every invalidity case.  Clarity regarding these standards is critical in this

11   case, where McAfee alleges that named inventor Eric Knight's own prior art HostGUARD

12   software and literature describing that software invalidate the '168 patent.  *See, e.g.*,

13   *Electromotive Div. of Gen. Motors Corp.*, 417 F.3d 1203 (Fed. Cir. 2005) (holding that inventor's

14   sale of compressor bearings prior to critical date invalidated patent); *Enzo Biochem., Inc. v. Gen-*

15   *Probe, Inc.*, 424 F.3d 1276 (Fed. Cir. 2005) (holding that patentee's sale of nucleic acid probes

16   prior to critical date invalidated patent).  The jury should not be led to believe—incorrectly—that

17   McAfee's arguments regarding HostGUARD are subject to a different legal standard from the

18   jointly stipulated "Anticipation" and "Statutory Bars" instructions.  Thus, McAfee respectfully

19   requests that the Court decline to adopt TVIIM's additional proposed instruction.

20

21

22

23

24

25

26

27

28

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

**Stipulated Concluding Instruction No. 27 Re Inequitable Conduct**

Every applicant for a patent has a duty of candor and good faith in its dealing with the United States Patent and Trademark Office.  This is important because the PTO has limited resources.

When a person involved in the prosecution of an application fails to supply material information or supplies false information or statements and does so with an intent to deceive the PTO, he or she may commit what is called "inequitable conduct."  When inequitable conduct occurs during the examination of an application, any patent that issues from that application is unenforceable as a matter of fairness.  This means that despite the existence and validity of the patent, the patent holder may not prevent others from using the invention covered by the patent and may not collect damages from those who use the invention that is covered by the patent.

Because a finding of inequitable conduct completely extinguishes a patent holder's right to prevent others from using an invention, the burden of proving inequitable conduct is high. [Alleged infringer]McAfee must prove by clear and convincing evidence both that a person meaningfully involved in the prosecution of the [ ]'168 patent withheld material information or submitted materially false information or statements to the PTO during the examination of the [ ]'168 patent(s), and that the person did so with an intent to deceive the Examiner into issuing the [ ]'168 patent(s).

I will now explain to you what "material" and "intent to deceive" mean.

**Material**

Information that was withheld from the PTO is material if the PTO would not have allowed the claim had it been aware of the withheld information.  A false or misleading statement is material when it convinces the PTO to allow a claim that it would not have allowed if the statement had not been made.  You may also find that affirmative, egregious misconduct is material.  An example of affirmative, egregious misconduct is the filing of an unmistakably false affidavit.

You may only find information, statements, or misconduct to be material if there is clear and convincing evidence that they are material.

ACTIVE 30556994v1 06/22/2015

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

**Intent to Deceive**

In order for inequitable conduct to have occurred, [alleged infringer]McAfee must establish that any [failure to disclose material information and/or false or misleading statements/misconduct] [was/were] done with an intent to deceive the Examiner.  If the [failure to disclose material information and/or false or misleading statements/misconduct] occurred through negligence, oversight, carelessness, or an error in judgment, even if it was grossly negligent, then there was no intent to deceive and there is no inequitable conduct.

Intent may be shown through direct evidence, such as documents or testimony about one's intent to deceive.  Intent also may be shown through indirect evidence or, in other words, it may be inferred from conduct.  However, an intent to deceive may be inferred only where it is the single most reasonable inference that can be drawn from the evidence.  In other words, if it could be reasonable to conclude that the [failure to disclose material information/false or misleading statements/misconduct] was an honest mistake, intent to deceive cannot be found.

**Conclusion of Inequitable Conduct**

Materiality and intent to deceive are separate issues:  proof of materiality does not give rise to an inference of intent to deceive, and proof of an intent to deceive does not give rise to an inference of materiality.  There must be clear and convincing evidence that establishes materiality and there must be clear and convincing evidence that establishes an intent to deceive.  If clear and convincing evidence of either, or both, is missing, there can be no inequitable conduct.

If you find, however, that [alleged infringer]McAfee has proved by clear and convincing evidence that [material information was withheld/materially misleading statements were made or false information provided/affirmative, egregious misconduct occurred] and, further, that these acts or omissions were done with an intent to deceive the Examiner, you must then determine whether the evidence clearly and convincingly establishes that [patent holder or other relevant person(s)]the inventors committed inequitable conduct and the patent(s) should in fairness be declared unenforceable.

Source:  Federal Circuit Bar Association, Model Patent Jury Instructions 2014 – Instruction B.5.1

1   **Stipulated Concluding Instruction No. 28 Re Damages—Burden Of Proof**

2       I will instruct you about the measure of damages.  By instructing you on damages, I am

3   not suggesting which party should win on any issue.  If you find that ~~[alleged infringer]~~McAfee

4   infringed any valid claim of the ~~[___]~~'168 patent, you must then determine the amount of money

5   damages to be awarded to ~~[patent holder]~~TVIIM to compensate it for the infringement.

6       The amount of those damages must be adequate to compensate ~~[patent holder]~~TVIIM for

7   the infringement.  A damages award should put the patent holder in approximately the financial

8   position it would have been in had the infringement not occurred, but in no event may the

9   damages award be less than a reasonable royalty.  You should keep in mind that the damages you

10  award are meant to compensate the patent holder and not to punish an infringer.

11      ~~[Patent holder]~~TVIIM has the burden to persuade you of the amount of its damages.  You

12  should award only those damages that ~~[patent holder]~~TVIIM more likely than not suffered.

13  While ~~[patent holder]~~TVIIM is not required to prove its damages with mathematical precision, it

14  must prove them with reasonable certainty.  ~~[Patent holder]~~TVIIM is not entitled to damages that

15  are remote or speculative.

16

17  <u>Source:</u>  Model Patent Jury Instructions for the Northern District of California (June 17, 2014) –

18  Instruction B.5.1

19

20

21

22

23

24

25

26

27

28

1
2

**_DISPUTED_ Concluding Instruction No. 29 Re Reasonable Royalty—Entitlement, Offered**

**By TVIIM**

3       If ~~[patent holder]~~TVIIM has not proved its claim for lost profits, or has proved its claim

4   for lost profits for only a portion of the infringing sales, then ~~[patent holder]~~TVIIM should be

5   awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits

6   damages.

7

8   Source:   Model Patent Jury Instructions for the Northern District of California, 5.6 Reasonable

9   Royalty – Entitlement; 35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelectronics*

10   *Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. Western Litho Plate & Supply Co.*, 853

11   F.2d 1568, 1574 (Fed. Cir. 1998) (overruled on other grounds); *Minco, Inc. v. Combustion Eng'g,*

12   *Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579

13   (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc).

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

1

**TVIIM's Position:**

2

3        This is the predicate to an award of reasonable royalty and  a necessary instruction..  See

4   Model Patent Jury Instructions for the Northern District of California, 5.6 Reasonable Royalty –

5   Entitlement; 35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l,*

6   *Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d

7   1568, 1574 (Fed. Cir. 1998) (overruled on other grounds); *Minco, Inc. v. Combustion Eng'g, Inc.*,

8   95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed.

9   Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc).

10   ──────────────────

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **McAfee's Position:**

2        TVIIM's proposed instruction addresses a subject—lost profits—that is not at issue in this

3   case.  Both parties' damages experts have offered opinions based on reasonable-royalty theories;

4   neither has offered a lost profits opinion.  TVIIM could never, as a matter of law, prove lost

5   profits—it is a non-practicing entity that makes no products, and thus has no product profits to

6   "lose."  As the *en banc* Federal Circuit explained in *Rite-Hite Corp. v. Kelley Co.*, Inc., "[t]o

7   recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the

8   infringement, it would have made the sales that were made by the infringer."  56 F.3d 1538, 1445

9   (Fed. Cir. 1995) (en banc).  As TVIIM neither produces nor sells any products, it cannot satisfy

10  this basic requirement for lost profit damages.

11       Instructing the jury on what it should do if "TVIIM has not proved its claim for lost

12  profits"—where TVIIM has no claim for lost profits—could only introduce confusion.  That

13  confusion would be exacerbated by the instruction's discussion of "proving lost profits for only a

14  portion of infringing sales."  Such language invites the jury to award TVIIM damages to which it

15  is not legally entitled and which it has not attempted to prove.  For these reasons, TVIIM's

16  proposed "Reasonable Royalty—Entitlement" instruction should not be given to the jury.

17

18

19

20

21

22

23

24

25

26

27

28

1    ___***DISPUTED*** Concluding Instruction No. 30A Re Reasonable Royalty—Definition, Offered___

2    ___By TVIIM___

3         A royalty is a payment made to a patent holder in exchange for the right to make, use or

4    sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment

5    for the license that would have resulted from a hypothetical negotiation between the patent holder

6    and the infringer taking place at the time when the infringing activity first began.  In considering

7    the nature of this negotiation, you must assume that the patent holder and the infringer would

8    have acted reasonably and would have entered into a license agreement.  You must also assume

9    that both parties believed the patent was valid and infringed.  Your role is to determine what the

10   result of that negotiation would have been.  The test for damages is what royalty would have

11   resulted from the hypothetical negotiation and not simply what either party would have preferred.

12        A royalty can be calculated in several different ways and it is for you to determine which

13   way is the most appropriate based on the evidence you have heard.  One way to calculate a

14   royalty is to determine what is called an "ongoing royalty."  To calculate an ongoing royalty, you

15   must first determine the "base," that is, the product on which the infringer is to pay.  You then

16   need to multiply the revenue the defendant obtained from that base by the "rate" or percentage

17   that you find would have resulted from the hypothetical negotiation.  For example, if the patent

18   covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be

19   $200.  If the rate you find would have resulted from the hypothetical negotiation is 1%, then the

20   royalty would be $2, or the rate of 0.01 times the base revenue of $200.  By contrast, if you find

21   the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200.

22   These numbers are only examples, and are not intended to suggest the appropriate royalty rate.

23        Instead of a percentage royalty, you may decide that the appropriate royalty that would

24   have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold.  If you

25   do, the royalty would be that fixed number of dollars times the number of units sold.

26        If the patent covers only part of the product that the infringer sells, then the base would

27   normally be only that feature or component.  For example, if you find that for a $100 car, the

28   patented feature is the tires which sell for $5, the base revenue would be $5.  However, in a

circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product.  Even if the patented feature is not the reason for customer demand, the value of the whole product could be used if, for example, the value of the patented feature could not be separated out from the value of the whole product.  In such a case, however, the rate resulting from the hypothetical negotiation would be a lower rate because it is being applied to the value of the whole product and the patented feature is not the reason for the customer's purchase of the whole product.

Another way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future.  This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells.  When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

Source:  Model Patent Jury Instructions for the Northern District of California (June 17, 2014) – Instruction B.5.7

1    ***DISPUTED* Concluding Instruction No. 30B Re Reasonable Royalty—Definition, Offered**

2    **By McAfee**

3         A royalty is a payment made to a patent holder in exchange for the right to make, use or

4    sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment

5    for the license that would have resulted from a hypothetical negotiation between the patent holder

6    and the infringer taking place at the time when the infringing activity first began.  In considering

7    the nature of this negotiation, you must assume that the patent holder and the infringer would

8    have acted reasonably and would have entered into a license agreement.  You must also assume

9    that both parties believed the patent was valid and infringed.  Your role is to determine what the

10   result of that negotiation would have been.  The test for damages is what royalty would have

11   resulted from the hypothetical negotiation and not simply what either party would have preferred.

12        A royalty can be calculated in several different ways and it is for you to determine which

13   way is the most appropriate based on the evidence you have heard.  One way to calculate a

14   royalty is to determine what is called an "ongoing royalty."  To calculate an ongoing royalty, you

15   must first determine the "base," that is, the product on which the infringer is to pay.  You then

16   need to multiply the revenue the defendant obtained from that base by the "rate" or percentage

17   that you find would have resulted from the hypothetical negotiation.  For example, if the patent

18   covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the base revenue would be

19   $200.  If the rate you find would have resulted from the hypothetical negotiation is 1%, then the

20   royalty would be $2, or the rate of 0.01 times the base revenue of $200.  By contrast, if you find

21   the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the base revenue of $200.

22   These numbers are only examples, and are not intended to suggest the appropriate royalty rate.

23        Instead of a percentage royalty, you may decide that the appropriate royalty that would

24   have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold.  If you

25   do, the royalty would be that fixed number of dollars times the number of units sold.

26        If the patent covers only part of the product that the infringer sells, then the base would

27   normally be only that feature or component.  For example, if you find that for a $100 car, the

28   patented feature is the tires which sell for $5, the base revenue would be $5.  However, in a

circumstance in which the patented feature is the reason customers buy the whole product, the base revenue could be the value of the whole product. ~~Even if the patented feature is not the reason for customer demand, the value of the whole product could be used if, for example, the value of the patented feature could not be separated out from the value of the whole product. In such a case, however, the rate resulting from the hypothetical negotiation would be a lower rate because it is being applied to the value of the whole product and the patented feature is not the reason for the customer's purchase of the whole product.~~

Another way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future. This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

Source: Model Patent Jury Instructions for the Northern District of California (June 17, 2014) – Instruction B.5.7

**TVIIM's Position:**

TVIIM proposes simply adopting the Northern District's Model Instruction (No. B.5.7). McAfee, conversely seeks to remove a highly relevant component of the instruction to confuse the jury. The accused feature – McAfee's "Vulnerability Scanner" – is one of many features that McAfee includes in its computer security software. The feature is, itself, not the sole driver for consumer demand. However, as McAfee does not sell it separately, it cannot be separated from the whole. In such cases – as noted by the Northern District's Model Instruction – the royalty rate gets applied to the price of the larger product and the rate is correspondingly reduced. Incredibly, McAfee seeks to remove this language from the Model Instruction. Nonetheless, it is black-letter law, it is relevant to this case and the Court should reject McAfee's baseless modifications to the Model Instruction.

1    **McAfee's Position:**

2         McAfee's proposed instruction deletes language that is inconsistent with the Federal

3    Circuit's most recent holdings regarding the entire market value rule and with the agreed

4    positions of the parties. First, the Federal Circuit recently confirmed that "[a] patentee may assess

5    damages based on the entire market value of the accused product *only where* the patented feature

6    creates the basis for customer demand or substantially creates the value of the component parts."

7    *VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (emphasis in original).

8    The Northern District of California's model instruction, which permits the jury to base its award

9    of reasonable royalty damages on the "value of the whole product" "[e]ven if the patented feature

10   is not the reason for customer demand," is inconsistent with this authority.

11        Second, although the Northern District of California's current model instruction suggests

12   that the jury may account for the limited value of the patented feature by applying a "lower rate"

13   in the reasonable royalty calculation, the Federal Circuit has explicitly rejected that approach as

14   violating the entire market value rule:

15        The principle...is that, where a multi-component product is at issue and the patented
16        feature is not the item which imbues the combination of the other features with value, care
          must be taken to avoid misleading the jury by placing undue emphasis on the value of the
17        entire product. ***It is not that an appropriately apportioned royalty award could never be
          fashioned by starting with the entire market value of a multi-component product — by,***
18        ***for instance, dramatically reducing the royalty rate to be applied in those cases — it is***
          ***that reliance on the entire market value might mislead the jury, who may be less***
19        ***equipped to understand the extent to which the royalty rate would need to do the work***
          ***in such instances.***
20

21   *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226-27 (Fed. Cir. 2014) (emphasis added).

22        Finally, TVIIM's proposed instruction improperly invites the jury to award a royalty as a

23   percentage of total sales of the accused products (i.e., the products' entire market value).

24   However, ***neither party's damages expert*** has offered an opinion based on a percentage of total

25   sales. And, in fact, the parties have agreed that the total revenues of the accused products are not

26   relevant in this case and should be excluded. (See Dkt. No. 165 (McAfee's motion); Dkt. No.

27   186 (TVIIM's statement of non-opposition).)

28        McAfee respectfully requests that the Court adopt its proposed instruction.

**Stipulated Concluding Instruction No. 31 Re Date Of Commencement—Products**

Damages ~~that [patent holder] may be awarded by you commence on the date that [alleged infringer] has both infringed and been notified of the [ ] patent: [use those that apply to this case]~~

~~[[Patent holder] and [alleged infringer] agree that date was [insert date];]~~

~~[Since [patent holder] sells a product that includes the claimed invention but has not marked that product with the patent number, you must determine the date that [alleged infringer] received actual written notice of the [ ] patent and the specific product alleged to infringe;]~~

~~[Since [patent holder] [marks the product] or [does not sell a product covered by the patent], then damages begin without the requirement for actual notice under the following circumstances:~~

~~If the [ ] patent was granted before the infringing activity began, damages~~ should be calculated as of the date you determine that the infringement began~~.; or~~

~~If the [ ] patent was granted after the infringing activity began as determined by you, damages should be calculated as of [date patent issued].]~~

Source:  Model Patent Jury Instructions for the Northern District of California (June 17, 2014) – Instruction B.5.8; 35 U.S.C. § 287; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nike Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1443-44 (Fed. Cir. 1998); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir. 1996); *American Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1534 (Fed. Cir. 1993); *Devices for Med., Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987).

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

**_DISPUTED_ Concluding Instruction No. 32A Re Calculating Damages In Cases of**
**Inducement Or Contributory Infringement, Offered By TVIIM**

In order to recover damages for induced infringement, ~~[patent holder]~~TVIIM must either prove that the ~~[accused product]~~McAfee's "Vulerability Scanner" necessarily infringes the ~~[patent in suit]~~168 Patent or prove acts of direct infringement by others that were induced by ~~[accused infringer]~~McAfee.  Because the amount of damages for induced infringement is limited by the number of instances of direct infringement, ~~[patent holder]~~TVIIM must further prove the number of direct acts of infringement of the ~~[patent in suit]~~'168 patent, for example, by showing individual acts of direct infringement or by showing that a particular class of ~~[products]~~ ~~[uses]~~ or uses directly infringes.

In order to recover damages for contributory infringement, ~~[patent holder]~~TVIIM must either prove that the ~~[accused product]~~McAfee's Vulnerability Scanner necessarily infringe~~s~~ the ~~[patent in suit]~~'168 patent or prove acts of direct infringement by others to which ~~[accused infringer]~~McAfee made a substantial contribution.  Because the amount of damages for contributory infringement is limited by the number of instances of direct infringement, ~~[patent holder]~~TVIIM must further prove the number of direct acts of infringement of the ~~[patent in suit]~~'168 patent, for example, either by showing individual acts of direct infringement or by showing that a particular class of ~~[products]~~ ~~[ or uses]~~ directly infringes.

Source:  Model Patent Jury Instructions for the Northern District of California, 5.9 Calculating Damages in Cases of Inducement or Contributory Infringement; _Dynacore Holdings Corp. v. U.S. Philips Corp._, 363 F.3d 1263 (Fed. Cir. 2004); _Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc._, 576 F.3d 1348 (Fed. Cir. 2009).

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**_DISPUTED_ Concluding Instruction No. 32B Re Calculating Damages In Cases Of Inducement Or Contributory Infringement, Offered By McAfee**

In order to recover damages for induced infringement, [patent holder]TVIIM must either prove that the [accused product]McAfee's Antivirus Plus, Internet Security, Total Protection, LiveSafe, and All Access consumer products with the Vulnerability Scanner feature necessarily infringes the [patent in suit]'168 patent or prove acts of direct infringement by others that were induced by [accused infringer]McAfee. Because the amount of damages for induced infringement is limited by the number of instances of direct infringement, [patent holder]TVIIM must further prove the number of direct acts of infringement of the [patent in suit]'168 patent, for example, by showing individual acts of direct infringement or by showing that a particular class of [products] [uses] directly infringes.

In order to recover damages for contributory infringement, [patent holder]TVIIM must either prove that McAfee's Antivirus Plus, Internet Security, Total Protection, LiveSafe, and All Access consumer products with the Vulnerability Scanner featurethe [accused product] necessarily infringes the [patent in suit]'168 patent or prove acts of direct infringement by others to which [accused infringer]McAfee made a substantial contribution. Because the amount of damages for contributory infringement is limited by the number of instances of direct infringement, [patent holder]TVIIM must further prove the number of direct acts of infringement of the [patent in suit]'168 patent, for example, either by showing individual acts of direct infringement or by showing that a particular class of [products] [uses] directly infringes.

Source: Model Patent Jury Instructions for the Northern District of California (June 17, 2014) – Instruction B.5.9

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

**<u>TVIIM's Position:</u>**

The only dispute between the parties is how to characterize the accused products.  TVIIM proposes that the instructions refer to the accused products as computer software that includes the "Vulnerability Scanner" feature.  McAfee proposes instead that the instruction name specific products.  It is preferable to refer to the "Vulnerability Scanner" feature because – at trial – the focus will be on that feature, not the various names that McAfee has given to its product suite.  Further, while the names that McAfee gives to its products change from year to year, the "Vulnerability Scanner" has stayed constant.  Finally, McAfee's proposal omits at least one product – Security Scanner – that McAfee has itself identified as incorporating the "Vulnerability Scanner."

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

1   **McAfee's Position:**

2        The parties' dispute with respect to this instruction concerns the description of the

3   products at issue.  McAfee proposes an accurate and precise identification of the accused products

4   (i.e., "McAfee's Antivirus Plus, Internet Security, Total Protection, LiveSafe, and All Access

5   consumer products with the Vulnerability Scanner feature").  TVIIM ***agrees*** that this is the

6   correct list of accused products in this case.  *See* Joint Pretrial Statement, Undisputed Fact No. 9

7   ("TVIIM has accused the following McAfee consumer products of infringing the '168 patent:

8   Antivirus Plus, Internet Security, Total Protection, LiveSafe, and All Access.")  Nevertheless,

9   TVIIM proposes to identify the accused products generically as "McAfee's Vulnerability

10   Scanner."  The jury would benefit from precision in the identification of the products at issue,

11   particularly where there is no dispute between the parties regarding what the accused products

12   are.  McAfee respectfully requests that the Court maintain consistency and precision in the jury

13   instructions by defining the accused products as "McAfee's Antivirus Plus, Internet Security,

14   Total Protection, LiveSafe, and All Access consumer products with the Vulnerability Scanner

15   feature" throughout the instructions.

16

17

18

19

20

21

22

23

24

25

26

27

28

**Stipulated Concluding Instruction No. 33 Re No Transcript Available To Jury**

During deliberations, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.

Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.13

1

**Stipulated Concluding Instruction No. 34 Re Taking Notes**

2     ~~If you wish, you may take notes to help you remember the evidence.  If you do take notes,~~

3     ~~please keep them to yourself until you and your fellow jurors go to the jury room to decide the~~

4     ~~case.  Do not let note-taking distract you.  When you leave, your notes should be left in the~~

5     ~~[courtroom] [jury room] [envelope in the jury room].  No one will read your notes.  They will be~~

6     ~~destroyed at the conclusion of the case.~~

7     Some of you have taken notes during trial.  Whether or not you have taken notes, you

8     should rely on your own memory of the evidence.  Notes are only to assist your memory.  You

9     should not be overly influenced by your notes or those of your fellow jurors.

10

11     Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.14

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Stipulated Concluding Instruction No. 35 Re Bench Conferences And Recesses**

From time to time during the trial, it ~~[may become]~~ [became] necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury ~~[is]~~ [was] present in the courtroom, or by calling a recess. Please understand that while you ~~[are]~~ [were] waiting, we ~~[are]~~ [were] working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we ~~[will do]~~ [have done] what we ~~[can]~~ [could] to keep the number and length of these conferences to a minimum. I ~~[may]~~ [did] not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

Source: Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 1.18

1

## Stipulated Concluding Instruction No. 36 Re Duty To Deliberate

2        When you begin your deliberations, you should elect one member of the jury as your

3 presiding juror.  That person will preside over the deliberations and speak for you here in court.

4        You will then discuss the case with your fellow jurors to reach agreement if you can do

5 so.  Your verdict must be unanimous.

6        Each of you must decide the case for yourself, but you should do so only after you have

7 considered all of the evidence, discussed it fully with the other jurors, and listened to the views of

8 your fellow jurors.

9        Do not hesitate to change your opinion if the discussion persuades you that you should.

10 Do not come to a decision simply because other jurors think it is right.

11        It is important that you attempt to reach a unanimous verdict but, of course, only if each of

12 you can do so after having made your own conscientious decision.  Do not change an honest

13 belief about the weight and effect of the evidence simply to reach a verdict.

14

15 <u>Source:</u>  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 3.1

16

17

18

19

20

21

22

23

24

25

26

27

28

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

**Stipulated Concluding Instruction No. 37 Re Communication With Court**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [marshal] [bailiff], signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 3.2

**Stipulated Concluding Instruction No. 38 Re Consideration Of Evidence—Conduct Of The**

**Jury**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any Internet chat room, blog, website or other feature.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings[, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

Source:  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 3.1A

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Stipulated Concluding Instruction No. 39 Re Return Of Verdict**

A verdict form has been prepared for you. ~~[Any explanation of the verdict form may be given at this time.]~~ <u>You must reach a unanimous verdict as to each question on the verdict form.</u> After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

<u>Source:</u>  Ninth Circuit Manual of Model Jury Instructions (Civil) (June 2014) – Instruction 3.3

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

**GLOSSARY**

**Abstract:**  A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Amendment:**  A patent applicant's change to one or more claims or to the specification either in response to an office action taken by a Patent Examiner or independently by the patent applicant during the patent application examination process.

**Anticipation:**  A situation in which a claimed invention describes an earlier invention and, therefore, is not considered new and is not entitled to be patented.

**Assignment:**  A transfer of patent rights to another called an "assignee" who upon transfer becomes the owner of the rights assigned.

~~**Best Mode:**  The best way the inventor actually knew to make or use the invention at the time of the patent application.  If the applicant had a best mode as of the time the application was first filed, it must be set forth in the patent specification.~~

**Claim:**  Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed.  Claims may be independent or dependent.  An independent claim stands alone.  A dependent claim does not stand alone and refers to one or more other claims.  A dependent claim incorporates whatever the other referenced claim or claims say.

**Conception:**  The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.

**Continuation Application:**  A patent application filed during the examination process of an earlier application which has the same disclosure as the original application and does not include anything which would constitute new matter if inserted in the original application.

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

1  **Continuation-In-Part (C-I-P) Application:** A patent application filed during the application

2  process of an earlier application which repeats some or all of the earlier application and adds

3  matter not disclosed in the earlier application to support the addition of new patent claims.

4  **Drawings:**  The drawings are visual representations of the claimed invention contained in a

5  patent application and issued patent, and usually include several figures illustrating various

6  aspects of the claimed invention.

7  **Elements:**  The required parts of a device or the required steps of a method.  A device or method

8  infringes a patent if it contains each and every requirement of a patent claim.

9  **Embodiment:**  A product or method that contains the claimed invention.

10  **Enablement:**  A description of the invention that is sufficient to enable persons skilled in the

11  field of the invention to make and use the invention. The specification of the patent must contain

12  such an enabling description.

13  **Examination:**  Procedure before the U.S. Patent and Trademark Office whereby a Patent

14  Examiner reviews the filed patent application to determine if the claimed invention is patentable.

15  **Filing Date:**  Date a patent application, with all the required sections, has been submitted to the

16  U.S. Patent and Trademark Office.

17  **Infringement:**  Violation of a patent occurring when someone makes, uses or sells a patented

18  invention, without permission of the patent holder, within the United States during the term of the

19  patent.  Infringement may be direct, by inducement, or contributory.  Direct infringement is

20  making, using or selling the patented invention without permission.  Inducing infringement is

21  intentionally causing another to directly infringe a patent.  Contributory infringement is offering

22  to sell or selling an item that is an important component of the invention, so that the buyer

23  directly infringes the patent.  To be a contributory infringer one must know that the part being

24  offered or sold is designed specifically for infringing the patented invention and is not a common

25  component suitable for non-infringing uses.

26  **Limitation:**  A required part of an invention set forth in a patent claim.  A limitation is a

27  requirement of the invention.  The word "limitation" is often used interchangeably with the word

28  "requirement."

1  **Non-obviousness:** One of the requirements for securing a patent. To be valid, the subject matter
2  of the invention must not have been obvious to a person of ordinary skill in the field of the
3  invention at the time of the earlier of the filing date of the patent application or the date of
4  invention.

5  **Office Action:** A written communication from the Patent Examiner to the patent applicant in the
6  course of the application examination process.

7  **Patent:** A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an
8  inventor to prevent others from making, using, offering to sell, or selling an invention within the
9  United States, or from importing it into the United States, during the term of the patent. When the
10 patent expires, the right to make, use or sell the invention is dedicated to the public. The patent
11 has three parts, which are a specification, drawings and claims. The patent is granted after
12 examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor
13 which has these parts, and this examination is called the prosecution history.

14 **Patent and Trademark Office (PTO):** An administrative branch of the U.S. Department of
15 Commerce that is charged with overseeing and implementing the federal laws of patents and
16 trademarks. It is responsible for examining all patent applications and issuing all patents in the
17 United States.

18 **Prior Art:** Previously known subject matter in the field of a claimed invention for which a patent
19 is being sought. It includes issued patents, publications, and knowledge deemed to be publicly
20 available such as trade skills, trade practices and the like.

21 **Prosecution History:** The prosecution history is the complete written record of the proceedings
22 in the PTO from the initial application to the issued patent. The prosecution history includes the
23 office actions taken by the PTO and the amendments to the patent application filed by the
24 applicant during the examination process.

25 **Reads On:** A patent claim "reads on" a device or method when each required part (requirement)
26 of the claim is found in the device or method.

27 **Reduction to Practice:** The invention is "reduced to practice" when it is sufficiently developed
28 to show that it would work for its intended purpose.

CORRECTED [PROPOSED] JURY
INSTRUCTIONS
3:13-CV-04545-VC

1   ~~**Reexamination:**   A process in which a patent is reexamined by the PTO to determine whether~~

2   ~~one or more of the claims are patentable with respect to submitted prior art which may consist~~

3   ~~only of prior patents or printed publications.   An "ex parte" reexamination is initiated by the~~

4   ~~patent holder or a third party, but does not include the further participation of any third party.   An~~

5   ~~"inter partes" reexamination is initiated by a third party who continues to participate in the~~

6   ~~proceedings.~~

7   **Requirement:**   A required part or step of an invention set forth in a patent claim. The word

8   "requirement" is often used interchangeably with the word "limitation."

9   **Royalty:**   A royalty is a payment made to the owner of a patent by a non-owner in exchange for

10   rights to make, use or sell the claimed invention.

11   **Specification:**   The specification is a required part of a patent application and an issued patent.   It

12   is a written description of the invention and of the manner and process of making and using the

13   claimed invention.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1     Dated:  June 22, 2015              LATHROP & GAGE LLP

2

3

4                                 By: /s/ John Shaeffer
                                   John J. Shaeffer
                                   Attorneys for Plaintiff

5                                    TVIIM, LLC

6

7     Dated:  June 22, 2015              WILMER CUTLER PICKERING HALE
                                   AND DOOR LLP

8

9

10                                 By: /s/ Joseph Mueller
                                   Joseph J. Mueller (*pro hac vice*)

11                                    Attorneys for Defendant
                                   McAfee, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ATTESTATION OF E-FILED SIGNATURES**

2

3      I, Jeff Grant, am the ECF user whose ID and password are being used to file this Joint

4 Case Management Conference Statement.  In compliance with Civil Local Rule 5-1(i)(3), I

5 hereby attest that concurrence in this filing had been obtained from Joseph J. Mueller and John J.

6 Shaeffer and that records to support this concurrence are on file.

7

8 Dated:  June 22, 2015                          _/s/ Jeff Grant_

                                                          Jeff Grant
9

10

11      **CERTIFICATE OF SERVICE**

12      I hereby certify under penalty of perjury under the laws of the United States that a true and

13 correct copy of the above and foregoing document has been served on June 16, 2015 to all

14 counsel of record who are deemed to have consented to electronic service via the Court's ECF

15 system per Civil Local Rule 5-1.

16

17

18 Dated:  June 22, 2015                          _/s/ Jeff Grant_

                                                          Jeff Grant
19

20

21

22

23

24

25

26

27

28