UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TVIIM, LLC,<br><br>   Plaintiff,<br><br> v.<br><br>MCAFEE, INC.,<br><br>   Defendant. | Case No. 13-cv-04545-HSG<br><br>**ORDER OVERRULING DEFENDANT'S OBJECTIONS TO PLAINTIFF'S EXPERT WITNESS DEMONSTRATIVES AND GRANTING MOTION TO SEAL**<br><br>Re: Dkt. No. 252 |

Pending before the Court are Defendant McAfee, Inc.'s objections to Plaintiff TVIIM, LLC's expert witness demonstratives, Dkt. No. 251, and Defendant's motion to seal trial exhibits, Dkt. No. 252. For the reasons stated below, the Court OVERRULES Defendant's objections and GRANTS Defendant's motion to seal.

### I.   OBJECTIONS TO DEMONSTRATIVES

Defendant objects that the demonstratives disclosed by Plaintiff for use during the examination of its damages expert Bruce McFarlane "include the average sales price for [Defendant's] accused products." Dkt. No. 251 at 2. Defendant contends that this information is "subject to exclusion" under its motion in limine No. 1, which sought to exclude any "testimony or evidence of McAfee's or Intel's total or worldwide sales, revenues, or profits, or total net worth, stock worth, market capitalization, or amounts paid under licenses." Dkt. No. 165 at 5. The Court granted the motion in limine, which was unopposed, at the pretrial conference on June 30, 2015.

As an initial matter, in ruling on the motion in limine, the Court was not presented with Defendant's current claim that the average sales price of Defendant's accused products amounts to evidence of "*total or worldwide* sales, revenues, or profits." While Defendant now claims that these categories in the motion in limine were "example[s]," Dkt. No. 251 at 2, the Court has re-reviewed the motion and finds that Defendant did not squarely identify the category of information

to which it now objects. Accordingly, to ensure clarity, the Court analyzes below the specific issue now presented.

### A. Legal Standard

Reasonable royalty damages, based on a hypothetical negotiation occurring between the parties at the time of the first infringement, are the minimum amount "adequate to compensate for the infringement" of a patent. 35 U.S.C. § 284. "Where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). Accordingly, "it is generally required that royalties be based not on the entire product, but instead on the smallest salable patent-practicing unit." *Id.* The exception to this general rule is the "market value rule," under which "a patentee may be awarded damages as a percentage of revenues or profits attributable to the entire product" only if "it can be shown that the patented feature drives the demand for an entire multi-component product." *Id.*

"In the absence of such a showing, principles of apportionment apply." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014). Under these principles, "a patentee's obligation to apportion damages only to the patented features does not end with the identification of the smallest salable unit if that unit still contains significant unpatented features." *Id.* at 1329. Rather, "[t]he law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology." *Id.*

### B. Discussion

It is undisputed that Mr. McFarlane does not base his calculation of a reasonable royalty on the market value rule. Rather, he begins with the "smallest salable patent-practicing unit"—the average sales price of the accused products—and apportions the royalty base down to "a reasonable estimate of the value of its claimed technology." *Virnetx*, 767 F.3d at 1329. This is precisely what the Federal Circuit requires. Indeed, Defendant did not bring a *Daubert* motion or challenge the reliability of Mr. McFarlane's methodology. Instead, Defendant appears to argue that the average sales prices should be excluded under Federal Rule of Evidence 403 "as the

United States District Court
Northern District of California

1  danger of unfair prejudice substantially outweigh[s] any possible probative value." See Dkt. No.
2  165 at 3.
3        The Court finds that exclusion of the average sales prices under Rule 403 would be
4  improper.  The average sales price information is plainly relevant for the limited purpose for
5  which it was used by Mr. McFarlane: serving as the starting point for the "apportioning down" of
6  the royalty base to a reasonable estimate of the value of the accused feature, as required by
7  *Virnetx*.  McAfee does not seriously contest this point, arguing instead that "[b]ecause the entire
8  market value of McAfee's various products is not at issue, their total revenue numbers are
9  irrelevant."  Dkt. No. 165 at 3.  But Mr. McFarlane is not attempting to put the "entire market
10  value" of the accused products at issue:  rather, the royalty base on which he relies is the *portion*
11  of the market value of the multi-component accused products that, in his opinion, is reasonably
12  attributable to the allegedly infringing feature.  See *Virnetx*, 767 F.3d at 1327 (holding that the
13  plaintiff's expert's reliance on "the entire value of the [accused] devices as the 'smallest salable
14  units,' without attempting to apportion the value attributable to the [infringing] features,"
15  constituted legal error).  Testimony regarding the starting point of Mr. McFarlane's apportionment
16  analysis is highly relevant and necessary to permit the jury to evaluate the basis for and
17  reasonableness of his apportionment approach:  without it, his opinion would be subject to
18  persuasive attack as untethered to any objective measure of the value of the accused feature.
19        The risk of unfair prejudice does not substantially outweigh the significant probative value
20  of this testimony so as to warrant exclusion under Rule 403.  In the cases cited by Defendant, the
21  error identified by the Federal Circuit was the improper introduction of the total market value of
22  the accused products without satisfying the market value rule, and without making any effort to
23  apportion.  See *LaserDynamics*, 694 F.3d at 68 (holding that patentees may not use a total market
24  value royalty base without satisfying the requirements of the market value rule); *Uniloc USA, Inc.*
25  *v. Microsoft Corp.*, 632 F.3d 1292, 1322 (Fed. Cir. 2011) (affirming trial court's ruling that the
26  plaintiff's reference to the "entire market value of the accused products" as a "check" on the
27  reasonableness of the plaintiff's royalty calculation constituted legal error and warranted a new
28  trial on damages).  In other words, the unfair prejudice lay in the admission of evidence of a

3

legally incorrect (and very high) royalty base.

The situation here is different. McAfee does not take issue in its motion with Mr. McFarlane's methodology—it just argues that the jury should be kept in the dark regarding the factual basis for his apportionment analysis. Excluding certain steps of Mr. McFarlane's reasonable royalty calculation—*i.e.*, those steps in which he explains how he arrived at the "reasonable estimate of the value of" the allegedly infringing feature—would unfairly prejudice Plaintiff by truncating Mr. McFarlane's analysis, severely damaging his credibility and confusing the jury. *See Virnetx*, 767 F.3d at 1327, 1329 ("[T]he requirement that a patentee identify damages associated with the smallest salable patent-practicing unit is simply a step toward meeting the requirement of apportionment."). Moreover, Mr. McFarlane's use of the average sales price per unit as the starting point, rather than referring to overall revenue figures, mitigates the concern expressed in *LaserDynamics* that "disclosure to the jury of the overall product revenues cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." 694 F.3d at 68 (citation and internal quotation marks omitted). The Court is not persuaded by McAfee's assertion that "disclosing average selling price alongside the units sold . . . permits the jury to easily calculate total revenues," Dkt. 251 at 3 n.2. *Virnetx* expressly requires an apportionment analysis, and Defendant cites no case holding that a plaintiff is barred from introducing the baseline fact upon which an expert builds that apportionment opinion.

The Court concludes that allowing Mr. McFarlane to present his full expert opinion, including the average sales price of the accused products as an objective starting point for the apportionment of the royalty base attributable to the allegedly infringing features, will not result in unfair prejudice that substantially outweighs the probative value of his testimony. Defendant's objection is therefore OVERRULED. That said, the Court is mindful of the importance of ensuring that Mr. McFarlane's testimony does not become a vehicle for presenting the jury with unfairly prejudicial insinuations that, in essence, Defendant should pay the award sought simply because it makes several times that figure selling the accused products. If Defendant wishes to submit a proposed limiting instruction on this point, it must meet and confer with Plaintiff to

1  attempt to agree on wording consistent with this order before submitting any proposal to the
2  Court.

3  **II.  MOTION TO SEAL**

4  Defendant moves to seal slides 3, 13-17, 25, 34, and 40-42 of Mr. McFarlane's
5  demonstratives and pages 0020, 0038, and 0043 of Trial Exhibit 34.  Plaintiff does not oppose the
6  motion to seal.

7  **A.  Legal Standard**

8  "[A] 'compelling reasons' standard applies to most judicial records.  This standard derives
9  from the common law right 'to inspect and copy public records and documents, including judicial
10 records and documents.'"  *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010)
11 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7).  "[A] 'strong presumption in
12 favor of access' is the starting point."  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172,
13 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th
14 Cir. 2003)).  To overcome this strong presumption, the party seeking to seal a judicial record
15 related to a dispositive motion must "articulate compelling reasons supported by specific factual
16 findings that outweigh the general history of access and the public policies favoring disclosure,
17 such as the public interest in understanding the judicial process" and "significant public events."
18 *Id.* at 1178-79 (internal citations, quotation marks, and alterations omitted).  "In general,
19 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing
20 court records exist when such 'court files might have become a vehicle for improper purposes,'
21 such as the use of records to gratify private spite, promote public scandal, circulate libelous
22 statements, or release trade secrets."  *Id.* at 1179 (citing *Nixon*, 435 U.S. at 598).  "The mere fact
23 that the production of records may lead to a litigant's embarrassment, incrimination, or exposure
24 to further litigation will not, without more, compel the court to seal its records."  *Id.*

25 The court must "balance the competing interests of the public and the party who seeks to
26 keep certain judicial records secret.  After considering these interests, if the court decides to seal
27 certain judicial records, it must base it decision on a compelling reason and articulate the factual
28 basis for its ruling, without relying on hypothesis or conjecture."  *Id.* at 1179.  Civil Local Rule

79-5 supplements the compelling reasons standard set forth in *Kamakana*: the party seeking to file a document or portions of it under seal must "establish[] that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law. . . . The request must be narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b).

**B.  Discussion**

Defendant seeks to seal slides 3, 13-17, 25, 34, and 40-42 of Mr. McFarlane's demonstratives, which contain confidential financial information such as product-specific profit margins, average sales prices, and number of units sold. Defendant also seeks to seal pages 0020, 0038, and 0043 of Trial Exhibit 34, which contain confidential product pricing information. Defendant contends that public disclosure of this information would allow its competitors and suppliers to "take advantage of this information in negotiating pricing information," and allow its competitors to "gain an unfair advantage by using it to determine which features of its own products it could further develop and improve in order to gain market share" over Defendant. Dkt. No. 252 at 3.

In *In re Electronic Arts*, 298 F. App'x 568, 569 (2008), the Ninth Circuit observed that "business information that might harm a litigant's competitive strategy" is sealable information. Furthermore, "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it," constitutes a trade secret that may be sealed. *Id.* More specifically, in *Apple Inc. v. Samsung Electronics Co.*, 727 F.3d 1214, 1223 (2013), the Federal Circuit held that the trial court abused its discretion by not sealing portions of documents "containing detailed product-specific financial information, including costs, sales, profits, and profit margins."

In accordance with the above authority, the Court finds that Defendant has articulated "compelling reasons" to seal the documents. Furthermore, the Court finds that Defendant's proposed redactions of Mr. McFarlane's demonstratives and Trial Exhibit 34 are "narrowly tailored" to seal only sealable material, as required by Civil Local Rule 79-5. Accordingly, the Court GRANTS McAfee's request to seal the identified portions of the McFarlane demonstratives

1  and Trial Exhibit 34 that contain confidential product-specific financial information.

2  **III.  CONCLUSION**

3  For the foregoing reasons, Defendant's objections to Mr. McFarlane's demonstratives are

4  OVERRULED.  Defendant's motion to seal is GRANTED.

5  **IT IS SO ORDERED.**

6  Dated: July 19, 2015

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge