*REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

1  Christine C. Capuyan (SBN 281036)
     christine.capuyan@wilmerhale.com
2  WILMER CUTLER PICKERING
   HALE AND DORR LLP
3  950 Page Mill Road
   Palo Alto, CA 94304
4  Telephone: (650) 858-6000
   Facsimile: (650) 858-6100
5
6  Joseph J. Mueller (*pro hac vice*)
     joseph.mueller@wilmerhale.com
   Sarah B. Petty (*pro hac vice*)
7    sarah.petty@wilmerhale.com
   WILMER CUTLER PICKERING
8  HALE AND DORR LLP
   60 State Street
9  Boston, MA 02109
   Telephone:    (617) 526-6000
10 Facsimile:    (617) 526-5000
11 Nina S. Tallon (*pro hac vice*)
     nina.tallon@wilmerhale.com
12 WILMER CUTLER PICKERING
   HALE AND DORR LLP
13 1875 Pennsylvania Avenue NW
   Washington, DC 20006
14 Telephone:    (202) 663-6000
   Facsimile:    (202) 663-6363
15
16 Attorneys for Defendant and
   Counterclaim-Plaintiff McAfee, Inc.
17
18              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
19              **SAN FRANCISCO DIVISION**
20
   TVIIM, LLC, a Colorado Limited liability      Case No. 3:13-cv-04545-HSG
21 company,
                                                 **MCAFEE'S REPLY IN SUPPORT OF**
22              Plaintiff,                        **ITS MOTION FOR ATTORNEYS' FEES**
                                                 **AND COSTS**
23         v.
24 MCAFEE, INC., a corporation,
25              Defendant.
26
27
28

*REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

# TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................................. ii

I.      INTRODUCTION ...................................................................................................................1

II.     ARGUMENT ..........................................................................................................................2

      A.      McAfee Has Proven That This Case Is "Exceptional" Under 35 U.S.C. §
      285 And *Octane Fitness* ..............................................................................................2

            1.     As the Supreme Court Has Instructed And Courts In This District
            Have Held, Fees Awards Are Appropriate In Circumstances Like
            These—Where Patentees Proceed In The Face Of Known
            Substantive Problems .................................................................................3

            2.     The Jury's Verdict Of Noninfringement And Invalidity Confirmed
            That TVIIM's Case Was Unusually Weak On The Merits .........................4

                  (a)     Dr. Garuba's Admissions At His February 2015
                  Deposition—Which He Confirmed At Trial—Left TVIIM
                  With No Valid Infringement Claim .................................................5

                  (b)     The Court's Construction Of The Term "Vulnerability"
                  Ensured That The '168 Patent Would Be Found Invalid ................9

            3.     The Entanglement Of TVIIM, TVIIM's Counsel, The '168 Patent,
            And TVIIM's Predecessors Only Reinforces That TVIIM Should
             Have Known The Basic Problems In Its Case ...........................................12

            4.     TVIIM Litigated This Case In An Unreasonable Manner ........................12

      B.      McAfee Provided Sufficient Support To Establish The Reasonableness Of
      Its Requested Fees ......................................................................................................14

      C.      McAfee Seeks To Recover Only Those Costs Permitted by Local Rule 54-
      3(d) ...........................................................................................................................15

III.    CONCLUSION .....................................................................................................................15

*REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,
    393 F.3d 1378 (2005)........................................................................................3

*Cognex Corp. v. Microscan Sys., Inc.*,
    No. 13-cv-2027-JSR, 2014 WL 2989975 (S.D.N.Y. June 30, 2014), .................................3, 13

*Digital Reg of Texas, LLC v. Adobe Sys., Inc.*,
    No. 12-cv-1971-CW, 2015 WL 1026226 (N.D. Cal. Mar. 9, 2015)........................................3

*Intex Recreation Corp. v. Team Worldwide Corp.*,
    77 F. Supp. 3d 212 (D.D.C. 2015) .......................................................................13

*Kilopass Tech., Inc. v. Sidense Corp.*,
    -- F. Supp. 3d --, 2015 WL 1065883 (N.D. Cal. Mar. 11, 2015)............................................15

*Lumen View Tech., LLC v. Findthebest.com, Inc.*,
    24 F. Supp. 3d 329 (S.D.N.Y. 2014)........................................................................3

*MarcTec, LLC v. Johnson & Johnson*,
    664 F.3d 907 (Fed. Cir. 2012).............................................................................9

*Monolithic Power Sys. v. O2 Micro Int'l Ltd.*,
    726 F. 3d 1359 (Fed. Cir. 2013)........................................................................3, 14

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014) ................................................................. *passim*

*Phonometrics, Inc. v. Westin Hotel Co.*,
    350 F.3d 1242 (Fed. Cir. 2003).............................................................................5

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    726 F.3d 1306 (Fed. Cir. 2013).............................................................................9

*Yufa v. TSI Inc.*,
    No. 09-cv-1315-KAW, 2014 WL 4071902 (N.D. Cal. Aug. 14, 2014) ....................................3

**Statutes**

35 U.S.C. § 285...............................................................................................2,

**Other Authorities**

Local Rule 54-3(d)(5) ................................................................................................................15

*REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

## I.  INTRODUCTION

As McAfee's opening brief established, TVIIM pressed this case long past the point at which any reasonable party would have withdrawn the claims.  Fundamental problems with TVIIM's infringement case were evident by at least February 2015, when TVIIM's infringement expert conceded at his deposition that the accused functionality allowed for updating software any time an update is available—independent of any identification of vulnerabilities—rather than "in response to" or "as a result of" identification of vulnerabilities as required by the claims.  The Court's rejection of TVIIM's attempts to artificially narrow the meaning of the claim term "vulnerability" subsequently foreclosed any plausible defense of the patent's validity.  TVIIM should have been particularly cognizant of these substantive problems given its counsel's deep and direct involvement in the history of the patent.  Yet, TVIIM persisted in pressing this litigation—its only business—and engaged in improper tactics in doing so.  This conduct justifies a fees award.

In its opposition brief, TVIIM attempts to show that it had a credible and trial-worthy case, but none of its arguments overcomes the fundamental substantive problems that were apparent long before trial.

***First***, TVIIM argues that McAfee is suggesting that non-practicing entities ("NPEs") are subject to a different standard for an attorneys' fees award.  Not so:  McAfee asks the Court to apply the same standard that applies to all parties.  As clarified by the Supreme Court in *Octane Fitness*, that standard means that all parties—including NPEs like TVIIM—proceed with risk in trying to use groundless litigation to monetize patents.

***Second***, on the merits, TVIIM presents a scattershot series of claim construction and fact arguments, but TVIIM cannot overcome the multiple, independently sufficient grounds for noninfringement and invalidity that resulted in the jury's unusually strong repudiation of TVIIM's case, finding the asserted claims both not infringed and invalid.  These grounds, which included invalidating prior art authored by the named inventors themselves, demonstrate the substantive weakness of TVIIM's litigation position and the exceptional nature of this case.

*REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

***Third***, TVIIM's opposition fails to justify its litigation tactics, which included repeatedly trying to relitigate claim construction to the jury and making closing arguments that were outside the evidentiary record (and incorrect). Indeed, the opposition brief continues this approach, leveling baseless accusations that McAfee's counsel engaged in misconduct.

***Fourth***, TVIIM claims that McAfee has resorted to "vitriol and ad hominem attacks" but fails to identify any, and none exists.

In sum, TVIIM's opposition brief fails to overcome McAfee's showing that this is an exceptional case that merits a fees award. McAfee is conservatively seeking its fees after February 2015, when TVIIM's infringement expert conceded facts that could not be reconciled with a plausible infringement theory. That limited period (i.e., March 2015-July 2015) is one in which no reasonable party would have pressed the case—and particularly not a party like TVIIM that had the extensive historical knowledge of the patent (and its defects).

McAfee is also entitled to its costs as the prevailing party, and contrary to TVIIM's arguments, McAfee seeks only expenses associated with activities that are well-recognized as recoverable costs.

## II. ARGUMENT

McAfee's opening brief established, and TVIIM's opposition brief fails to counter, that (A) this is an exceptional case under controlling law, (B) McAfee seeks only reasonable attorneys' fees for a limited time period, and (C) McAfee seeks the costs to which it is entitled as the prevailing party.

### A. McAfee Has Proven That This Case Is "Exceptional" Under 35 U.S.C. § 285 And *Octane Fitness*

In its opening brief, McAfee established that TVIIM offered unusually weak arguments on the merits and litigated the case in an unreasonable manner. Either would be sufficient to render the case "exceptional" under 35 U.S.C. § 285 and *Octane Fitness*. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1755 (2014). In response, TVIIM (1) miscasts the legal standard as overly rigid; (2) rehashes the infringement arguments that were summarily rejected by the jury and offers new validity arguments that are likewise without merit;

*REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

and (3) provides unavailing excuses for its unreasonable litigation conduct.  Each of these

arguments fails.

1.   As the Supreme Court Has Instructed And Courts In This District Have
        Held, Fees Awards Are Appropriate In Circumstances Like These—
        Where Patentees Proceed In The Face Of Known Substantive Problems

In *Octane Fitness*, the Supreme Court reversed Federal Circuit precedent that required a

finding "that the litigation was both 'brought in subjective bad faith' and '***objectively baseless***,'"

*id.* at 1756 (emphasis added) (abrogating *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393

F.3d 1378 (2005)), concluding that this standard was "overly rigid" and "too restrictive," and

stressing that district courts should have greater discretion to award fees, *id.* at 1756-57.

TVIIM effectively asks the Court to apply the earlier standard—indeed, TVIIM argues

that "[c]ourts . . . routinely deny attorneys' fees motion[s] where . . . [a]lthough ultimately not

successful, the patentees arguments were plausible ***and not objectively baseless***."  (TVIIM Opp.

at 13 (emphasis added).)  That is not the law.  Under the controlling standard, courts have

pointed to a plaintiff's unreasonable disregard of facts that contradicted its substantive

allegations as one basis for a fees award.[1]  That is precisely what happened in this case.

Moreover, that the Court denied summary judgment to McAfee does not foreclose a fee

award—there is no requirement that fees be tied to a summary judgment decision.  *See*

*Monolithic Power Sys. v. O2 Micro Int'l Ltd.*, 726 F. 3d 1359, 1366 (Fed. Cir. 2013) (rejecting as

"meritless" argument that denial at summary judgment stage forecloses fees award).  This

reflects the common sense recognition that even with the benefit of full briefing and argument, at

summary judgment courts may not yet have a complete understanding of the substantive

deficiencies in a party's case—problems that the party itself knows well—and those deficiencies

may become more visible at trial.  Accordingly, courts have awarded fees after trial even where

summary judgment was denied before trial.[2]

---

[1]    *See, e.g.*, *Yufa v. TSI Inc.*, No. 09-cv-1315-KAW, 2014 WL 4071902, at *3-5 (N.D. Cal.
Aug. 14, 2014); *Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 336-37
(S.D.N.Y. 2014).

[2]    *See, e.g.*, *Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, No. 12-cv-1971-CW, 2015 WL
1026226, at *1, 5 (N.D. Cal. Mar. 9, 2015); *Cognex Corp. v. Microscan Sys., Inc.*, No. 13-cv-

---

REPLY IN SUPPORT OF MOTION
FOR ATTORNEYS' FEES/COSTS
3:13-cv-04545-HSG

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

1    This is particularly appropriate here.  In opposing McAfee's Motion for Summary

2   Judgment of Invalidity, TVIIM successfully argued that there was a disputed issue of fact as to

3   the public availability of the HostGUARD brochure before the critical date of the '168 patent.

4   (Dkt. No. 125 at 18-20; Dtk. No. 223 at 11.)  But TVIIM abandoned this argument at trial in light

5   of evidence ***from the files of its own witness***, Eric Knight, that the brochure was distributed at a

6   public conference in November 1996.  (Dkt. No. 279 (Knight Cross) at 1181:10-1182:15.)

7   TVIIM did not cross-examine third-party fact witness Ron Toman to contest his testimony that

8   he distributed the brochure in 1996.  (Dkt. No. 278 (Toman Cross) at 928:15-929:5.)

9    That TVIIM was able to survive summary judgment in part by making an argument

10   contradicted by its own witness's documents should not be treated as a mark in its favor.  Rather,

11   it is yet further evidence that TVIIM litigated this case long past the point that TVIIM—with all

12   the information that it possessed, including from TVIIM's counsel's long involvement with the

13   patent—should have understood the unusual weakness of its substantive positions.

14    2.    The Jury's Verdict Of Noninfringement And Invalidity Confirmed That
          TVIIM's Case Was Unusually Weak On The Merits

15    As noted in McAfee's Opening Brief, the jury's verdict of both noninfringement and

16   invalidity is highly unusual, occurring in only 9 of 111 patent infringement cases that reached a

17   jury verdict in the United States last year.[3]  (TVIIM Opp. at 12.)  This extraordinary verdict

18   demonstrates the exceptional weakness of TVIIM's case on the substantive merits.  As for

19   infringement, TVIIM should have recognized the deficiencies in its case no later than the

20   deposition of its technical expert, Dr. Garuba, in February 2015.  As for invalidity, the Court's

21   rejection of TVIIM's proposed construction of the term "vulnerability" eliminated ***any***

22   reasonable argument that the asserted claims of the '168 patent are valid.  By pressing the case

23   through trial, TVIIM caused McAfee to waste significant money and resources.

24

25   _____

26   2027-JSR, 2014 WL 2989975, at *4, 7-8 (S.D.N.Y. June 30, 2014), *appeal dismissed* (Dec. 8, 2014).

27   [3]    To the extent that TVIIM is suggesting that the majority of the 111 patents cases involved plaintiff verdicts (TVIIM Opp. at 18-19), that only underscores the rarity of a defendant's verdict

28   as sweeping as that returned by the jury in this case.

*REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

TVIIM's opposition brief fails to address the basic substantive problems with its case, instead raising scattershot arguments intended to show that it somehow had a plausible case notwithstanding these problems. It did not, as explained in McAfee's opening brief and below.

> (a)  Dr. Garuba's Admissions At His February 2015 Deposition—Which He Confirmed At Trial—Left TVIIM With No Valid Infringement Claim

During his February 27, 2015 deposition, Dr. Garuba made three key admissions regarding the operation of the accused McAfee products. He admitted that McAfee's Program Updates feature (1) makes two "separate and independent queries to its database" (Dkt. No. 295-21 (Garuba Dep.) at 117:1-5); (2) first checks to determine if a software update is available and then separately checks to determine if the installed software has a vulnerability (*id.* at 117:14-23); and (3) updates whenever an update is available, regardless of whether a vulnerability exists in the installed software (*id.* at 205:7-13). Dr. Garuba confirmed these facts at trial. (Dkt. No. 278 (Garuba Cross) at 705:23-707:2, 708:17-20, 716:14-716:21.)

As detailed in McAfee's opening brief (Motion at 17-18), each admission was fatal to TVIIM's infringement theories. Each admission demonstrated that—at best—there was a *correlation* between when the accused McAfee products identified a vulnerable program and when that program was updated. This falls far short of the *causation* Dr. Garuba admitted is necessary to practice the asserted claims.[4] As such, TVIIM had no valid infringement claim, as it must have realized at the time of Dr. Garuba's deposition. *Cf. Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246 (Fed. Cir. 2003) ("When 'the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence.'" (citation omitted)).

---

[4]  (Dkt. No. 278 (Garuba Cross) at 715:22-716:9 ("**Q** And *these limitations imply a sort of cause-and-effect relationship, right?* **A** *Cause and effect, yes.* As a result of detected vulnerabilities. . . . **Q** It requires more -- *the claims require more than simply the correlation of two things, right?* **A** *That's correct.*" (emphases added)).)

1    Critically, these admissions described the actual operation of the McAfee products, as set

2    out in the source code that defines how the products work.  Witness after witness at trial testified

3    that the source code was the definitive source for how the products work.  (Dkt. No. 278 (Garuba

4    Cross) at 710:9-12; Dkt. No. 257 (Yu Cross) at 613:21-24; Dkt. No. 278 (Worley Direct) at

5    832:24-833:1.)  In the end, the only question relevant to the issue of infringement was how the

6    actual accused products work, and at least as of Dr. Garuba's deposition in February 2015, there

7    was no dispute on that score.

8    Yet, again and again during trial, TVIIM sought to develop its case based on snippets

9    taken from outdated and inaccurate design documents and marketing materials, rather than the

10   source code.  TVIIM's counsel did not ask Dr. Garuba a single substantive question about the

11   source code during his direct examination at trial.  This approach—to ignore the actual operation

12   of the products, and to seek to persuade the jury based on materials that TVIIM knew to be

13   outdated and inaccurate—was improper and is grounds for a fees award.

14   TVIIM asserts that its infringement theories were "[s]trongly [s]upported" and "founded

15   on rock-solid evidence." (TVIIM Opp. at 16.) The cited examples do not support these assertions.

16   1.    TVIIM points to the testimony of Dr. Garuba and McAfee engineer Yannick Yu,

17   both of whom discussed a "high-level component diagram" in a McAfee Technical Support

18   Document (Dkt. No. 302-1, Ex. 9 (Trial Ex. 33).)  But as noted above, Dr. Garuba had conceded

19   the actual operation of the products at his deposition in February 2015 and he repeated those

20   concessions at trial.  Mr. Yu, in approximately three hours of cross-examination, steadfastly

21   explained how the accused products work—in precisely the fashion that Dr. Garuba had admitted.

22   For example, Dr. Garuba and Mr. Yu both testified that McAfee's Program Updates feature first

23   checks for updates and only later checks for identified vulnerabilities.  (Dkt. No. 278 (Garuba

24   Cross) at 705:23-707:2; Dkt. No. 257 (Yu Direct) at 522:15-18.)  They further testified that these

25   queries are "separate and independent."  (Dkt. No. 278 (Garuba Cross) at 708:17-20; Dkt. No.

26   257 (Yu Direct) at 522:22-23.)

27   These facts could not be reconciled with the causality requirements of the asserted claims,

28   which require that vulnerabilities are identified first so that actions can be taken "in response to"

REPLY IN SUPPORT OF MOTION
FOR ATTORNEYS' FEES/COSTS
3:13-cv-04545-HSG

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

1   (claim 1) or "as a result of" (claim 11) that vulnerability.  (Dkt. No. 278 (Garuba Cross) at

2   715:22-716:9.)

3       2.    TVIIM's opposition brief relies heavily on Trial Exhibit 33, a Technical Support

4   Document for the accused McAfee feature, and the fact that it "*accurately reflected the current*

5   *operation of the Vulnerability Scanner*."  (TVIIM Opp. at 8 (emphasis in original).)  That is true:

6   Exhibit 33 accurately reflects the ***same facts*** demonstrating noninfringement described above—

7   albeit at a high level[5]—and the testimony of Mr. Yu regarding Exhibit 33 was entirely consistent

8   with his testimony described above.  For example:

    Q.    And the McVulODS is going ***to run two independent -- two independents***
9           ***queries of the database; right?***
10

11       A.    ***That's correct.***

12   (Dkt. No. 257 (Yu Cross) at 580:19-21 (emphases added).)

13       Q.    Okay.   And ***if I have -- if I have supported programs on my computer,***
        ***but they have no vulnerabilities, I get no results for that?***
14

15       A.    For those -- ***as far as we have updates, it will still show up.***

16   (*Id.* at 583:10-14 (emphases added).)

17       Q.    Okay.  And the only -- the only products that are going to    be    eliminated
        are CPEs with vulnerabilities and no updates; correct?
18

19       A.    ***The ones will be eliminated will be the ones without updates, regardless***
        ***of the vulnerabilities.***

20   (*Id.* at 584:23-585:2 (emphasis added).)

21       Dr. Garuba's testimony regarding Exhibit 33 likewise does not support TVIIM's

22   argument.  (Dkt. No. 278 (Garuba Cross) at 715:22-716:9.)  Dr. Garuba failed to address the

23   cause-and-effect requirement he conceded was present in the asserted claims.  Instead, Dr.

24   Garuba testified in conclusory fashion that the "in response to" requirement was met regardless

25   of the order of queries:

26   --------

27   [5]    TVIIM's questioning regarding Exhibit 33 focused on the "high-level component
diagram" of Figure 5.1.  (Dkt. No. 257 (Yu Direct) at 574:7-577:15; Dkt. No. 278 (Garuba Direct)
28   at 678:23-682:21.)

Q.     All right. Now, there's been a debate during the testimony so far here at trial as to whether certain steps occur in certain orders, whether the vulnerability query by ODS of the SQLite database occurs first or second. Do you recall that testimony?

A.     That's correct.

Q.     ***Does it matter to your opinions whether those steps occur in any order?***

A.     ***No.***

Q.     Explain why.

A.     . . . Now, if one would occur first, if you would identify the vulnerabilities and then the patches associated, ultimately the vulnerabilities will still -- the patches will still be installed in response to the vulnerabilities. . . .

(Dkt. No. 278 (Garuba Direct) at 683:11-684:3.)

But for the claims, the order of steps—and the causal relationship between those steps—does matter. The claims require that the identification of vulnerabilities have a cause-and-effect relationship with vulnerability remediation, as Dr. Garuba admitted. Dr. Garuba's testimony did not cure this problem.

    3.     TVIIM next argues that Program Updates performs some actions "***after***" checking for vulnerabilities and could thus be found to infringe. (TVIIM Opp. at 8, 16-17.) But TVIIM's focus on mere correlation of events again ignores the cause-and-effect requirements of the claims and the undisputed facts. The claims do not recite that vulnerability remediation simply occurs "after" vulnerability identification—they require that vulnerability remediation occur ***because of*** (i.e. "in response to" or "as a result of") vulnerability remediation.

    Accordingly, Dr. Garuba's admissions that the accused McAfee products install updates whenever an update is available regardless of whether a vulnerability exists in the installed software (Dkt. No. 295-21 (Garuba Dep.) at 205:7-13), required a finding of noninfringement.

    4.     TVIIM's final argument, that Program Updates could satisfy the "reporting the discovered vulnerability" limitation by reporting an update as "critical" or rating the update as "high," is also incorrect. By its express language, claim 11 requires "reporting ***the*** discovered vulnerability." (Dkt. No. 295-25 ('168 patent) at 12:15-16 (emphasis added).) In contrast, the accused McAfee products provided only a generalized rating, they do not tell the user what the

*REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

vulnerability is—to the extent a vulnerability exists.  (Dkt. No. 278 (Garuba Cross) at 723:2-18.)

    (b) <u>The Court's Construction Of The Term "Vulnerability" Ensured That The '168 Patent Would Be Found Invalid</u>

  The Court's construction of the term "vulnerability" foreclosed any path for TVIIM to preserve the '168 patent's validity.  *Cf. MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 919 (Fed. Cir. 2012) (finding that "MarcTec's decision to continue the litigation after claim construction further supports the district court's finding that this is an exceptional case").  As detailed in McAfee's opening brief, TVIIM attempted to distinguish the '168 patent claims over the HostGUARD and S3 prior art by arguing that the claim term "vulnerability" was limited to "pre-existing security problems."  In its June 28, 2015 Order, the Court explicitly rejected this argument.  The Court held—and later confirmed—that the "plain and ordinary meaning [of vulnerability] is not limited to 'pre-existing security problems.'"  (Dkt. No. 223 at 7.)  The Court's construction left TVIIM with baseless arguments that were explicitly contradicted by the text of the prior art references.  *See Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) (explaining that "[w]hile an adverse claim construction generally cannot, alone, form the basis for an exceptional case finding" a party must "continually assess" the merit of its claims "especially after an adverse claim construction").

  Having failed at *Markman* and at trial, TVIIM now conjures up new arguments for why the '168 patent claims could have been valid over the prior art.  None is availing:

  1. To begin, in a new argument never made at *Markman* or trial, TVIIM argues that the Court's construction of "vulnerability" "*had no effect on claim 9*," which it claims limited vulnerabilities to "pre-existing security issues."  (TVIIM Opp. at 14 (emphasis in original).)  TVIIM's attempt to backdoor its rejected claim construction into claim 9 fundamentally misreads the claim.  Claim 9 recites:  "The security system of claim 7 wherein the system memory comprises a list of known vulnerabilities which may be employed by the integrity checking module."  Dkt. No. 295-25 ('168 Patent) at 11:62-64.  This means what it says:  the system memory must include a "list of known vulnerabilities," and that list "may be employed by the integrity checking module."  *Id.*  The HostGUARD and S3 prior art each explicitly discloses a

**_REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED_**

1  "list of known vulnerabilities," and moreover each explicitly discloses functions that would

2  qualify as an "integrity checking module" that could use the list of known vulnerabilities.[6]

3        2.      TVIIM next argues that "[t]he Court's construction did not capture all

4  configuration errors," only "those that were exploitable."  (TVIIM Opp. at 14.)  While true,

5  TVIIM fails to explain how this supports the patent's validity.  First, as Dr. Rubin testified,

6  HostGUARD and S3 were designed to identify and correct vulnerabilities.  (*See, e.g.*, Dkt. No.

7  279 (Rubin Direct) at 1107:15-20, 1108:17-20.)  As such, the configuration errors those products

8  identified and corrected were "exploitable."  Second, the HostGUARD and S3 prior art disclosed

9  identifying and fixing vulnerabilities of several types in addition to configuration errors,

10  including improper permissions.[7]  These disclosures meet the elements of claims 1 and 11

11  regardless of the types of configuration errors captured within the scope of "vulnerabilities."

12        3.      TVIIM further claims to have "proffered substantial evidence that the prior art did

13  not read on many elements of the asserted claims."  (TVIIM Opp. at 14.)  Yet, the "evidence" it

14  identifies shows no such thing:

15  a.     For the "vulnerability" element of claims 1 and 11, TVIIM identifies no evidence, only

16  attorney argument.  And even that fails.  Whether the HostGUARD and S3 prior art references

17  fixed exploitable and non-exploitable weaknesses alike (as TVIIM argues) or exploitable

18  weaknesses alone is irrelevant to the '168 patent claims.  What matters is that the references

19  disclose identifying vulnerabilities and taking action "in response to" or "as a result of" those

---

20    [6]    (*See, e.g.*, Dkt. No. 295-26 (HostGUARD Brochure) at EK0000027 ("**INTEGRITY
21  CHECKER** – Searches for existing computer security and configuration problems within the
operating system environment using an up-to-date vulnerability database."); Dkt. No. 295-27 (S3
22  1.1 Manual) at 84902DOC005123 (discussing functionality that assesses vulnerabilities,
including files permission and ownership errors), 84902DOC005203 (identifying a "*vulnerability
23  dictionary* (or *bug dictionary*), which defines the types of vulnerabilities that S3 scans for"
(emphases in original).)
24    [7]    (*See, e.g.*, Dkt. No. 295-26 (HostGUARD Brochure) at EK0000027 (identifying "eight
25  tightly integrated security tools" including an "**INTEGRITY CHECKER**" that "[s]earches for
existing computer security and configuration problems" and a "**DIRECTORY SCANNER**" that
26  "[s]earches the entire file system for vulnerabilities based on incorrect file permissions"); Dkt.
No. 295-27 (S3 1.1 Manual) at 84902DOC005123 ("S3 assesses file permissions, file ownership,
27  network service configurations, account setup, program authenticity and common user-related
security weaknesses such as guessable passwords.").)

28

REPLY IN SUPPORT OF MOTION
FOR ATTORNEYS' FEES/COSTS
3:13-cv-04545-HSG

*REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

1  vulnerabilities.  The references meet these limitations.[8]

2  b.      For the "in response to" element, TVIIM mischaracterizes the cause-and-effect

3  relationship required by the claims.  The claims require identifying vulnerabilities and taking

4  action "in response to" or "as a result of" those vulnerabilities.  The HostGUARD and S3 prior

5  art clearly disclose these limitations. That the HostGUARD and S3 prior art references could

6  also fix other types of errors is irrelevant to the invalidity analysis.

7  c.      For the "in response to" element, TVIIM also highlights a supposed admission by Dr.

8  Rubin regarding the impact of user interaction on his analysis of the S3 1.1 Manual.  TVIIM

9  conflates Dr. Rubin's testimony regarding the invalidating ***S3 1.1 Manual*** and the ***S3 1.0***

10  ***software***[9]—Dr. Rubin did not rely on the software as a base reference for his invalidity analysis.

11  With regard to the S3 1.1 Manual—on which he **did** rely as an anticipatory reference—Dr.

12  Rubin testified the as follows:

13  
    Q.     And it is so -- and it's your opinion that if the user has to take steps in
           order to generate the fix script, it is not an action in response?

14  

15  
    A.     ***I wouldn't characterize that as my opinion. What I would say is that the***
           ***S3 manual discloses running fix scripts in order to correct permissions***
           ***and in order to correct ownerships.***

16  

17  (Dkt. No. 279 (Rubin Cross) at 1069:9-15 (emphasis added).)

18  d.      For the "report the discovered vulnerability" element, TVIIM ignores Dr. Rubin's

19  testimony that the prior art HostGUARD system used a baseline that "***was designed to find***

20  ***vulnerabilities.  That was the whole purpose of the system***."  (*Id.* at 1108:17-20.)

21  

22  _____

23  [8]      (Dkt. No. 295-26 (HostGUARD Brochure) at EK0000028 ("HostGUARD allows a
    system administrator to correct potential security vulnerabilities immediately. . . .  It explains the
24  potential vulnerability, recommends corrective measures and allows the administrator to actually
    make corrective changes."); Dkt. No. 295-27 (S3 1.1 Manual) at 84902DOC005154 ("S3 has the
25  ability to generate Bourne shell scripts to correct file ownership and permission problems that it
    detects.").)
26  [9]      (Dkt. No. 279 (Rubin Cross) at 1068:24-1069:5 (". . .  But I believe when we were
    talking about the fix-it scripts in my deposition we were talking about the software and not the
27  manual."), 1070:18-25 (". . .  I don't think that in my deposition we limited our conversation to
    the 1.1 manual. . . .  I know that our conversation at that time was not limited to the manual.").)
28

3.   The Entanglement Of TVIIM, TVIIM's Counsel, The '168 Patent, And TVIIM's Predecessors Only Reinforces That TVIIM Should Have Known The Basic Problems In Its Case

TVIIM argues repeatedly that its role as an NPE does not alone entitle McAfee to fees. While true, this fails to address McAfee's actual argument:  TVIIM's structure and its unusual entanglement with counsel underscores the unreasonableness of TVIIM proceeding in the face of known substantive problems.  This is not a case where an NPE engaged independent outside counsel to litigate a case, and neither the NPE nor the lawyers had prior history with the patent. Here, as detailed in McAfee's opening brief, TVIIM's lawyers were involved at virtually every juncture of the history behind this case:  from patent prosecution; to advising predecessors to TVIIM; to conceiving, forming, and litigating on behalf of TVIIM.  This was illustrated in the demonstrative created at the deposition of Curtis Vock, who prosecuted the patent, conceived of the "Think Village" network of NPEs and TVIIM itself, was a partner to TVIIM's litigation counsel until shortly before trial, and held a financial interest in the ThinkVillage enterprise. (Dkt. No. 301-8.)

This degree of entanglement is highly unusual, and precludes TVIIM and its counsel from claiming ignorance of basic substantive problems with the case—like the invalidating role of prior art generated by the inventors themselves.  Counsel were present every step of the way, and must have been aware of the repeated failures of the technology in the marketplace; the repeated low valuations of the patent or the underlying technology; and the basic distinctions between the 1990s-era patent claims and the McAfee consumer products of 2015.  To create TVIIM as an enterprise devoted solely to litigation, and to press that litigation in the face of known substantive problems, was unreasonable—as discussed further below.

4.   TVIIM Litigated This Case In An Unreasonable Manner

The unreasonable manner in which TVIIM litigated this case serves as an independent basis for an award of attorneys' fees.  *Octane Fitness*, 134 S. Ct. at 1756.  As detailed above and in McAfee's opening brief (Motion at 16-22), TVIIM unreasonably pursued this case long after its infringement and validity theories were shown to be without merit.  In its opening brief, McAfee also detailed specific instances of misconduct—including relitigating claim

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

construction, personally attacking McAfee and its counsel, referring to facts not in the evidentiary record, and making false and exaggerated statements—which render the case exceptional.  (*Id.* at 22-23.)  TVIIM's efforts to explain away its misconduct are unavailing:

a.     <u>TVIIM's multiple attempts to relitigate the Court's construction of "vulnerability"</u> <u>warrant an exceptional case finding.</u>  TVIIM's efforts to relitigate the construction of "vulnerability" extended far beyond the two sustained objections cited in TVIIM's opposition. As earlier discussed, TVIIM's invalidity defense rested on its proposed construction of "vulnerability" as limited to "pre-existing security problem[s]."  The Court rejected this proposed construction on June 28, 2015.  (Dkt. No. 223 at 7.)  TVIIM then sought to argue its construction to the jury under the cover of "plain and ordinary meaning." (*See, e.g.,* Dkt. No. 227 at 4:7-5:2.)  The Court likewise rebuffed this effort.  (Dkt. No. 227 at 5:15-20.)  Despite the Court's rulings, TVIIM pursued its construction of "vulnerability" at trial through the testimony of named inventor Eric Knight.  (*See, e.g.*, Dkt. No. 257 (Knight Direct) at 355:5-12.)  TVIIM's misconduct forced McAfee to object, an objection the Court sustained.  (*Id.* at 355:13-18.) Courts have found efforts by a party to relitigate adverse rulings to warrant a finding of exceptional case and an award of attorneys' fees.  *See Intex Recreation Corp. v. Team Worldwide Corp.*, 77 F. Supp. 3d 212, 217 (D.D.C. 2015); *Cognex Corp.*, 2014 WL 2989975, at *4.

Having no real defense to its misconduct, TVIIM suggests that McAfee has not isolated its costs associated with that misconduct.  That is not the law:  the improper attempt to relitigate claim construction goes to the totality of the circumstances relevant to a fee award.  *See Octane Fitness*, 134 S. Ct. at 1756 ("District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances.").

b.     <u>TVIIM had the same access to McAfee source code as did McAfee's expert.</u>  At trial, TVIIM's counsel argued that he received access to McAfee's source code only "on paper" "in a dark office."[10]  (Dkt. No 280 (TVIIM's Closing Argument) at 1295:12-14.)  This statement was

---

[10]     This came after Dr. Garuba implied that he had been provided "incomplete source code." (Dkt. No. 278 (Garuba Cross) at 703:3-16.)  TVIIM's counsel later admitted that Dr. Garuba had access to the same source code as did Dr. Rubin.  (Dkt. No. 279 at 1195:25-1196:14.)

*REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

1   false, as TVIIM now admits.  (TVIIM Opp. at 23.)

2   c.      TVIIM's counsel's personal attack on McAfee's counsel was improper.  During his

3   closing argument, TVIIM's counsel insinuated to the jury that McAfee's counsel improperly

4   influenced the testimony of McAfee's employees.  (Dkt. No. 280 (TVIIM's Closing Argument)

5   at 1295:22-1296:2.)  TVIIM now attempts to excuse this argument by claiming it related to

6   McAfee's decision to correct the "help page" describing certain product features.  (The corrected

7   page comported with ***both*** McAfee's ***and*** TVIIM's experts' opinions regarding how the products

8   work.)  But TVIIM's closing argument made no mention of the help page, and instead was a

9   broad attack directed to a "room full of lawyers."  (*Id.* at 1296:3-5.)  TVIIM's counsel's

10  argument was improper, as this Court recognized by sustaining McAfee's objection.  (*Id.* at

11  1296:6-7.)  Such "unprofessional behavior may suffice . . . to make a case exceptional under §

12  285."  *Monolithic Power Sys., Inc.*, 726 F.3d at 1366 (internal quotation and citation omitted).

13  d.      TVIIM's counsel ignored the Court's order and introduced prices of McAfee products

14  that were not in evidence.  TVIIM admits that "it was error" for its counsel to reference the

15  prices of certain McAfee products during his closing argument.  (TVIIM Opp. at 23.)  These

16  prices were not in evidence, and, more egregiously, the Court had specifically excluded reference

17  to them.  (Dkt. No. 280 at 1240:8-24.)

18          **B.      McAfee Provided Sufficient Support To Establish The Reasonableness Of Its
                      Requested Fees**

19          In support of its Motion, McAfee submitted the Declaration of Joseph J. Mueller, which

20  lays out the basis for the attorneys' fees and costs it requests.  (Dkt. No. 295-28.)  This

21  declaration includes eleven paragraphs explaining why McAfee's requested attorneys' fees are

22  reasonable (*id.* at ¶¶ 9-13)—not "two sentences" as TVIIM contends (TVIIM Opp. at 24).

23  McAfee provided details regarding the members of its litigation team, their respective levels of

24  experience, and descriptions of the tasks performed by each (Dkt. No. 295-28 at ¶ 11); the fee

25  arrangement between McAfee and WilmerHale and the attorneys' fees paid by McAfee each

26  month for March 2015 through July 2015 (*id.* at ¶ 12); support for the reasonableness of the rates

27  charged by WilmerHale (*id.* at ¶ 10); and a comparison between the attorneys' fees paid by

28

*REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

1    McAfee and the market value of the work actually performed by WilmerHale (*id.* at ¶ 13).

2         TVIIM's criticism that McAfee "provide[d] the Court no rates or hours that it must

3    consider in determining reasonableness" ignores the structure of McAfee's fee arrangement with

4    WilmerHale. (TVIIM Opp. at 24.) Under this arrangement, McAfee paid ▓▓▓▓▓▓▓▓▓

5    ▓▓▓▓▓▓▓▓▓▓. "[N]egotiation and payment of fees by sophisticated clients [such as McAfee]

6    are solid evidence of their reasonableness in the market." *Kilopass Tech., Inc. v. Sidense Corp.*,

7    -- F. Supp. 3d --, 2015 WL 1065883, at *8 (N.D. Cal. Mar. 11, 2015) (citations omitted).

8    Moreover, to the extent the Court would find it helpful, McAfee is willing to submit the

9    attorneys' hours entries for *in camera* review.

10        That McAfee paid its attorneys more during the month of July than TVIIM did does not

11   render McAfee's attorneys' fees unreasonable. (TVIIM Opp. at 24.) Courts in this district have

12   recognized that reasonable attorneys' fees may differ based on "the quality of representation"

13   and "the results obtained."   *Kilopass Tech.*, 2015 WL 1065883, at *10 (citations omitted).

14        **C.    McAfee Seeks To Recover Only Those Costs Permitted by Local Rule 54-3(d)**

15        As the prevailing party in this case, McAfee is entitled to recover its costs, including

16   ▓▓▓▓▓▓▓ related to the costs it incurred in "preparing charts, diagrams, videotapes and other

17   visual aids to be used as exhibits" that were "reasonably necessary to assist the jury or the Court

18   in understanding the issues at the trial." Civ. L.R. 54-3(d)(5). McAfee carefully reviewed the

19   bills submitted by its graphics vendor, Core Legal Concepts, to ensure that this total includes

20   "only the costs of graphics used at trial or in anticipation of trial" and not "costs related solely to

21   consultation and meetings, trial technical support, equipment rental, and miscellaneous expenses."

22   (Dkt. No. 295-28 at ¶ 30; Dkt. No. 295-31 (Ex. D).)

23   **III.   CONCLUSION**

24        For the reasons stated above, McAfee respectfully requests that the Court grant McAfee

25   its attorneys' fees in the amount of ▓▓▓▓▓▓ and its costs in the amount of ▓▓▓▓▓▓

26

27

28

*REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

Dated:  September 10, 2015

WILMER CUTLER PICKERING HALE
AND DORR LLP

*/s/ Joseph J. Mueller*_____

Joseph J. Mueller (*pro hac vice*)
  joseph.mueller@wilmerhale.com
Sarah B. Petty (*pro hac vice*)
  sarah.petty@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

Nina S. Tallon (*pro hac vice*)
  nina.tallon@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363

Christine C. Capuyan (SBN 281036)
  christine.capuyan@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA  94304
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100

*Attorney for Defendant and
Counterclaim-Plaintiff McAfee, Inc.*

*REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

1

2                           **CIVIL LOCAL RULE 5-1(i)(3) ATTESTATION**

3          I hereby attest that concurrence in this filing has been obtained from Joseph J. Mueller

4  and that records to support this concurrence are on file.

5

6

7  Dated:  September 10, 2015                    */s/ Christine Capuyan*

8                                                Christine Capuyan

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION
                                                       FOR ATTORNEYS' FEES/COSTS
                                                       3:13-cv-04545-HSG

*REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*

1

2                    **CERTIFICATE OF SERVICE**

3

4          I hereby certify under penalty of perjury under the laws of the United States that a true

and correct copy of the above and foregoing document has been served to all counsel of record

5

who are deemed to have consented to electronic service via the Court's ECF system per Civil

6

Local Rule 5-1.

7

8

Dated:  September 10, 2015

9

                                              */s/ Christine Capuyan*

10                                            Christine Capuyan

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28