1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7   TVIIM, LLC,                          Case No.  13-cv-04545-HSG

8            Plaintiff,              **ORDER DENYING MOTION FOR**
                                     **JUDGMENT AS A MATTER OF LAW**
9        v.                          **AND NEW TRIAL AND GRANTING IN**
                                     **PART MOTION FOR ATTORNEYS'**
10  MCAFEE, INC.,                        **FEES AND COSTS**

11            Defendant.            Re: Dkt. Nos. 294, 305

12

13       This patent infringement action was tried to a jury in July 2015.  *See* Dkt. No. 254.  On

14  July 23, 2015, the jury returned a verdict finding that (1) Defendant McAfee, Inc. did not infringe

15  the asserted claims of United States Patent No. 6,889,168 ("the '168 Patent"); (2) the asserted

16  claims are invalid; and (3) Plaintiff TVIIM, LLC did not obtain the '168 Patent by inequitable

17  conduct.  Dkt. No. 274.

18       Pending before the Court are two sets of post-trial motions: Defendant's motion for

19  attorneys' fees and costs, and Plaintiff's motion for judgment as a matter of law and new trial.  For

20  the reasons articulated below, Defendant's motion is GRANTED IN PART and Plaintiff's motion

21  is DENIED.

22  **I.      BACKGROUND**

23       Plaintiff initially filed this lawsuit on October 2, 2013, alleging in its complaint that

24  Defendant infringed the '168 Patent.  Dkt. No. 1.  On December 5, 2013, Defendant filed its

25  answer to Plaintiff's operative first amended complaint and asserted two counterclaims for non-

26  infringement and invalidity.  Dkt. No. 24.  On January 7, 2015, Defendant filed an amended

27  answer and asserted a third counterclaim for unenforceability due to inequitable conduct.  Dkt. No.

28  102.

United States District Court
Northern District of California

United States District Court
Northern District of California

The '168 Patent, titled "Method and Apparatus for Assessing the Security of a Computer System," describes a "method and apparatus for analyzing a computer system and identifying security vulnerabilities, and more specifically . . . a method and apparatus for performing a series of procedures which identify security vulnerabilities and discrepancies in the computer system and in some cases suggesting and implementing corrective action." '168 Patent at 1:11-17.  At trial, Plaintiff asserted claims 1, 9, and 11 of the '168 Patent.

Independent claim 1 describes:

> A security system for a computer apparatus, wherein said computer apparatus includes a processor and system memory, said security system comprising:
>
> at least one security module which under direction from the processor accesses and analyzes selected portions of the computer apparatus to identify vulnerabilities;
>
> at least one utility module which under the direction from the processor, performs various utility functions with regards to the computer apparatus in response to the identified vulnerabilities; and
>
> a security system memory which contains security information for performing the analysis of the computer apparatus.

Claim 9 depends from claim 7, which describes in relevant part:

> The security system of claim **1** wherein the security modules include at least one of:
>
> [. . .]
>
> an integrity checking module which analyzes files in the system memory to identify system vulnerabilities;
>
> a network checking module which analyzes the computer apparatus to identify vulnerabilities created as a result of the computer apparatus connecting with a data network; and
>
> a password checking module which analyzes passwords for users of the computer apparatus to identify vulnerabilities.

Claim 9 describes "[t]he security system of claim **7** wherein the system memory comprises a list of known vulnerabilities which may be employed by the integrity checking module."

Finally, independent claim 11 describes:

> A method of providing a security assessment for a computer system

2

which includes a system memory, comprising the steps of:

> providing a security subsystem in the computer system such that functionality of the security subsystem is directed through a processor for the computer system, wherein the security performs steps comprising:
>
> > identifying a configuration of the system;
> >
> > accessing the system memory and performing at least one procedure to provide a security assessment for at least one aspect of the computer system;
> >
> > as a result of any vulnerabilities discovered in the assessment, identifying corrective measures to be taken with regards to the computer system;
> >
> > reporting the discovered vulnerability and the identified corrective measures; and
> >
> > upon receiving an appropriate command, initiating the corrective measures.

Formal claim construction proceedings were not held in this case. Instead, as part of its ruling on the parties' cross-motions for summary judgment, the Court concluded that the claim term "vulnerability" should be given "its plain and ordinary meaning as understood by persons of ordinary skill in the art at the time of the invention." Dkt. No. 223 at 6. However, the Court rejected the limitations urged by Plaintiff and held that such plain and ordinary meaning "is not limited only to 'pre-existing security problems.'" *Id.* at 7. After a dispute regarding the plain and ordinary meaning of "vulnerability" surfaced again at the pretrial conference, the Court ruled that the jury would be instructed that "[t]he term 'vulnerability' means an exploitable weakness in a computer system, and is not limited in scope to pre-existing security problems." Dkt. No. 239 at 2. The Court did not construe any other terms of the '168 Patent.

A five-day jury trial was held beginning on July 16, 2015. Dkt. No. 254. Following a day of deliberations, the jury reached a verdict, finding (1) Defendant did not infringe the asserted claims of the '168 Patent; (2) the asserted claims are invalid; and (3) the '168 Patent was not obtained by inequitable conduct. Dkt. No. 274.

II.     **PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

A.     **Legal Standard**

"[A] party must make a Rule 50(a) motion for judgment as a matter of law before a case is submitted to the jury.  If the judge denies or defers ruling on the motion, and if the jury then returns a verdict against the moving party, the party may renew its motion under Rule 50(b)." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).  In considering a renewed motion for judgment as a matter of law, a court must uphold the jury's verdict if "substantial evidence" supports the jury's conclusion.  *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001).  "Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." *Id.*  The Court must "view all the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in the favor of the nonmover, and disregard all evidence favorable to the moving party that the jury is not required to believe." *Castro v. Cnty. of Los Angeles*, 797 F.3d 654, 662-63 (9th Cir. 2015).  Judgment as a matter of law "is appropriate when the jury could have relied only on speculation to reach its verdict." *Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 803 (9th Cir. 2009).

"A party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003).  Because Plaintiff moved for judgment as a matter of law only as to the invalidity of claim 9 before submission of the case to the jury, Plaintiff is limited to arguments regarding the invalidity of claim 9 in the present motion.[1]

B.     **Discussion**

Plaintiff asserts three primary arguments in its motion for judgment as a matter of law. First, Plaintiff argues that Defendant's theories of non-infringement and invalidity are so irreconcilable as to exclude a finding of both non-infringement and invalidity based on the evidence presented at trial.  Second, Plaintiff argues that Defendant did not present substantial

---

[1] Of course, because claim 9 depends from claims 1 and 7, the validity of those claims must also be determined in order to determine the validity of claim 9.

4

United States District Court
Northern District of California

evidence to support a finding of obviousness.  Third, Plaintiff argues that, even if claims 1 and 7 were properly invalidated, Defendant did not present substantial evidence to support a finding of invalidity as to claim 9.

### 1.    Defendant's Non-Infringement and Invalidity Theories

Plaintiff contends that Defendant's theories of non-infringement and invalidity "cannot be reconciled," and therefore the jury's "finding of both non-infringement and invalidity cannot stand." Dkt. No. 318 ("Reply") at 1.  Plaintiff "does not dispute that [Defendant] presented evidence supporting both its non-infringement theory and its invalidity theory," but argues that the purported incongruity between those two theories mandates judgment in its favor on one theory or the other as a matter of law because "[a]ccepting [Defendant's] ordinary meaning of claim terms necessary to find substantial evidence of non-infringement fatally undermines its proof of invalidity, and *vice versa*." *Id.* at 1-2.[2]  Specifically, Plaintiff contests the consistency of Defendant's theories with respect to three claim terms: (1) taking action "in response to" or "as a result of" identified vulnerabilities; (2) performing "various utility functions"; and (3) "reporting" the identified vulnerabilities.[3]

### i.    "In response to" / "as a result of"

Yanjun Yu, a software development manager employed by Defendant, testified at trial that Defendant's allegedly infringing product, Program Updates, conducts two separate and independent queries: one to determine whether there are any identified vulnerabilities associated with a user's computer programs, and another to determine whether there are any available updates for those computer programs.  *See* Tr. at 482:18-483:6.  Mr. Yu also testified that Program

---

[2] Plaintiff does not explicitly state the grounds on which it seeks judgment as a matter of law as a result of this supposed incongruity.  In other words, it is unclear from Plaintiff's briefing whether it seeks judgment in its favor as to the '168 Patent's validity or as to Defendant's infringement of the Patent.  However, because Plaintiff is limited to arguments regarding the jury's finding of invalidity for the reasons described above, the Court presumes that Plaintiff seeks judgment as a matter of law in its favor as to the validity of the '168 Patent.

[3] The Court will not consider any new claim construction arguments advanced in Plaintiff's motion that were not raised at or before trial.  *See Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 694 (Fed. Cir. 2008) ("[A] party may not introduce new claim construction arguments on appeal or alter the scope of the claim construction positions it took below.  Moreover, litigants waive their right to present new claim construction disputes if they are raised for the first time after trial.") (internal quotation marks omitted).

United States District Court
Northern District of California

1    Updates provides an update when an update is available, regardless of whether a vulnerability

2    exists.  *Id.* at 606:22-607:1.  In other words, even if there are identified vulnerabilities associated

3    with a given computer program, that program nonetheless will not be updated if no update is

4    available.  *Id.* at 607:24-608:10.  On the basis of this and other similar evidence, Defendant argued

5    at trial that Program Updates does not perform any utility functions "in response to" or "as a result

6    of" identified vulnerabilities, as required by the '168 Patent, because it is the availability of an

7    update the triggers the responsive action, not the presence of a vulnerability.  Therefore,

8    Defendant argued, Program Updates does not infringe the '168 Patent.

9         As for invalidity, Defendant presented evidence regarding three anticipatory prior art

10   references: the HostGUARD software, the HostGUARD brochure, and the S3 Manual.  Ron

11   Toman, the former VP of Business Development at the company where HostGUARD was

12   developed, testified at trial that "[HostGUARD] basically looked for vulnerabilities; reported 'em

13   and corrected 'em."  Tr. at 926:10-21; *see also id.* at 1024:4-1028:4 (expert testimony regarding

14   HostGUARD software and brochure); Trial Exhibit ("TX") 1025 at EK0000028.  Patrick Taylor,

15   the product manager of S3 during the relevant time, testified that the S3 Manual disclosed the

16   software's ability to generate "fix-it scripts" to correct configuration errors.  *See* Tr. at 856:14-

17   862:19; *see also id.* at 1050:20-25 (expert testimony regarding S3 Manual); TX 1041 at

18   84902DOC005154.  At trial, Defendant argued that the prior art therefore disclosed functions

19   performed "in response to" or "as a result of" vulnerabilities identified by the system.

20        Plaintiff now contends that Defendant's theory of non-infringement is inconsistent with

21   Defendant's anticipation theory of invalidity, requiring judgment as a matter of law as to the jury's

22   invalidity verdict.  The Court is not persuaded.  Substantial evidence was introduced at trial

23   showing that Program Updates does not perform any functions "in response to" or "as a result of"

24   identified vulnerabilities, since updates are provided based on whether an update is available, not

25   whether a vulnerability is identified.  On the other hand, substantial evidence was presented

26   showing that the prior art takes action based on the presence of a vulnerability.  The jury

27   reasonably could have concluded that whether the prior art takes a similar action to "correct

28   configuration and profile errors . . . regardless of [whether] those errors constituted

1    vulnerabilities," Reply at 1, is neither here nor there—what matters is that when a vulnerability is

2    identified by the prior art, a function is performed in response.  Substantial evidence produced by

3    Defendant at trial supports the conclusion that the same cannot be said of Program Updates.

### ii.    "Various utility functions"

5    Mr. Yu testified at trial that the utility performed by Program Updates is updating out-of-

6    date software.  Tr. at 598:17-599:4.  Based on this and other similar evidence, Defendant argued at

7    trial that Program Updates did not perform "various" utility functions as required by the '168

8    Patent, since it only performed the single function of updating out-of-date software.

9    Dr. Aviel Rubin, Defendant's infringement and invalidity expert, testified at trial that the

10   prior art performs multiple corrective functions in response to the identified vulnerabilities.  *See*

11   Tr. at 1024:4-1027:14 (testifying that HostGUARD discloses two separate utility modules that

12   take actions in response to vulnerabilities), 1050:14-1051:3 (testifying that S3 discloses corrective

13   functions taken in response to "file ownership and permission problems," which are two different

14   types of vulnerabilities).  Defendant argued that that the prior art therefore disclosed "various"

15   utility functions performed in response to identified vulnerabilities.

16   Plaintiff contends that Defendant's theories of non-infringement and invalidity are in

17   conflict because "updating a program" must be equated with "returning a configuration to a prior

18   state."  Reply at 1.  In Plaintiff's view, if the former does not constitute "various utility functions,"

19   then the latter cannot either.  Once again, the Court is not persuaded.  Defendant presented

20   substantial evidence at trial which reasonably supported the conclusion that Program Updates only

21   performed a single utility function, whereas the prior art disclosed the ability to perform multiple

22   and "various" utility functions.

### iii.    "Reporting the discovered vulnerabilities"

24   Mr. Yu testified at trial that Program Updates reports only a generalized "risk rating" of the

25   currently installed version of a program for which an update is available, rather than information

26   regarding the specific vulnerabilities identified by the system.  *See* Tr. at 606:3-6.  On the basis of

27   this and other similar evidence, Defendant argued that Program Updates did not "report" the

28   identified vulnerabilities, and therefore did not infringe the '168 Patent.

United States District Court
Northern District of California

1   As for the prior art, several witnesses testified at trial that the prior art reports detailed

2   information regarding the vulnerabilities identified by the system. *See* Tr. at 852:11-20 (Mr.

3   Taylor testifying regarding S3), 926:10-13 (Mr. Toman testifying regarding HostGUARD),

4   1034:20-1035:18 (Dr. Rubin testifying regarding HostGUARD), 1054:22-1055:11 (Dr. Rubin

5   testifying regarding S3); TX1041 at 84902DOC005125 (S3 Manual).

6   Plaintiff appears to argue that the prior art does not anticipate the '168 Patent because the

7   prior art does not identify configuration errors, permission problems, and the like specifically as

8   "vulnerabilities." Reply at 2. This contention essentially raises a new claim construction

9   argument regarding the meaning of "reporting the discovered vulnerability," which, as noted

10  above, is prohibited at this stage of the case.[4] *See supra* at 5 n.2. Moreover, based on the

11  evidence presented at trial, the jury reasonably could conclude that the prior art's detailed

12  description of configuration errors and permission problems for the user amounts to reporting

13  vulnerabilities, as required by the claims. Similarly, the jury reasonably could conclude that

14  Program Updates' identification of a generalized risk rating does not constitute the reporting of

15  any vulnerabilities.

16  **2.    Obviousness**

17  Defendant also presented evidence at trial regarding obviousness. Kevin Reynolds, an

18  inventor of the '168 Patent, testified via videotaped deposition that it was "self-evident" to

19  incorporate the ability to correct for vulnerabilities into the prior art that disclosed the ability to

20  identify vulnerabilities. *See* Dkt. No. 317-19 at 140:23-141:12 (played at Tr. at 1128:13-17).

21  Moreover, Dr. Rubin provided detailed testimony regarding his conclusion that the asserted claims

22  would have been obvious to someone of ordinary skill in the art. Tr. at 1059:1-1063:9.

23

24  ---
    [4] Plaintiff argued in its opposition to Defendant's motion for summary judgment that the terms

25  "utility module" and "reporting module" required construction. Dkt. No. 125 at 16-18. But those
    arguments related to the distinction between the two types of modules, not to the specific

26  definition of "reporting," which is at issue here. *See id.* ("[B]oth the intrinsic and extrinsic record
    provide ample support for why the reporting module is something separate from a utility

27  module."). Moreover, at the pretrial conference, Plaintiff clearly stated its position that these
    terms did not need to be construed by the Court. *See* Dkt. No. 227 at 10:19-11:23 ("The Court: So

28  the parties are in agreement? No need for a construction on those terms? Mr. Shaeffer: Yes, Your
    Honor.").

1    Plaintiff's dismissal of Mr. Reynolds' sworn testimony as "nothing more than an example

2    of an inventor being modest" is not persuasive.  Dkt. No. 305 ("Mot.") at 17.  And Plaintiff does

3    not offer any legitimate reason to discount Dr. Rubin's testimony.  Moreover, Plaintiff failed to

4    offer any rebuttal evidence regarding obviousness at trial.  Accordingly, the Court finds that

5    Defendant presented substantial evidence on which the jury reasonably could conclude that the

6    '168 patent was invalid due to obviousness.

7            3.      Claim 9

8    Finally, Plaintiff argues that Defendant did not present evidence at trial to support a finding

9    of invalidity as to claim 9 because there was no evidence that the prior art acted in response to

10   vulnerabilities identified by the integrity checking module.  Whether any evidence to this effect

11   was presented is beside the point, as Plaintiff's argument is premised on a misreading of the

12   claims.  Claim 1, from which claim 9 depends, requires that "at least one security module . . .

13   identify vulnerabilities," and that "at least one utility module" act in response to the identified

14   vulnerabilities.  Per claim 7, an "integrity checking module" is one of several types of security

15   modules.  Claim 9 requires that "the system memory comprises a list of known vulnerabilities

16   which may be employed by the integrity checking module."  Put together, claim 9 requires that

17   one of the security modules in the system be an integrity checking module that may employ a list

18   of known vulnerabilities, and that at least one utility module act in response to vulnerabilities

19   identified by the security modules.  Nothing in claims 1, 7, or 9 expressly requires that the utility

20   module(s) respond to the vulnerabilities identified by the integrity checking module in particular.

21                          *       *       *

22   Substantial evidence was introduced at trial to support the jury's verdict of non-

23   infringement and invalidity.  Accordingly, the motion for judgment as a matter of law is DENIED.

24   **III.    PLAINTIFF'S MOTION FOR NEW TRIAL**

25        **A.      Legal Standard**

26   Under Federal Rule of Civil Procedure 59(a)(1), a court "may, on motion, grant a new trial

27   on all or some of the issues."  A court may grant a new trial "if the verdict is contrary to the clear

28   weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of

United States District Court
Northern District of California

9

justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal quotation marks omitted). A judge should not grant a new trial unless "left with the definite and firm conviction that a mistake has been committed." *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1372 (9th Cir. 1987) (internal quotation marks omitted). In considering a Rule 59(a) motion for a new trial, the Court "is not required to view the trial evidence in the light most favorable to the verdict. Instead, the district court can weigh the evidence and assess the credibility of the witnesses." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014).

> **B.      Discussion**

As an initial matter, Plaintiff's counsel conceded at trial that "I think there's questions of fact with respect to infringement." Tr. at 1195:2-3. This admission alone indicates that the clear weight of the evidence did not go against the jury's verdict.

Second, Plaintiff's arguments for a new trial are in large part identical to those advanced in support of its motion for judgment as a matter of law. The Court has considered the evidence and argument presented at trial, and concludes that the jury's verdict is not contrary to the clear weight of the evidence. As detailed above, the Court finds that the evidence presented at trial reasonably supported the jury's dual findings of non-infringement and invalidity. The Court is firmly convinced that the jury's verdict was not mistaken.

Finally, Plaintiff asserts that Defendant "engaged in grossly inappropriate claim construction and made severe misrepresentations in closing arguments." Mot. at 23. The Court finds that all of the alleged "misrepresentations" were fair characterizations of the evidence produced at trial and therefore could not have prejudiced Plaintiff in any way warranting a new trial. Moreover, the Court instructed the jury that counsel's closing arguments were not to be considered as evidence.

Accordingly, the motion for a new trial is DENIED.

## IV.     DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS

### A.     Fees

#### 1.     Legal Standard

Under 35 U.S.C. § 285, courts "in exceptional [patent] cases may award reasonable attorney fees to the prevailing party."  The Supreme Court recently held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award."  *Id.* at 1757.  Although "[t]here is no precise rule or formula for making these determinations," the Supreme Court has identified a nonexclusive list of factors for courts to consider, "including frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.* at 1756 & n.6.

A prevailing party must prove its entitlement to a fees award by a preponderance of the evidence.  *Id.* at 1758.  "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."  *Id.* at 1756.

#### 2.     Discussion

Defendant argues that the Court should award fees because this case qualifies as "exceptional" under both prongs of the *Octane Fitness* test.

##### i.     Substantive Strength of Plaintiff's Litigating Position

Defendant first argues that the dual jury verdict of noninfringement and invalidity is evidence of Plaintiff's weak litigating position.  According to Defendant's statistics, this only happened in 8.11% of all patent jury verdicts in 2014.  But the fact that Plaintiff lost on both its infringement and invalidity arguments cannot, by itself, justify a fees award.  *See Octane Fitness*, 134 S. Ct. at 1753 (noting that attorneys' fees are not penalties for failure to win a patent infringement suit); *see also Kreative Power, LLC v. Monoprice, Inc.*, No. 14-cv-02991-SI, 2015

1    WL 1967289, at *1, 3 (N.D. Cal. Apr. 30, 2015) (denying motion for attorneys' fees where court

2    previously had granted the defendant's motion for summary judgment on both non-infringement

3    and invalidity grounds).

4            Defendant next argues that the intertwined relationships of Plaintiff's litigation counsel,

5    the lawyer who prosecuted the '168 Patent, and the named inventors of the prior art and the '168

6    Patent make the case exceptional.  Defendant does not cite to any authority in support of this

7    contention.  The Court finds that such circumstances do not have any material bearing on whether

8    the substantive strength of Plaintiff's litigating position was exceptionally weak.

9            Defendant further argues that the failed commercial success of the '168 Patent's

10   embodiments is evidence of the weakness of Plaintiff's case.  Once again, however, Defendant

11   fails to cite to any authority in support of its position.  The Court finds that the '168 Patent's

12   history of commercial success—or lack thereof—is not informative of the substantive strength of

13   the argument for the legal validity of the '168 Patent.

14           Finally, Defendant argues that the fact that Plaintiff survived summary judgment does not

15   foreclose an award of fees.  While this may be true, Plaintiff's survival past the summary

16   judgment stage of the case is certainly some evidence of the merits of its litigating position.

17           The Court finds that Defendant has failed to show by a preponderance of the evidence that

18   Plaintiff's litigating position was so substantively weak as to justify an award of fees for

19   "exceptional" cases under the Patent Act.

20                          ii.      Manner in Which the Case was Litigated

21           Defendant first argues that Plaintiff litigated this case in an unreasonable manner because,

22   after Dr. Garuba's February 2015 deposition, Plaintiff knew that its infringement position was

23   without merit.  The Court finds that Plaintiff's infringement theory as articulated by Dr. Garuba,

24   though weak, was not exceptionally unreasonable to pursue.  *See Synopsys, Inc. v. Mentor*

25   *Graphics Corp.*, No. 12-cv-06467-MMC, 2015 WL 4365494, at *3 (N.D. Cal. July 16, 2015)

26   ("Pursuing an action where the result is uncertain, however, is far from exceptional."); *Vasudevan*

27   *Software, Inc. v. Microstrategy, Inc.*, No. 11-cv-06637-RS, 2015 WL 4940635, at *5 (N.D. Cal.

28   Aug. 19, 2015) ("[M]erely taking an aggressive stance while positing stretched or unsuccessful

United States District Court
Northern District of California

1   infringement theories does not, without more, warrant fee shifting.").

2         Defendant next argues that the Court's construction of the claim term "vulnerability"

3   foreclosed Plaintiff's validity argument.  At trial, the parties asserted arguments (with varying

4   degrees of persuasiveness) regarding how broadly other material claim limitations, such as "in

5   response to," should be read, as described above.  That Defendant ultimately prevailed does not

6   mean that Plaintiff's infringement theory was completely baseless.  *See EON Corp. IP Holdings*

7   *LLC v. Cisco Sys. Inc.*, No. 12-cv-01011-JST, 2014 WL 3726170, at *5 (N.D. Cal. July 25, 2014)

8   ("Patent litigants often disagree about whether a plaintiff has viable infringement contentions after

9   an adverse claim construction, and one side is usually wrong.").

10         Defendant further argues that the named inventors of the '168 Patent had intimate

11   knowledge of the invalidating prior art and therefore were objectively unreasonable in their pursuit

12   of this litigation.  This argument relies on a good deal of hindsight bias: that the named inventors

13   knew of the existence of the prior art references presented by Defendant at trial does not mean that

14   the named inventors knew or even suspected that the prior art anticipated the '168 Patent.  And as

15   described above, Plaintiff's arguments against invalidity, though ultimately unsuccessful, were not

16   objectively unreasonable.

17         Finally, Defendant argues that, at trial, Plaintiff improperly tried to relitigate claim

18   construction and made "vitriolic rebuttal closing argument."  Dkt. No. 294 at 22.  The Court's

19   grant of Defendant's motion to strike Plaintiff's counsel's statements on the basis that they

20   constituted improper claim construction does not establish sufficiently unreasonable litigation

21   conduct for these purposes.  *See France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-cv-

22   04967-WHO, 2015 WL 4396201, at *3 (N.D. Cal. July 17, 2015) ("I would welcome a trial

23   without any evidentiary disputes, but it is not exceptional for parties to dispute the admissibility of

24   evidence important to their case, even where prior rulings address that evidence.").  And while the

25   Court agrees that Plaintiff's rebuttal closing argument was highly unusual, it was not so out-of-

26   bounds as to justify a fees award in itself.

27         The alleged misconduct in this case does not rise to the level at issue in other cases held by

28   courts in this district to be exceptional.  *See Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, No. 12-

United States District Court
Northern District of California

13

cv-01971-CW, 2015 WL 1026226, at *4 (N.D. Cal. Mar. 9, 2015) (finding exceptional conduct where the plaintiff "failed to produce material documents" and failed to alert the defendant to the change in a named inventor's testimony "at any point in the year prior to trial"); *Logic Devices, Inc. v. Apple Inc.*, 13-cv-02943-WHA, 2014 WL 6844821, at *4 (N.D. Cal. Dec. 4, 2014) (finding exceptional conduct where the plaintiff "blindly adopted and filed a complaint drafted (but not filed) by another firm, waited four months before serving [the defendant], misrepresented that a terminal disclaimer had been filed when no such terminal disclaimer existed, demanded $977.3 million in reasonable royalties, . . . failed to comply with several patent local rules . . . and sandbagged [the defendant] at the tutorial by introducing a new, untimely 'distinction' based on phrases not appearing in the asserted patent."); *Yufa v. TSI Inc.*, 09-cv-01315-KAW, 2014 WL 4071902, at *3 (N.D. Cal. Aug. 14, 2014) (finding exceptional conduct where the plaintiff filed the lawsuit without testing the accused products and continued litigation despite overwhelming evidence of non-infringement).

*     *     *

In its discretion and based on its evaluation of the totality of the circumstances, the Court concludes that this is not an exceptional case under the Patent Act.  Accordingly, Defendant's motion for attorneys' fees is DENIED.[5]

### B.    Costs

Federal Rule of Civil Procedure 54(d)(1) provides "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Courts have "wide discretion" in determining whether and how much to award prevailing parties in costs.  *K-S-H Plastics, Inc. v. Carolite, Inc.*, 408 F.2d 54, 60 (9th Cir. 1969).  Plaintiff bears the burden to "show why costs should not be awarded."  *Save Our Valley v. Sound Transit*, 335 F.3d 932, 944-45 (9th Cir. 2003).  "However, the presumption in favor of awarding costs to the prevailing party does not relieve that party from its obligation to itemize its costs with

---

[5] Because the Court finds that Defendant is not entitled to an award of fees, the Court need not address the parties' arguments regarding the reasonableness of the amount of fees requested by Defendant.

United States District Court
Northern District of California

1    sufficient detail to establish that each expense is taxable." *Ancora Techs., Inc. v. Apple, Inc.*, No.

2    11-cv-06357-YGR, 2013 WL 4532927, at *2 (N.D. Cal. Aug. 26, 2013); *see also Ricoh Co. Ltd.*

3    *Patent Litig.*, 661 F.3d 1361, 1368 (Fed. Cir. 2011) (applying Ninth Circuit law to deny costs to a

4    prevailing party that "did not meet its burden" to itemize costs with specificity).

5            Defendant seeks a total of ▮▮▮▮▮ in "costs relating to certain reporters' transcripts,

6    deposition expenses, reproducing formal discovery documents and trial exhibits, preparing visual

7    aids for trial, and witness expenses." Dkt. No. 294 at 24.  The bulk of these costs—▮▮▮▮▮—

8    derive from the preparation of visual aids for trial.  However, under the Civil Local Rules, costs

9    associated with the intellectual effort involved in creating visual aids are not recoverable; only the

10   costs of the physical preparation of those visual aids may be taxed.  *See* Civ. L.R. 54-3; *Zuill v.*

11   *Shanahan*, 80 F.3d 1366, 1371 (9th Cir. 1996) ("Fees for exemplification and copying are

12   permitted only for the physical preparation and duplication of documents, not the intellectual

13   effort involved in their production.") (internal quotation marks omitted).  The amount of time

14   billed—over five hundred hours in the span of two weeks—suggests that the costs involved more

15   than the simple physical preparation and duplication of the visual aids, and the invoices submitted

16   by Defendant do not allow the Court to determine what portion of the costs sought is attributable

17   to the intellectual effort involved in the production of the trial materials.  Therefore, the Court

18   denies Defendant's motion as to the costs involved in the preparation of visual aids for trial.  *See*

19   *Ancora*, 2013 WL 4532927, at *5 (denying costs where "supporting exhibits do not offer

20   sufficient detail to determine whether the costs sought include the 'intellectual effort' to create the

21   content of the presentation, rather than its basic 'physical preparation'").  The Court awards

22   Defendant the balance of its costs, which amounts to ▮▮▮▮▮.

23

24

25

26

27

28

## V.     CONCLUSION

For the reasons stated above, Plaintiff's joint motion for judgment as a matter of law and a new trial is DENIED.  Defendant's motion for attorneys' fees is also DENIED.  The Court GRANTS IN PART Defendant's motion for costs and awards the reduced amount of ████████.

**IT IS SO ORDERED.**

Dated: January 7, 2016

*Haywood S. Gilliam Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge